**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN S. BARTH, *Plaintiff,* v. MABRY CARLTON RANCH INC., et al., *Defendants.* | Case No. 1:25-cv-01136-DLF |

**DEFENDANT BONNER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant Judge Kimberly Bonner, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), hereby moves the Court to dismiss Plaintiff's Complaint (DE 1),[1] and in support states as follows:

**INTRODUCTION**

Plaintiff's Complaint is another frivolous attempt to allege a massive government conspiracy in a court that lacks jurisdiction. The Complaint states nine causes of actions all based on alleged violations of the Racketeering Influenced Corrupt Organizations (RICO) Act and other federal statutes related to fraud. DE 1 at pp. 18–26. Plaintiff appears to allege Counts 2, 3, 5, and 8 against Judge Bonner

---

[1] Between June 20th and 26th of 2025, Plaintiff filed eight appendixes and numerous exhibits appearing to supplement the Complaint. DE 20–25, 28. While Plaintiff did not file a motion to amend or supplement, to the extent that the Court considers these documents, the Complaint should still be dismissed for the reasons stated in this Motion.

1

based on her actions as the presiding judge in four Florida state cases involving Plaintiff. *See id* at pp. 19–20, 22, 25, 50.

Each of the state cases arose out of Sarasota County, Florida between Plaintiff and the same opposing party and concerning nearly identical claims. In 2012, Plaintiff filed an Ejectment complaint in the County Court for Sarasota County. Complaint, *Barth v. McNeely*, No. 2012 CC 3638 NC (Sarasota Cnty. Ct. July 3, 2012).[2] Before any judicial rulings were made, Plaintiff voluntarily dismissed. Notice of Voluntary Dismissal, *Barth v. McNeely*, No. 2012 CC 3638 NC (Sarasota Cnty. Ct. Aug. 16, 2012). In that same year, Plaintiff filed another complaint, now based on Ejectment and Nuisance, in the County Court for Sarasota County. Complaint, *Barth v. McNeely*, No. 2012 CC 6843 NC (Sarasota Cnty. Ct. Nov. 26, 2012). While Judge Bonner was briefly presiding on that case, the case was reassigned to another judge before any judicial ruling was made. *See* Order Re-Assigning Case, *Barth v. McNeely*, No. 2012 CC 6843 NC (Sarasota Cnty. Ct. Oct. 26, 2015). In 2013, Plaintiff filed a third complaint, again based on Ejectment and Nuisance, in the Twelfth Judicial Circuit in and for Sarasota County, Florida. Complaint, *Barth v. McNeely*, No. 2013 CA 1257 NC (Fla. 12th Cir. Ct. Feb. 11, 2013). That case ended with an involuntary dismissal, which was not issued by Judge Bonner. Order on Motion for Involuntary Dismissal, *Barth v. McNeely*, No. 2013 CA 1257 NC (Fla. 12th Cir. Ct. Apr. 7, 2015). Plaintiff then filed another complaint, including claims of Nuisance, Assault, and

---

[2] The Court may take judicial notice of the filings in Plaintiff's other cases. *See Arrington v. Fed. Pub. Def. for D.C.*, 75 F. Supp. 3d 340, 345 (D.D.C. 2014) (stating that "a court may take judicial notice of public records from other proceedings" in considering a Rule 12(b) motion to dismiss).

Perjury, in the Twelfth Judicial Circuit. Complaint, *Barth v. McNeely*, No. 2013 CA 3585 NC (Fla. 12th Cir. Ct. Apr. 29, 2013). While Judge Bonner was initially on the case, she disqualified herself and the new assigned judge dismissed the case for filing multiple defective pleadings. Order on Disqualification, *Barth v. McNeely*, No. 2013 CA 3585 NC (Fla. 12th Cir. Ct. Feb 19, 2014); Order Granting Defendants' Motion for Involuntary Dismissal, *Barth v. McNeely*, No. 2013 CA 3585 NC (Fla. 12th Cir. Ct. Nov. 9, 2015).

Here, Plaintiff alleges that Judge Bonner "obstructed" the state cases and denied Plaintiff due process and equal protection by denying Plaintiff's motions and accepting the opposing party's Answer. DE 1 at pp. 50, 62, 65, 69. It is unclear which case Plaintiff is referring to in his allegations. Plaintiff, in alleging this massive conspiracy, believes that Judge Bonner ruled against him in retaliation for investigating an alleged racketeering scheme. *Id.* Plaintiff states that as a part of this scheme, Judge Bonner has misappropriated government funds. However, his only allegation as to how she did so is that he believes Judge Bonner's family stole state funds. *Id.* at p. 68 (stating that Plaintiff was investigating "the theft of $51 million in state funds by the family of corrupt state judge (Carlton) Bonner.").

As stated in the motions to dismiss filed by the codefendants, Plaintiff has again filed the same lawsuit that has failed in five other federal districts, **including this one**. *Barth v. Mabry Carlton Ranch, Inc.*, No. 8: 19-CV-03181-VMC-AEP (M.D. Fla. Feb. 27, 2020) *Barth v. Mabry Carlton Ranch, Inc.*, No. 520CV09288NCEJD, 2020 WL 7643097, at *1 (N.D. Cal. Dec. 23, 2020), aff'd, 854 F. App'x 897 (9th Cir.

2021) (dismissing for improper venue); *Barth v. Mabry Carlton Ranch Inc.*, No. 3:20-CV-1164-AC, 2020 WL 5989206, at *3 (D. Or. Oct. 8, 2020) (dismissing for improper venue); *Barth v. Mabry Carlton Ranch, Inc.*, No. CV 20-00104 JAO-KJM, 2020 WL 2840238, at *3 (D. Haw. June 1, 2020) (dismissing for improper venue); *Barth v. United States*, No. CV 22-955 (JEB), 2022 WL 17719572, at *3 (D.D.C. Dec. 15, 2022), aff'd sub nom. *Barth v. United States Dep't of Just.*, No. 22-5338, 2023 WL 8663580 (D.C. Cir. July 7, 2023) (dismissing the remaining federal defendants for failure to provide a statutory basis for relief and prosecutorial discretion). Plaintiff's Complaint should again be dismissed because this Court lacks subject matter jurisdiction and personal jurisdiction over Judge Bonner, venue is improper, and Judge Bonner is entitled to judicial immunity.

## LEGAL STANDARD

Under Rule 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). "Before proceeding to the merits of a claim, a court must satisfy itself that it has subject matter jurisdiction over the claim." *Johnson v. D.C. Metro Transit Auth.*, 239 F. Supp. 3d 293, 295 (D.D.C. 2017). The burden of establishing subject matter jurisdiction lies with the plaintiff. *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 11 (D.D.C. 2010). Furthermore, where a plaintiff fails to plead specific facts establishing personal jurisdiction, the complaint may be dismissed pursuant to Rule 12(b)(2). *Capel v. Capel*, 272 F. Supp. 3d 33, 38 (D.D.C. 2017). A plaintiff also bears the burden of establishing that venue is proper. *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42,

4

68 (D.D.C. 2021). If this burden is not satisfied, the complaint may be dismissed under Rule 12(b)(3). Lastly, a plaintiff fails to state a claim under Rule 12(b)(6), where the claim is barred by immunity. *Caldwell v. Kagan*, 455 F. App'x 1 (D.C. Cir. 2011).

Additionally, while pro se complaints are "liberally construed," they still must abide by procedural and jurisdictional requirements. *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014), aff'd, No. 14-5180, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015)

## MEMORANDUM OF LAW

### I. Patently Insubstantial

The Court lacks subject matter jurisdiction because the Complaint is patently insubstantial. "A complaint may be dismissed on jurisdictional grounds when it 'is 'patently insubstantial,' presenting no federal question suitable for decision.'" *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C.Cir.1994)). "[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974). A complaint is patently insubstantial when the allegations are so frivolous and questionable that they are essentially fictitious. *Tooley*, 586 F.3d at 1009.

Here, Plaintiff's Complaint involves the exact type of bizarre conspiracy theory allegations, that this Court has routinely dismissed under Rule 12(b)(1). The Complaint alleges a massive conspiracy between multiple federal agencies, state officials, judges, and private entities. *See* DE 1 at pp. 13–16. Plaintiff alleges that these parties our tied by the Republican Party and have worked together to injure his

5

health and his income. *Id.* at pp. 3, 59, 67 ("Clearly persons then in control of each of these agencies were abusing office to protect racketeering to steal state and federal funds for the Republican party."), 70. Plaintiff goes on to allege that this conspiracy stretches over multiple jurisdictions claiming that each of the dismissals in his five prior cases were improper and only given because of the judges' connections to the Republican Party and this fictional conspiracy. DE 15 at ¶ 3 ("But in every case, a judge of the defendants' political party grabbed the case, in knowing violation of the Code Of Judicial Conduct, and denied venue[.]").

This Court stated that bizarre allegations of government harassment and conspiracy theories warrant dismissal for lack of jurisdiction. *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009) ("Plaintiff's claims relating to alleged government surveillance and harassment of her are the type of 'bizarre conspiracy theory' that warrant dismissal under Rule 12(b)(1).") (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 232 (D.D.C. 2007)); *see also Tooley*, 586 F.3d at 1010 (" Indeed, the allegations appear similar to those in a number of cases that district courts have dismissed for patent insubstantiality: that plaintiff was subjected to a campaign of surveillance and harassment deriving from uncertain origins[.]"). Similar to the allegations in *Curran*, the Complaint alleges "a series of unconnected events" including multiple state cases, campaign donations, sales of easements, and FOIA requests, to support the conclusion that all these parties are in a conspiracy scheme on behalf of the Republican Party. *See, e.g.*, DE 1 at pp. 34, 50, 57, 68. Plaintiff does not state how any of these unconnected events establish a conspiracy. Plaintiff also

6

continuously states that these parties are being paid for this conspiracy with no logical connection. *See, e.g.*, DE 1 at p. 58 ("It is reasonable to presume, until discovery is completed, that the concealed funding sources include the defendants and their associates who made limited direct donations, such as the Carltons, Longinos, and others."). Therefore, because these allegations are frivolous and without merit, the Complaint should be dismissed.

## II.   Personal Jurisdiction

The Court lacks personal jurisdiction over Judge Bonner. A plaintiff bears the burden of showing specific acts connecting the defendant to the forum. *Capel v. Capel*, 272 F. Supp. 3d 33, 38 (D.D.C. 2017). In assessing whether a federal court has personal jurisdiction over a nonresident defendant, the court must first determine whether jurisdiction is applicable under the state's longarm statute then whether jurisdiction satisfies due process through minimum contacts between the defendant and the forum. *SCPS, LLC v. L.*, 770 F. Supp. 3d 11, 32 (D.D.C. 2025).

Here, Plaintiff concedes that Judge Bonner lives in and was a judge in Florida. DE 1 at p. 14. Thus, Judge Bonner is a nonresident of the District of Columbia and must have jurisdiction under its longarm statute. D.C. Code Ann. § 13-423 (West) states that the District of Columbia may exercise personal jurisdiction over a person:

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; . . . .

Plaintiff includes no allegations that Judge Bonner has any connection with the District of Columbia that would warrant jurisdiction under the longarm statute. Plaintiff alleges that Judge Bonner's only involvement in this "conspiracy" was her presiding over the cases in Sarasota County. *E.g.*, DE 1 at p. 50. There are no allegations that Judge Bonner had business in the District of Columbia nor committed any act there. Plaintiff also does not allege that any injury caused by Judge Bonner's alleged involvement happened in the District of Columbia. Plaintiff is a citizen in Maine and at the time of the Sarasota cases, Plaintiff owned property in Sarasota. *Id.* at p. 3; *see* Complaint, *Barth v. McNeely*, No. 2013 CA 3585 NC (Fla. 12th Cir. Ct. Apr. 29, 2013). In fact, the only time Plaintiff discusses the District of Columbia is in reference to the federal defendants and in discussing property taxes for its residents, both which Plaintiff does not connect to Judge Bonner. DE 1 at pp. 3, 66. For these same reasons, Plaintiff also fails to establish that Judge Bonner has any minimum contacts with the District of Columbia that would warrant jurisdiction under the Due Process Clause. *See Ulico Cas. Co. v. Fleet Nat. Bank*, 257 F. Supp. 2d

142, 145 (D.D.C. 2003) (stating that minimum contacts exist where "the defendant's conduct and connection with the forum State [are] such that he should reasonably anticipate being haled into court there"). Therefore, because Plaintiff does not allege a single act by Judge Bonner in this forum, Judge Bonner must be dismissed.

### III. Improper Venue

Plaintiff's Complaint should be dismissed because venue is improper in the District of Columbia. 28 U.S.C. § 1391(b) states that venue is only proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Here, there are no allegations that establish that venue is proper under any of these bases. First, all of the defendants are not residents of the same state. In the Complaint, Plaintiff admits that most of the named individual defendants are residents of Florida, including Judge Bonner. *See* DE 1 at pp. 13–16. The only defendants that Plaintiff claims to be a "resident" of the District of Columbia are the federal agencies. *Id.* at p. 66. Thus, since **all** of the defendants are not from the District of Columbia, venue is improper under the first basis.

Next, a clear reading of the Complaint would show that a substantial part of the allegations took place in Sarasota, Florida. Plaintiff discusses at length events

9

between the Carlton family and the Southwest Florida Water Management District concerning property in Sarasota, including a discussion about the Sarasota County Property Appraiser. *See, e.g., id.* at pp. 28, 34. Furthermore, Plaintiff believes that there is corruption in the state and county governments in Florida. *See, e.g., id.* at pp. 38, 70. Specifically, in terms of Judge Bonner, Plaintiff believes there was corruption in his Sarasota County cases. The bulk of the Complaint claims that defendants, Florida officials, judges, and residents are working together in this massive conspiracy. Plaintiff attempts to negate this by adding two pages at the end of the Complaint discussing federal agencies, stating that two have District of Columbia offices, and his alleged FOIA requests. *Id.* at p. 66. However, these allegations do not even show that any of the events of this "conspiracy" occurred in the District of Columbia. Plaintiff's entire Complaint is based on the Sarasota events, which is also supported by the fact that all of the relief sought relate to the alleged corruption by the State of Florida and Sarasota County. *Id.* at p. 72. Plaintiff cannot simply add federal defendants with District of Columbia headquarters to escape dismissal for improper venue without sufficient allegations connected to this forum. Therefore, as the courts have held in Plaintiff's previous identical suits, venue is proper in the Middle District of Florida, not here. *See, e.g., Barth v. Mabry Carlton Ranch, Inc.*, No. 520CV09288NCEJD, 2020 WL 7643097, at *1 (N.D. Cal. Dec. 23, 2020), aff'd, 854 F. App'x 897 (9th Cir. 2021). For that reason, the last basis for venue would not apply either because under subsection (2) there is a proper venue elsewhere.

10

Moreover, Plaintiff's conclusory allegations that this enterprise transacts their affairs in the District of Columbia, thus making venue proper here, has no support. Plaintiff believes that venue is proper under 18 U.S.C. § 1965(a) because the conspiracy taxed District of Columbia residents who own Florida property. *Id.* at p. 3. However, neither the body of the Complaint nor the request for relief includes any connection between the alleged conspiracy and District of Columbia residents. Plaintiff himself admits that the only property concerned in the Complaint is Florida property. *See id.* at p. 72 (seeking relief based on State of Florida and Sarasota County lands). Even if this Court were to consider this allegation about non-Florida residents, this does not establish that the defendants transact their affairs in the District of Columbia under § 1965(a). These barebone allegations of taxes to non-Florida residents were also found insufficient in Plaintiff's previous suits. *See Barth v. Mabry Carlton Ranch, Inc.*, No. 520CV09288NCEJD, 2020 WL 7643097, at *1 (N.D. Cal. Dec. 23, 2020), aff'd, 854 F. App'x 897 (9th Cir. 2021) ("Instead, Plaintiff asserts that California residents have or will pay an estimated $3,502,800 to Defendants as a result of the alleged crimes. . . . These allegations, however, lack a sufficient factual basis and are too speculative."); *Barth v. Mabry Carlton Ranch, Inc.*, No. CV 20-00104 JAO-KJM, 2020 WL 2840238, at *2 (D. Haw. June 1, 2020) ("Plaintiff has not demonstrated that Defendants' business transacted in Hawai'i is

substantial. His conclusory allegations regarding substantiality are deficient and unsupported."). Therefore, the Complaint should be dismissed for improper venue.[3]

### IV.  Judicial Immunity

Even if Plaintiff was to cure the multiple jurisdictional deficiencies in the Complaint, Judge Bonner is entitled to judicial immunity. It is a longstanding principle that judges are immune from suit for money damages. *See Mireles v. Waco*, 502 U.S. 9, 10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal citation omitted). Judicial immunity is an immunity from suit, not just from the ultimate assessment of damages. *Id.*; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Judicial immunity applies even in cases of bad faith, malice, or corruption. *See Powell v. Nigro*, 601 F. Supp. 144, 147 (D.D.C. 1985). The only situations where judicial immunity does not apply is when the alleged acts were nonjudicial and where the judge acted in clear absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 357, 360 (1978).

Whether an act is judicial and thus covered by immunity depends on two factors: (1) "whether it is a function normally performed by a judge"; and (2) whether

---

[3] While 28 U.S.C. § 1406(a) gives district courts discretion to transfer or dismiss cases for improper venue, dismissal is warranted where the complaint has "obvious substantive problems." *Laukus v. United States*, 691 F. Supp. 2d 119, 127 (D.D.C. 2010), aff'd, 442 F. App'x 570 (D.C. Cir. 2011). As this Motion discusses, the Complaint has multiple fundamental deficiencies that warrant dismissal. Furthermore, Plaintiff has stated his opposition to preceding in the Middle District of Florida. DE 15 at ¶ 2. Therefore, the Court should exercise its discretion to dismiss rather than to transfer.

the parties dealt with the judge in their judicial capacity. *Reddy v. O'Connor*, 520 F. Supp. 2d 124, 130 (D.D.C. 2007) (quoting *Mireles*, 502 U.S. at 12)). Next, the question of whether a judge acted in clear absence of all jurisdiction depends on whether the judge had jurisdiction to hear the subject matter of the case. *Thompson v. D.C.*, No. 79-2903, 1980 WL 123, at *4 (D.D.C. Apr. 16, 1980), aff'd, 672 F.2d 897 (D.C. Cir. 1981).

Here, despite Plaintiff claiming to sue Judge Bonner in her individual capacity, the entire Complaint as to her is based on her cases involving the Plaintiff.[4] *See Edwards v. Wilkinson*, 233 F. Supp. 2d 34, 37 (D.D.C. 2002), aff'd, No. 03-5002, 2003 WL 1907995 (D.C. Cir. Apr. 15, 2003) (stating that immunity depends on the nature of the act not whether the judge is sued in their individual or official capacity). Plaintiff states that as the presiding judge in the Sarasota cases, Judge Bonner violated Plaintiff's rights by denying his motions and allowing the opposing party to file an answer. DE 1 at p. 50. Using the two factors stated in *Reddy*, these are clearly judicial acts that are covered by immunity. Whether to grant or decline a motion and whether to allow or strike a filing are acts that judges perform every day. In bringing a suit against Judge Bonner, Plaintiff is attempting to contest the rulings made by the presiding judge. This is the same type of act that the District of Columbia Circuit has held is a clear judicial act. *Edwards*, 233 F. Supp. 2d at 37–38 ("Here, the

---

[4] While Plaintiff states in the beginning of the Complaint that Judge Bonner is in a "conspiracy to misappropriate state and county funds," DE 1 at p. 14, Plaintiff provides no supporting allegations for this conclusory statement. Thus, this allegation is insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that conclusory statements do not suffice for a well pleaded complaint).

defendants ruled on an appeal that the plaintiff himself placed before them. . . . Thus, the defendants acted within their judicial capacity."). Moreover, all the allegations against Judge Bonner are based on Plaintiff's visit to her in her judicial capacity. Each allegation is about her judicial role in the state cases. While Plaintiff believes that Judge Bonner's judicial decisions were based on personal ties, that does not negate the fact that he is claiming that acts through her role as Plaintiff's presiding judge violated his rights. *See* DE 1 at p. 50.

Furthermore, Plaintiff makes no allegation that Judge Bonner did not have jurisdiction to hear the Sarasota cases. At the time of the Sarasota cases Florida Statutes gave Circuit Courts and County Courts jurisdiction to hear cases all actions at law. *See generally* § 34.01(1)(c), Fla. Stat. (2012) (stating jurisdiction of county courts); § 26.012(2)(a), Fla. Stat. (2013) (stating jurisdiction of circuit courts). Plaintiff does not dispute that Judge Bonner, as a County Court Judge then Circuit Court Judge, had jurisdiction to hear the subject matter of his cases. *See* DE 1 at p. 62 (stating that Plaintiff had cases in front of Judge Bonner as a County Court and Circuit Court Judge). Therefore, Judge Bonner is entitled to judicial immunity.

## CONCLUSION

For the reasons stated above, the Complaint should be dismissed. Plaintiff should also not be given leave to amend because the Complaint has jurisdictional defects and is barred by immunity. Any amendment would not be able to cure these defects and thus would be futile. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("A dismissal with prejudice is warranted only when a trial court

determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.") (internal citations omitted). Plaintiff has also shown his inability to cure these deficiencies by his repeated filing of nearly identical complaints in five jurisdictions despite each jurisdiction dismissing on similar grounds. *See Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 312 (D.D.C. 2015) (stating that leave to amend should not be given where there are repeated failures to cure deficiencies). Therefore, the dismissal should be without leave to amend.

Dated: July 2, 2025

        Respectfully submitted,

        JAMES UTHMEIER
        FLORIDA ATTORNEY GENERAL

        */s/ Maryssa S. Hardy*
        Maryssa S. Hardy (Fla. Bar No. 1058666)
        ASSISTANT ATTORNEY GENERAL
        Maryssa.Hardy@myfloridalegal.com
        Complexlitigation.eservice@myfloridalegal.com
        Office of the Florida Attorney General
        PL-01, The Capitol
        Tallahassee, FL 32399-1050
        850-414-3300

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), this document was filed electronically with the court's electronic-filing system and service shall be through the Court's transmission facilities on all registered users. The foregoing was also served to Plaintiff via mail at:

John S. Barth
P.O. Box 88
Springvale, ME 04083

/s/ *Maryssa S. Hardy*
Maryssa S. Hardy