**District Court of the United States**
**District of Columbia**

```
---------------------------------------------
                                             |    Case No. 1:25-cv-01136-DLF
John S. Barth,                               |
        Plaintiff                            |
v.                                           |
Mabry Carlton Ranch Inc., et al.             |
        Defendants                           |    PLAINTIFF OPPOSITION TO
                                             |    DEFENDANT GROUP C MOTION TO DISMISS
_____|                 with
                                                       MEMORANDUM OF LAW
```

Defendant Group C (James J Walton Trust, Wyona June Walton Trust, Michael Allen Walton, MJW Ranch LLC, and Julie M Walton) have filed a meritless motion to dismiss based solely upon false statements of the facts of the case, and of law, hereby opposed with correction and disposition of the defendant motion.

**Contents**

MEMORANDUM OF LAW ........................................................................................................ 2
    Summary ............................................................................................................................... 2
    Table of Authorities (see Complaint, Appendices A–H, Memoranda Of Law 1–8) ................. 2
    FALSE STATEMENTS OF FACT BY DEFENDANTS ............................................................. 3
        Minor False Statements Of Fact ......................................................................................... 3
        Claim Of Related Cases In Partisan Districts ..................................................................... 3
    FALSE STATEMENTS OF LAW BY DEFENDANTS ............................................................... 4
        False Claim Of Laches Or Expiration Of Statute Of Limitations ......................................... 4
        False Claim That No Plaintiff Injury Is Alleged .................................................................... 5
        False Claims That No Proper Claim Is Stated .................................................................... 6
            False Claim That Standard Of Fraud Claims Is Not Met .................................................. 6
            False Claim That Elements Of RICO Conspiracy Are Not Stated .................................... 7
            False Claim That Proximate Cause Is Not Stated ........................................................... 8
            False Claim That Stated Federal Law Violations Are Not RICO Violations ..................... 8
            False Claim That Florida Law Fraud And Racketeering Violations Are Not RICO Violations .......... 8
            False Claim That Charges Must Be Detailed Against All Individual Group C Defendants ................. 9
        False Claim Of Lack Of Personal Jurisdiction .................................................................... 10
        False Claims Of Improper Venue ........................................................................................ 10
    CONCLUSION .......................................................................................................................... 12



**RECEIVED**

JUL 2 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**MEMORANDUM OF LAW**

**Summary**

The defendant motion lacks any basis in law, merely repeating the false arguments of the other defendant motions on laches, standing, jurisdiction, and venue, herein disposed. It adds only quibbles about the nature and statement of claims against Group C defendants, disposed below under *False Claims That No Proper Claim Is Stated.*

The defendants have chosen, in lieu of any rational basis for such a motion, to merely state a large number of logic errors and simple deceptions.

Admitting that it lacks valid argument, the defendant motion starts out with defamations of the plaintiff (p. 1) as merely "pro se" (despite his far better fact and argument), and a "serial litigant" (like the defendant lawyer) in a "protracted litigation campaign against myriad" entities (the same defendants) to obscure the fact that the related cases were necessary to locate a non-partisan venue with the courage to order a federal investigation. The same indefensible claim was made by the other defendants, and is herein disposed under *False Claim Of Laches.*

**Table of Authorities (see Complaint, Appendices A–H, Memoranda Of Law 1–8)**

**FALSE STATEMENTS OF FACT BY DEFENDANTS**

**Minor False Statements Of Fact**

1. The motion claims that the plaintiff "alleges that the wild panthers whose habitat the land was falsely claimed to conserve were 'fictitious.'" Of course the Plaintiff has well documented the false conservation claims of the defendants, with no claim that wild panthers do not exist:

> Complaint *Facts of Conservation Land Funding and Misappropriation in Florida*
> Appendix D *Conservation Facts and Argument*
> Appendix E *Unlawful Methods and Criminal Acts*

2. The motion claims (p. 4) that "Plaintiff also alleges that he is suing the Walton Defendants for 'conspiracy to misappropriate state and county funds,' Compl. ¶ 13 at xiv, although this is not stated as a specific count in the complaint." In fact this is clearly stated as Count 3, naming Group C:

> The defendants have received payments known by them to be the proceeds of criminal acts, in <u>conspiracy to defraud the state of Florida, Sarasota county thereof, and the United States, and to cause misappropriation of substantial public funds of those entities</u>. The defendants have defrauded and denied honest services to the people, abused public office for private gain, and have stolen public funds. The paragraphs of *Common Elements Incorporated Into All Claims* of this Statement of Claims are incorporated hereunder. The proof is that the defendants received the payments, and knew them to be based upon false appraisals, and/or to be misappropriated from funds for purposes not thereby served.

**Claim Of Related Cases In Partisan Districts**

3. Upon proof of the prejudice of the FLMD and its partisan collusion with political racketeers, the Plaintiff saw that a venue with few judges of the defendants' political party was required to seal the case and request investigation by federal agencies. Venue in any district was proper due to major damages in all districts due to taxation of out-of-state property owners to pay interest on the bonds issued to make the unlawful payments to the defendants. The Plaintiff computed the losses in each district based upon population and the percentage of out-of-state owners of Florida property (21%), and thereby determined each district's losses as a multiple of it's felony crime threshold, proving the "substantial damage" criterion of racketeering venue. Therefore charges against the private defendants were brought under seal in three ninth-circuit districts having a minority of judges of their political party: (1) Hawaii (CV20 00104 JAO-KJM, about 150 felonies), (2) Oregon (3:20-cv-01164-AC, 360 felonies), and (3) CA Northern District (5:20-cv-

09288-NC, 781 felonies) to avoid the political corruption of the Florida Middle District. A warning on the front cover cautioned against bias:

> This complaint involves operatives and cash flows of a major industry (agriculture and ranching) and political party (Republican) with which the assigned judge may not have social, financial, or career connections or sympathies without violation of the judicial code of conduct.

4. But in every case, a judge of the defendants' political party grabbed the case, in knowing violation of the Code Of Judicial Conduct, and denied venue on the PERJURY that 150, 360, and 781 times the felony crime threshold was not "substantial damage," with no argument whatsoever except one case which the FBI declined to investigate because the only issue was a single defective guitar. Of course venue in federal cases is not denied for cases with damages amounting to hundreds of felony crimes.

5. Upon appeal the 9th Circuit failed to overturn the partisan perjuries, and claimed madly that 5,332 felony crimes there by their political partisans did not amount to "substantial damages."

6. But the defendants claim falsely (p. 1) that this costly and laborious search for a nonpartisan venue was instead merely a "protracted litigation campaign" by a "serial litigant" against their massive crimes, which amount to over 100,000 felonies in 50 states.

**FALSE STATEMENTS OF LAW BY DEFENDANTS**

**False Claim Of Laches Or Expiration Of Statute Of Limitations**

7. The motion argues falsely that the RICO four year limitation for filing initial litigation applies to any necessary withdrawal and re-filing of a case, despite timely initial prosecution.

8. The false claim of laches is fully and properly disposed with complete timelines in the Complaint (p. xxvii) section *Pattern Of Racketeering Crime And Statutes Of Limitations*.

9. This is a civil RICO case in which the criterion of timely prosecution, like other such time limits, is intended to ensure that litigation begins within a reasonable period after the plaintiff knew or should have known of the crimes, and does not specify any period for completion of litigation, nor prevent withdrawal and refiling of cases, nor limit refiling where any venue denies seal, investigation request, or other necessities of litigation. The defendants admit (p. 1, 4) that the Plaintiff knew of the claims by 2/7/2018 and filed the case on 12/27/2019, clearly within the 4-year RICO limit. The defendants have no argument whatsoever that subsequent changes of venue and defendants were prohibited despite compliance with the period for initiating litigation.

10. It is abundantly clear that this is a complex case against political racketeering, extensively impeded by partisan judges who unlawfully denied seal and venue. The defendant claims are nothing more than further scams by political racketeers.

**False Claim That No Plaintiff Injury Is Alleged**

11. The motion argues falsely (p. 5) that the Plaintiff does not plead "concrete injuries that were caused by the Walton Defendants' alleged violations of law." But in fact this is stated in detail:

>Complaint
>>*Summary* (p. iv, v)
>>>The Plaintiff has suffered loss of real property tax revenue paid by him on property in Florida to cover debt service on bonds financing the racketeering thefts of public funds, and the loss of years of income from his usual employment due to intensive … investigation and litigation.
>>*Facts of Conservation Land Funding and Misappropriation in Florida*
>>>*Misappropriation of County Conservation Funds* (p. 13)
>>>>Sarasota county created in 1999 [200] the ESLPP Environmentally Sensitive Lands Protection Program to acquire land for conservation purposes, using bonds up to $250 million, with interest and management costs paid by real estate tax.
>>>*Facts of Fraudulent Misappropriation of Funds* (p. 15)
>>>>The criminal activities … have caused the state to incur debt service on bonds issued to finance such purchases, which is paid through real estate fees and taxes including those of nonresidents like the Plaintiff, thereby interfering with interstate commerce...
>>*Facts of The Plaintiff and His Damages 2011-2025* (p. 38, excluding tax loss)
>
>For further detail see also:
>>Appendix D *Conservation Facts and Argument*
>>Appendix E *Unlawful Methods and Criminal Acts*
>>Memorandum of Law 1: Racketeering Law
>>Memorandum of Law 2: Conservation Law
>>Memorandum of Law 3: Fraud and Misappropriation

12. The motion claims wildly (p. 7) that no damage to Florida property owners and the Plaintiff occurred because the state would have spent the same funds on other properties if it had not been deceived to give the funds to the defendants. But of course (1) the state would have saved the funds given to the defendants regardless of the course of future conservation funding; and (2) the state would eventually have to fund purchases of the properties of far higher conservation value that it would have purchased if not deceived by the defendants. This defendant excuse is clearly their rationale for theft of government funds, that "otherwise it just goes back" to taxpayers.

**False Claims That No Proper Claim Is Stated**

13. The motion claims falsely (p. 5) that No Proper Claim Is Stated

<u>False Claim That Standard Of Fraud Claims Is Not Met</u>

14. The defendants claim absurdly (p.7-8) that without specific evidence of mail fraud by Group C, no RICO violation could have occurred. But of course:

A.  RICO does not require that all defendants engage in all aspects of a racketeering operation;

B.  Fraud is not a necessary component of a RICO racketeering enterprise; and

C.  Fraud in interstate commerce is not limited to mail fraud;

15. A racketeering enterprise as defined by RICO may involve many types of offenses (see plaintiff Memorandum of Law 1: Racketeering, section *Racketeering Acts and Penalties*), of which a defendant need only be charged with one or more.

16. Racketeering is proscribed by 18 USC §§ 1952–1968 (Ch. 96), and is defined by § 1961 to include the following:

> (A) any act or threat involving… robbery, bribery, extortion… which is chargeable under State law and punishable by imprisonment for more than one year;
>> See section below *State Crimes That Constitute Federal Racketeering Crimes*.
>
> (B) any act which is indictable under any of the following provisions of USC title 18:
>> section 1341 (mail fraud), section 1343 (wire fraud), section 1344 (bank fraud), …
>>> [applicable to Carlton et al, state off'ls with evidence of fraud & benefit rec'd]
>>
>> section 1503 (obstruction of justice: federal officials, victims, witnesses), …
>>> [applicable to Kovacevich, Travers]
>>> [applicable to state judges, pvt dfdts, sheriff]
>>
>> section 1512 (tampering with a witness, victim, or an informant),
>>> [applicable to state judges, pvt dfdts, sheriff]
>>
>> section 1513 (retaliating against a witness, victim, or an informant), …
>>> [applicable to state judges, pvt dfdts, sheriff]
>>
>> section 1951 (threats or violence), …
>> section 1952 (racketeering), …
>> section 1956 (laundering of monetary instruments),
>> section 1957 (transactions in property derived from specified unlawful activity)…

17. 18 U.S. Code § 1962 provides that a defendant may have invested in the enterprise; acquired interest therein, or participated therein, by means of racketeering; or conspired to cause this.

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity… to use… directly or indirectly, any part of such income… in acquisition of any interest in, or the establishment or operation of, any enterprise… the activities of which affect, interstate or foreign commerce…
> (b) It shall be unlawful for any person through a pattern of racketeering activity… to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18. 18 USC § 1341 (mail fraud) and 18 USC § 1343 (wire fraud) provide that

> Whoever, having devised… any scheme or artifice… for obtaining money… by means of false or fraudulent… representations…, for … executing such scheme… places in any… depository… any matter… to be… delivered by the Postal Service… or… receives therefrom, any such matter… shall be fined… or imprisoned… or both.
> Whoever, having devised… any scheme or artifice… for obtaining money… by means of false or fraudulent… representations… causes to be transmitted by means of wire… communication in interstate or foreign commerce, any… signals… for the purpose of executing such scheme… shall be fined… or imprisoned… or both.

19. The defendants claim that the Complaint does not allege that Group C "had a specific intent to defraud." While fraud is not a requirement necessary for sufficiency of allegation of violation of RICO, it is in fact stated in Count 3 for Group C:

> The above defendants knew from the other defendants above of the false appraisals, false statements of conservation value, and contrary purposes of the funds, and therefore knew the payments to be proceeds of crime.

Clearly Count 3 well states the violations of 18 U.S. Code § 1962 and the essentials of racketeering crime applicable to defendant Group C.

<u>False Claim That Elements Of RICO Conspiracy Are Not Stated</u>

20. The defendants claim falsely (p. 9 et seq) that the Complaint somehow does not state facts sufficient to show that the defendants have a common purpose, organization, and continuity to constitute a racketeering enterprise under RICO. But in fact the the common purpose of these defendants is shown in detail in the Complaint, Appendices, and Memoranda of Law:

    Complaint Count 3 (referencing p. 75, 79-81, 93-95, 107, 159, 172, 181, 186-196)
    Complaint Counts 1, 2, 3, 4, 5, 6, 7, and 8 (common purposes of other defendants)
    Fact Appendix A Group A
    Fact Appendix B Group B
    Fact Appendix C Group C
    Fact Appendix E Unlawful Methods and Criminal Acts

21. Their common purpose is sufficiently clear from their common theft of funds. But apparently the defendants hope that their common purpose, organization, and continuity in acting together over a period of ten years to abuse public office, influence officials, and distort public

information to steal for each other $119 million in state and county funds, could never be divined from this preponderance of evidence of their actions.

22. Note that it is not necessary to establish all details prior to discovery and trial so as to meet the standard of sufficiency of allegation of claims. When discovery and trial are complete, a criminal RICO case must meet the criminal standard of evidence (beyond reasonable doubt) but a civil RICO case must show only a preponderance of evidence. This standard need not be met for sufficiency of allegation of claims, but is already met for many defendants, and is highly likely to be met for additional defendants when discovery and trial are complete.

False Claim That Proximate Cause Is Not Stated

23. The defendants claim (p. 10) that plaintiff injuries resulting from their acts are "too remote" from the violations to constitute "proximate cause." In fact the Plaintiff losses, like those of other property owners taxed to pay for the stolen funds, are clearly the direct result of the violations. The only citation of the defendants is immaterial, a cased that involved only "harm flowing from misfortunes visited upon a third person by the defendant's acts." The defendants fail to argue that the only damage in this case was to persons other than the property owners thereby taxed, because that is obviously false.

False Claim That Stated Federal Law Violations Are Not RICO Violations

24. The defendants claim (p. 10) that two of the statutes listed as violated by them under Count 3 are not RICO violations, and that this would somehow invalidate the RICO claims. Count 3 lists:

    Violations of Federal Law:
        18 USC §§ 1952–1968 Racketeer Influenced Corrupt Organizations Act (RICO)
            These claims are brought under 18 USC §§ 1962 (c) and (d)
        18 USC § 1341 Fraud and Violation of Honest Services
        18 USC § 371 Fraud and Conspiracy Against the United States (see Mem. Of Law 3)
        18 USC § 981 Forfeiture of property and proceeds of crime
    Violations of State Law:
        F.S. 817       Fraud
        F.S. 895       State Racketeering Offenses

Of course 18 USC § 371 and § 981 can be separately violated without effect upon the RICO 18 USC §§ 1952–1968 claims. There appears to be no rational basis for the defendant claim.

False Claim That Florida Law Fraud And Racketeering Violations Are Not RICO Violations

25. The defendants claim (p. 10) that the violations of Florida statutes listed under Count 3 (F.S. 817 Fraud and F.S. 895 State Racketeering Offenses) are not stated with sufficient detail to

constitute violations of Florida law for purposes of RICO. But as argued above (*False Claim That Elements Of RICO Conspiracy Are Not Stated*) it is not necessary to establish all details prior to discovery and trial so as to meet the standard of sufficiency of allegation of claims.

The defendants claim wildly (p. 11) that the state offenses of fraud and racketeering magically do not violate RICO. But in fact:

A. RICO includes every kind of participation in the prohibited activities:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity… to use… directly or indirectly, any part of such income… in acquisition of any interest in, or the establishment or operation of, any enterprise… the activities of which affect, interstate or foreign commerce

B. It would be very difficult to violate F.S. 817 (Fraud) without any resulting use or interest in any activity which affects interstate foreign commerce in violation of 18 U.S. Code § 1962(a).

C. It would be very difficult to violate F.S. 895 (Racketeering defined as in 18 U.S. Code § 1962(a) but without an interstate commerce effect) without any resulting use or interest in any activity which affects interstate foreign commerce, so RICO would always be violated.

Therefore the defendants have no claim that the Florida law violations preclude RICO violation.

False Claim That Charges Must Be Detailed Against All Individual Group C Defendants

26. The defendants claim (p.11, 12) that Complaint allegations are stated against Group C but not against individual members thereof.

27. Count 3 states that:

> The defendants have received payments known by them to be the proceeds of criminal acts, in conspiracy to defraud the state of Florida, Sarasota county thereof, and the United States, and to cause misappropriation of substantial public funds of those entities. … The proof is that the defendants received the payments, and knew them to be based upon false appraisals, and/or to be misappropriated from funds for purposes not thereby served.

28. Count 3 further states for Group C:

> The above defendants knew from the other defendants above of the false appraisals, false statements of conservation value, and contrary purposes of the funds, and therefore knew the payments to be proceeds of crime.

29. Because all of the Group C defendants have roles in the enterprise of MJW Ranch and associated lands, activities, appraisals, applications for and receipt of state conservation funding, each of which constitute participation in the racketeering enterprise, it is unnecessary to state further detail prior to discovery and trial.

**False Claim Of Lack Of Personal Jurisdiction**

30. The defendants claim lack of personal jurisdiction over themselves (p. 12) with no argument but the fact that the original subject offenses occurred within several Florida districts, and that they do not have "minimal contacts" within the D.C. district. But of course, federal jurisdiction has never been determined solely by the residency of one set of defendants. The defendants ignore (a) damages in every federal district due to the additional tax burden imposed upon out-of-state property owners by their offenses; (b) effects upon the Plaintiff residing in another state; (c) the involvement of federal agencies in this case and its predecessor in this district; (d) involvement of interstate commerce by interstate and international cashflows associated with the stolen funds and related payments involving their political party; (e) effects upon federal conservation budgets due to diversion of state funds; (f) injuries to residents of other states by their diversion of conservation funds; and (g) the fact that the defendants reside in three federal districts of Florida. Therefore these defendants have no argument that only one biased Florida district could have jurisdiction.

31. The argument of the defendants consists of immaterial citations of cases wherein local courts have jurisdiction in cases involving only local parties.

32. Jurisdiction here is based upon federal issues and diversity. This action is brought for violations of rights guaranteed by the Constitution of the United States, and violations of federal laws, including 18 U.S.C. §§ 1961–1968 (Racketeering Influenced and Corrupt Organizations Act or RICO). This Court has original jurisdiction under 28 USC §1331 (federal issue) of the claims herein of violations of these statutes of the United States, and under 28 USC § 1332 (diversity) of all claims herein, as well as jurisdiction of claims of interference with interstate commerce, as the Plaintiff is a citizen of Maine, whereas all defendants are citizens or entities of other states, or federal entities.

33. This district court has original jurisdiction under 28 USC §1343(1 and 2) (conspiracy) of the claims herein of deprivations of civil rights by acts of conspiracy in violation of 42 USC §1985 (Civil Rights Act), or failure to prevent such deprivations, and under 28 USC §1343(3) (color of state law) of all claims herein of deprivations of civil rights under color of state law.

**False Claims Of Improper Venue**

34. Venue in RICO action is proper under 18 USC §1965 (a) in any district where a defendant "resides, is found, has an agent, or transacts his affairs." The defendant United States meet all of

these criteria. The racketeering enterprise also "transacts affairs" in DC by taxing Florida property with out-of-state owners, to cover interest on bonds issued for corrupt payments. D.C. residents who own property there lost $56,437 to the racketeering scheme, several times that amount with long-term interest, far exceeding 56 felony crimes here. Residing in DC now and during this period, Donald Trump alone lost about $1,830 in additional taxes on his Palm Beach home due to this racketeering, and President Biden's family lost about $344, a total of twice the felony crime threshold here, seven times that of Florida, and several times those numbers with long-term interest. More than 56 felony crimes in D.C. including multiple felonies against U.S. presidents, establish that the racketeering enterprise "transacts affairs" in D.C.. Venue in the D.C. district is therefore clear.

35. The defendants claim improper venue under 28 U.S.C. § 1391(b), although in fact it allows venue in all federal districts:

> I.   A civil action may be brought in—
> II.  (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> III. (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> IV.  (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

36. Criterion (1) permits venue in any Florida district unless any defendant is a resident of another state (probable in this case but still unknown); criterion (2) permits venue in (a) all federal districts due to a substantial part of the distributed damages occurring there, and (b) the D.C. district due both to substantial damages there (see above), and to substantial events having occurred at federal agencies denying investigation; and criterion (3) permits venue in any district with jurisdiction of any defendant, but only if there is no other venue.

37. None of these criteria exclude the D.C. district. Criterion (2) best applies to this case. The defendants offer no reason to exclude the D.C. district, and merely ignore the distributed damages and federal defendant, in hope of forcing a venue controlled by their political party. They are fully aware that their statements of law on the matter are immaterial.

**CONCLUSION**

The defendant motion lacks any basis in law, having been based upon *pro forma* false claims of (1) expiration of statute of limitations; (2) lack of direct injury to the plaintiff; (3) false and completely baseless quibbles about the claims; (4) lack of personal jurisdiction, and (5) improper venue. Clearly litigation began well within the RICO statute of limitations, the Plaintiff suffered direct injury, the claims are valid and properly stated, and both venue and jurisdiction are clearly shown. Therefore the motion should be denied.

**OATH AND CERTIFICATE**

I, the undersigned Plaintiff John S. Barth do hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. I further certify that on this date a copy of the foregoing document was served electronically via ECF on all counsel of record.

Date:_____7/02/2025_____  _____
John S. Barth, Plaintiff, pro se
P.O. Box 88, Springvale, ME 04083  Jbarth@gwi.net  207-608-1741