**District Court of the United States**
**District of Columbia**

_____

|                                    Case No. 1:25-cv-01136-DLF

John S. Barth,                      |

            Plaintiff              |

v.                                  |        **Memorandum of Law 1**

Mabry Carlton Ranch Inc, et al, |

            Defendants            |        **RACKETEERING**

_____|        Fraud, Unlawful Influence, and Abuse of Office
                                    Affecting State of Florida, Sarasota County, and Plaintiff

## Contents

AUTHORITIES ........................................................................................................ 2

ARGUMENT OF RACKETEERING ...................................................................... 5

  Observations On Florida Racketeering And Conservation .................................. 5

  Racketeering Acts and Penalties........................................................................... 8

  State Crimes That Constitute Federal Racketeering Crimes ............................. 10

    F.S. 817 Fraud ................................................................................................. 11

    F.S. 837 Perjury in Official or Other Proceedings ......................................... 11

    F.S. 838.016 Unlawful Reward to Influence Official Action ......................... 12

    F.S. 838.021 Unlawful Harm to Influence Official Action............................ 13

    F.S. 838.022 Tampering Public Records ........................................................ 14

    F.S. 838.15-16 Bribery of Agents, Employees, Advisors, Appraisers, and Others .............. 14

    F.S. 895 State Racketeering Offenses ............................................................ 15

    F.S. Ch. 112 State Code of Ethics is Broad But Has No Criminal Penalties ........................ 16

    State Law Provides Forfeiture and Voiding of Contracts in Breach of Public Trust............ 19

  Fraud and Violation of Honest Services Law Under 18 USC § 1341 ............... 19

  Government Purchases Were Based on Fraud and Unlawful Influence .................. 22

    Fraud and Bribery By Influence of Advisory Committees and NGOs .................. 22

  Argument of Abuse of Judicial Office by the Defendants ................................. 22

  On the Issues of Concealment and Denial......................................................... 23

    Concealment of Fraud Delays Investigation and Period of Statutory Limitations ............... 23

    Victims of Fraud Must be Encouraged to Admit Rather Than Deny Errors......................... 24

    Tracing Corrupt Influence .............................................................................. 24

  Application of Law to Group A (details pending completion of discovery)............................ 25

  Application of Law to Group B (details pending completion of discovery)............................ 25

  Application of Law to Group C (details pending completion of discovery)............................ 26

  Application of Law to Individual Defendants  (details pending completion of discovery) ...... 26

  CONCLUSION.................................................................................................... 26

**AUTHORITIES**

**Racketeering Cases**

01. <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 24 (2d Cir. 1990)
02. <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 497 (1985)
03. <u>United States v. Kim Dotcom</u>, US DC VA (ED) (pending)
04. <u>United States v. Jaguar Cars, Inc.</u>, 46 F.3d at 269
05. <u>United States v. Fowler</u>, 535 F.3d 408, 418 (6th Cir. 2008)
06. <u>United States v. Posada-Rios</u>, 158 F.3d 832, 857 (5th Cir. 1998)
07. <u>United States v. Workman</u>, 80 F.3d 688, 695-98 (2d Cir. 1996)
08. <u>United States v. Wong</u>, 40 F.3d 1347, 1371-74 (2d Cir. 1994)
09. <u>United States v. Oreto</u>, 37 F.3d at 750-53
10. <u>Napoli v. United States</u>, 32 F.3d 31, 36 (2d Cir. 1994)
11. <u>United States v. Hurley</u>, 63 F.3d at 9
12. <u>United States v. Salinas</u>, 522 U.S. at 62-65;
13. <u>United States v. Harriston</u>, 329 F.3d 779 (11th Cir. 2003)
14. <u>United States v. Starrett</u>, 55 F.3d at 1543-44
15. <u>United States v. Rastelli</u>, 870 F.2d 822, 828 (2d Cir. 1989) (collecting cases)
16. <u>United States v. Harris</u>, 695 F.3d at 1137;
17. <u>United States v. Hutchinson</u>, 573 F.3d 1011 (10th Cir. 2009)

**Honest Services Fraud Cases**

19.129. <u>Shushan v. US</u> 117 F.2d 110, 114 (5th Cir 1941)
20.130. <u>US v Dixon</u>, 536 F. 2d 1388, 1499 (2d Cr. 1976)
21.131. <u>US v. Rauhoff</u>, 525 F.2d 1170, 1175 (7th Cir. 1975)
22.132. <u>McNally v US</u>, 483 US 350, 365 (1987)
23.133. Sorich v. United States, 523 F.3d 702, 712 (7th Cir. 2008); Hasner, 340 F. 3d 1261, 1269; United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997); United States v. Sawyer, 85 F. 3d 713 (1st Cir. 1996); United States v. Bryan, 58 F.3d 933, 940 n.1 (4th Cir. 1995).
24.134. Weyhrauch, 548 F.3d, at 1244.
25.135. United States v. deVegter, 198 F.3d 1324, 1328 (11th Cir. 1999) (quoting U.S. v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997).
26.136. United States v. Siegelman, 561 F.3d 1215, 1219, 1227, 1229 (11th Cir. 2009)
27.137. United States v. Newell, No. 07-80121 (S.D. Fla. Aug. 9, 2007)
28.138. United States v. Masilotti, No. 06-80158 (S.D. Fla. Oct. 30, 2006)
29.139. Skilling v US, 130 Sup.Ct. 2896, 2926, 2934 (2010)
30.140. US v. Skilling, 2011 WL 1290805 (5th Cir. Apr. 6, 2011)

**Constructive Taking of Property**

31.101.     Palazzolo v. Rhode Island, 99-2047 (2001)
32.102.         Lucas v. South Carolina Coastal Council. 505 U.S. 1003
        (112 S.Ct. 2886, 120 L.Ed.2d 798) (1992)

33.103.	Nollan v. California Coastal Comm'n, 483 U. S. 825 (1987)
34.104.	Penn Central Transportation Co. v. New York City 438 U.S. 104 (1978)
35.105.	United States v. General Motors Corp. 323 U.S. 373, 378 (1945)
36.106.	Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922)
37.107.	Old Colony & Fall River R.R. v. County of Plymouth, 14 Gray 155, 161
38.108. James G. Cayon vs. City of Chicopee & another, 360 Mass. 606, 609 (1971)
39.109. Gomillion v. Lightfoot 364 U.S. 339 (1960)
40.110. Mesag Aselbekian & others vs.  Mass. Turnpike Auth. 341 Mass. 398 (1960)
41.111. U.S. v. 564.54 Acres, 441 U.S. 506, 511 (1979)

**Statutes of the United States**

18 USC §§ 1951-1968 (Chapters 95, 96) Racketeering, including
the Racketeering Influenced and Corrupt Organizations Act (RICO)

**Related Ordinances of Sarasota County**

Resolution 92-106: creates Environmentally Sensitive Lands Advisory Board (later ESLOC) to
develop criteria to identify lands and methods for acquisition.
Resolution 92-272: establishes criteria to identify and rank environmental lands.
Ordinance 94-009: establishes policies for environmental lands not publicly owned. (Sarasota
County Environmentally Significant Lands Protection Ordinance)
Resolution 94-236: establishes Myakka River Planning Advisory Board (now MRPAC).
Ordinance 98-025: provides management plan for a 220-foot protection zone as part of the
Myakka River Protection Plan
Ordinance 98-096: increases ad valorem tax to .25 mils for 20 years and authorized bonds to
$53,000,000, subject to referendum, to acquire and manage environmental lands.
Ordinance 99-004: sets up ESLPP and creates Environmentally Sensitive Lands Oversight
Committee (ESLOC) to submit proposed land or easement purchases to the Board for approval.
Ordinance 2005-*** extends the ad valorem tax through 2019
Ordinance 2007-211 sec 1.3 extends the ESLOC and defines its authority to propose land
purchases and uses, and requires that members comply with the state Code of Ethics.

**Statutes of Florida**

**Reference Works**

150. *Manual for Complex Litigation*, MCL 4th, Federal Judicial Center 2004
151. *Criminal RICO: 18 U.S.C. §§1961-1968, A Manual For Federal Prosecutors*, 2016, U.S.
	Department of Justice, Organized Crime and Gang Section
152. *A Study of Public Corruption in Florida and Recommended Solutions*, First Interim Report,
	Nineteenth Statewide Grand Jury, 2010

**Other References**

160. Teresa M. Becvar, *When Does Sleaze Become A Crime? Redefining Honest Services Fraud*

3

1    *after Skilling v. United States*, 88 Chi.-Kent. L. Rev. 593 (2013).

2    (available at: http://scholarship.kentlaw.iit.edu/cklawreview/vol88/iss2/16)

3    161. *Ecology and Economics of Florida's Ranches*, Univ. Fl. IFAS Extension, 2004

4    162. *Things to Know Before Buying a Ranch*, Winder, Schmedt, Noble Research Inst., 2000

5    163. *Trade-Offs Among Ecosystem Services and Disservices on a Florida Ranch*, Swain,

6    Boughton, Bohlen, and Lollis, Society for Range Management, 2013

7    164. *Florida and Metro Forecast*, Inst. for Economic Competitiveness, Univ. of Florida, 2018

8    165. *Closing the Gaps in Florida's Wildlife Habitat Conservation System*, Fl FWC, 1994

9    166. *Conservation Easement Program,* Florida DEP, Div. of State Lands, 2012

10

**ARGUMENT OF RACKETEERING**

Racketeering is prohibited by 18 USC §§ 1951–1968 (Ch. 95, 96) including the Racketeering Influenced and Corrupt Organizations Act (RICO, §§ 1961–1968), where income therefrom is derived from or used to control, or it is engaged in by persons associated with, an enterprise engaged in or affecting Interstate Commerce. Violators are subject to compensatory and treble punitive damages as well as criminal penalties.

**Observations On Florida Racketeering And Conservation**

Residents of Florida know that few people rise or succeed in business in here without being a member of the predominating political party. Government office in Florida has long been a spoils system, where party influence is irresistible, and this is broadly accepted. No one can expect to be appointed, hired, or promoted in state or local office unless they join and follow the requests of the predominant party. Therefore political officials of the defendant state and county are necessarily operatives of the predominant political party, using government office to direct public funds to party advantage, a process which can readily cross the line between political scheming and criminal enterprise.

Rogue elements of any party or faction in government office can readily influence large state grants to benefit the party, such as those of Florida's $400 million annual purchase of conservation lands, for example by purchasing wasteland and "conservation easements" from those likely to contribute some of the funds to the party. In this way public funds are diverted to political campaigns to maintain predominance. Plausible rationales can be manufactured for conservation projects, because even well-intended rationales are often hypothetical, strategies are flexible, little evidence of need or effectiveness is expected, professional dissent can be silenced, and the credentials of malleable professionals can be used to silence critics.

For example, the decline in numbers of the Florida Panther due to declining forested habitat led to its classification as an endangered species. About one hundred panthers remain, concentrated in the sparsely populated far southwestern counties. Efforts of the Florida Fish and Wildlife Conservation Commission (FWC) from 1980 to the present to track panthers and identify signs of their presence, such as roadkill, predation, scat, confirmed interactions, and

telemetry tracking, have allowed the state FWC to map their natural range.[1] There is no evidence whatsoever that panthers have lived in or even ventured to Sarasota county or any adjacent county, except for rare incursions into far southeast Charlotte county.[2] Therefore one would expect that projects purporting to protect their habitat would concentrate on areas within or near their known habitat,[3] not in Sarasota county.

But instead, priority zones for habitat protection were assigned within Sarasota county, about thirty miles from the nearest rare evidence of panthers, and over fifty miles from any areas of regular panther activity.[4] Almost all of the intervening land is open, non-forested land such as farms and ranches, not habitable by panthers, and any paths that might be created between Sarasota county and panther habitat are blocked by several rivers that panther are not known to have crossed.[5] There is no evidence that panthers cross large rivers between habitat areas. There is no evidence that panthers migrate along narrow corridors between habitats of sufficient size; indeed the only known corridor-like habitat is along a midstate valley that does not lead to a larger habitat and is not crossed by rivers, and that is little used. The state FWC has not even designated any of the intervening land as significant for habitat preservation,[6] nor have they proposed a panther migration corridor to Sarasota county. Yet the state FWC and county officials have consistently claimed that the land purchases in Sarasota county constitute a "migration corridor" connecting existing habitat far away with public land in Sarasota county.[7]

The grants made for purchases of land in Sarasota county, and for conservation easements, contain no provisions requiring the land to be reforested as needed for use by panthers, and in fact permit ranch activity to continue even on land purchased as panther habitat.[8] Therefore the grants and easements involve no cost to the rancher whatsoever, and no provide benefit to panthers whatsoever.

---

[1] see Exhibits Vol. 1
[2] Ibid
[3] Ibid
[4] Ibid
[5] Ibid
[6] Ibid
[7] Ibid
[8] Ibid

Furthermore, the entirety of public lands in Sarasota county, together with land designated important for panther habitat, is barely enough for a few panthers,[9] even if it were reforested. To create such a habitat, including even land of high value along Interstate 75 adjacent to rapidly expanding coastal towns and cities, would cost hundreds of millions of dollars, for the prospect of merely enticing a few panthers there. Purchasing the intervening land to connect to existing panther habitat, bridging the intervening rivers if possible, and reforesting all of the land would cost billions of dollars, all for a few hypothetical panthers. Such purchases would also introduce large carnivorous animals in proximity to high density residential areas.

It is unlikely that the people of Florida would approve such a project if they knew the facts. With a strongly anti-environmental state government (the governor recently prohibited use of the term "global warming" in official communications), it is unlikely that Florida would have funded large environmental programs without some benefit to an unstated group of people in or connected with the legislature. This "conservation" funding would not exist without the prospect of political insiders and legislator election campaigns getting the funds.

In fact, these funds for land purchases and conservation easements have been paid primarily to members of the predominant political party, by purchasing land of influential party members, and a substantial part of these funds have been used for political purposes.

Yet conservation projects are popular with the electorate, who wish to believe that expenditures to protect endangered species or habitats will be effective.

A racket is best described, I believe, as something that is not what it seems to the majority of people. Only a small inside group knows what it is about. It is conducted for the benefit of the very few at the expense of the masses. – Smedley Butler

"a racketeer is someone who creates a threat and then charges for its reduction." [112] Government land management agencies commonly simulate, fabricate and exaggerate threats in ways common to all other racketeers. Constantly at war with… nature and the land they manage, this pattern of immoral extractive commerce targeting public land is a microcosm of a vast universe of Government Sponsored Enterprise (GSE).

The landmark lawsuit *Isaak Walton League vs. Butz* (1975)… shut down clearcutting in the Monongahela National Forest... The timber industry… needed a new law… they also needed a cover story... The pretext would be planning… new agency regulations… made all the right sounds, looked good on the surface, but embedded in its legal double-talk lurked the prize industry wanted above all else: legalized clearcutting…forest

---

[9] Ibid

1 "conservation" was born. Deregulation… of everything – trees, water, camping, special
2 events, grazing… anything that could turn a profit would be privatized.
3 … irreversible damage being done to our natural treasures.[10]
4

**Racketeering Acts and Penalties**

Racketeering is proscribed by 18 USC §§ 1952–1968 (Ch. 96), and is defined by § 1961

to include the following:

(A) any act or threat involving… robbery, bribery, extortion…  which is chargeable
under State law and punishable by imprisonment for more than one year;
See section below *State Crimes That Constitute Federal Racketeering Crimes*.
(B) any act which is indictable under any of the following provisions of USC title 18:
section 1341 (mail fraud), section 1343 (wire fraud), section 1344 (bank fraud), …
[applicable to Carlton et al, state off'ls with evidence of fraud & benefit rec'd]
section 1503 (obstruction of justice: federal officials, victims, witnesses), …
[applicable to Kovacevich, Travers]
[applicable to state judges, pvt dfdts, sheriff]
section 1512 (tampering with a witness, victim, or an informant),
[applicable to state judges, pvt dfdts, sheriff]
section 1513 (retaliating against a witness, victim, or an informant), …
[applicable to state judges, pvt dfdts, sheriff]
section 1951 (threats or violence), …
section 1952 (racketeering), …
section 1956 (laundering of monetary instruments),
section 1957 (transactions in property derived from specified unlawful activity)…

18 U.S. Code § 1962 provides that a defendant may have invested in the enterprise; acquired

interest therein, or participated therein, by means of racketeering; or conspired to cause this.

(a) It shall be unlawful for any person who has received any income derived, directly or
indirectly, from a pattern of racketeering activity… to use… directly or indirectly, any
part of such income… in acquisition of any interest in, or the establishment or operation
of, any enterprise… the activities of which affect, interstate or foreign commerce…
(b) It shall be unlawful for any person through a pattern of racketeering activity… to
acquire or maintain, directly or indirectly, any interest in or control of any enterprise
which is engaged in, or the activities of which affect, interstate or foreign commerce.
(c) It shall be unlawful for any person employed by or associated with any enterprise
engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or
participate, directly or indirectly, in the conduct of such enterprise's affairs through a
pattern of racketeering activity ...
(d) It shall be unlawful for any person to conspire to violate any of the provisions of
subsection (a), (b), or (c) of this section.

---

[10] 102. *Some Call It Forest Management*, Steve Kelly, Counterpunch, 8/24/18
https://www.counterpunch.org/2018/08/24/some-call-it-forest-management-i-call-it-racketeering/

18 USC § 1341 (mail fraud) and 18 USC § 1343 (wire fraud) provide that

> Whoever, having devised… any scheme or artifice… for obtaining money… by means of false or fraudulent… representations…, for … executing such scheme… places in any… depository… any matter… to be… delivered by the Postal Service… or… receives therefrom, any such matter… shall be fined… or imprisoned… or both.
> Whoever, having devised… any scheme or artifice… for obtaining money… by means of false or fraudulent… representations…  causes to be transmitted by means of wire… communication in interstate or foreign commerce, any… signals… for the purpose of executing such scheme… shall be fined… or imprisoned… or both.

This section is applicable to defendants Carlton et al, via ARC, BOT, SWFWMD with evidence of communication of fraud.


18 USC § 1503 (obstruction of federal justice) provides

> (a) Whoever… endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)…

This section is applicable to defendants Kovacevich, Travers, et al by their direct influence upon federal courts. It is applicable to the defendant state judges, private defendants, and others by their direct influence upon state courts. It is applicable to the defendant federal agencies by denial of investigation and refusal to prosecute.


> 18 USC § 1512 (obstruction of justice by influencing persons) provides fines and imprisonment of 20 to 30 years of "Whoever… persuades… with intent to… influence… testimony" or "conceals a… document" or "otherwise… influences, or impedes any official proceeding" or "hinders… or dissuades any person from… reporting… a Federal offense… or… causing a criminal prosecution."

This section is applicable to defendants Bonner, Kovacevich, federal agencies, and others by their refusal to investigate or prosecute racketeering crime.


> 18 USC § 1513 (obstruction of justice by retaliation) provides provides fines and imprisonment of 20 to 30 years of "Whoever knowingly… damages… property of another… with intent to retaliate" for "attendance … at an official proceeding" or providing "testimony… or… information relating to … a Federal offense" or makes any "interference with the… livelihood of any person" for providing such information, or attempts or conspires to do so.

This section is applicable to defendants Bonner, Carltons, et al, and private defendants by their denial of legal remedies to the Plaintiff.

18 USC § 1952 (Ch. 95) further proscribes racketeering with an earlier and more limited definition:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of any unlawful activity; or …
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform—
> (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; …
> (b) As used in this section (i) "unlawful activity" means (1) any business enterprise … on which the Federal excise tax has not been paid, … or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title …

The referenced 31 USC Ch. 53 (§§ 5311-5332) requires reports of large financial transactions.

18 USC § 1956(a) prohibits transaction of proceeds of unlawful activity (money laundering); and

18 USC § 1957 prohibits transactions in property derived from unlawful activity.

18 USC § 1510 establishes penalties for obstruction by banks and insurance companies of racketeering investigations:

> (b) (1) Whoever, being an officer of a financial institution, with the intent to obstruct a judicial proceeding, directly or indirectly notifies any other person about the existence or contents of a subpoena for records of that financial institution, or information that has been furnished in response to that subpoena, shall be fined under this title or imprisoned not more than 5 years, or both.

**State Crimes That Constitute Federal Racketeering Crimes**

The RICO Act 18 USC § 1961(A) includes among racketeering crimes those state crimes punishable by imprisonment for one year or more. Florida law concerning corruption of public officials defines felonies of three degrees and misdemeanors of the first degree with penalties under Florida Statutes 775.082(3)(b), (d), (e), and (4)(a) not exceeding 30 years for first degree felony, 15 years for second degree felony, 5 years for third degree felony, and 1 year for first degree misdemeanor, which thereby constitute racketeering crime under 18 USC § 1961(A).

The state offenses defined include false or contradictory statements in an official proceeding (F.S. 837), soliciting, offering, giving, or receiving rewards or suggesting financial or other harm to influence official actions (838.016 and 838.021), tampering with public records

(838.022), bribery of agents, employees, fiduciaries, appraisers, professional advisors, or

organization officers to violate a statutory or common-law duty (838.15 and 838.16), alteration

of public records or misuse of confidential information for private gain (839.13), all constitute

federal racketeering crime under 18 USC 1961(A).

**F.S. 817 Fraud**

https://law.justia.com/codes/florida/2005/TitleXLVI/ch0817.html

817.034  Florida Communications Fraud Act.--
(4)  OFFENSES.--
(a)  Any person who engages in a scheme to defraud and obtains property thereby is
guilty of organized fraud, punishable as follows:
1.  If the amount of property obtained has an aggregate value of $50,000 or more, the
violator is guilty of a felony of the first degree, punishable as provided in s. 775.082, s.
775.083, or s. 775.084.

All statements by Florida public officials and their advisers,

1. that ranches, which eliminated most of the natural forest habitat of the species to be protected,

were now "native habitat" themselves, or that their maintenance in that devastated state at public

expense served conservation purposes, or

2. that ranch land easements or ranch purchases allowing ranch use protected habitat of the

Florida panther or black bear, or

3. that ranch easements or title purchases had market value greater than their market value, or

4. (details pending discovery),

were false statements about ranch assets including land and easements acquired for conservation

purposes, were intended to defraud the state of conservation funds, and were acts of organized

fraud, felonies of the first degree under Florida law, and racketeering crime under 18 USC

1961(A).

**F.S. 837 Perjury in Official or Other Proceedings**

Florida law defines perjury as the making under oath of statements known to be false

"before any legislative, judicial… or other … agency or official" as a third degree felony:

837.02 Perjury in official proceedings.--
(1)  Except as provided in subsection (2), whoever makes a false statement, which he or
she does not believe to be true, under oath in an official proceeding in regard to any
material matter, commits a felony of the third degree...

(3)  Knowledge of the materiality of the statement is not an element … and the defendant's mistaken belief that the statement was not material is not a defense.
837.021  Perjury by contradictory statements.--
(1)  …whoever, in one or more official proceedings, willfully makes two or more material statements under oath which contradict … commits a felony of the third degree...
837.06  False official statements.--
Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty shall be guilty of a misdemeanor…

All statements by Florida public officials and their advisers in official proceedings, that

1. that ranches, which eliminated most of the natural forest habitat of the species to be protected, were now "native habitat" themselves, or that their maintenance in that devastated state at public expense served conservation purposes, or

2. that ranch land easements or ranch purchases allowing ranch use protected habitat of the Florida panther or black bear, or

3. (details pending discovery),

were false or contradictory statements under oath and acts of perjury in official proceedings, a felonies of the third degree under Florida law and racketeering crimes under 18 USC 1961(A).

**F.S. 838.016 Unlawful Reward to Influence Official Action**

Florida law defines bribery as soliciting, offering, giving, or receiving any benefit for actions or efforts to influence actions in violation of public duty, as a second degree felony:

(1) It is unlawful for any person to knowingly and intentionally give, offer, or promise to any public servant, or… to knowingly and intentionally request, solicit, accept, or agree to accept, any pecuniary or other benefit… for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty…
(2) It is unlawful for any person to knowingly and intentionally give, offer, or promise to any public servant, or… to knowingly and intentionally request, solicit, accept, or agree to accept, any pecuniary or other benefit… for the past, present, or future exertion of any influence upon or with any other public servant regarding any act or omission… within the official discretion of the other public servant, in violation of a public duty…
(4) Whoever violates… this section commits a felony of the second degree…

All acts of Florida public officials, employees, advisers, party members, or persons with any interest in the subject ranch land, offering or receiving any "pecuniary or other benefit… for" a past, present, or future act, or influence upon any other public servant regarding any act, for purchase of ranch land or easements thereon for maintenance as ranches at public expense of

1   funds for conservation purposes, in violation of a public duty, were acts of bribery, a felony

2   crime under Florida law and racketeering crime under 18 USC 1961(A).

3   Standard of Judgment

4        In federal cases of bribery such as U.S. v. Menendez [1:23-cr-00490, (S.D.N.Y.), 2023]

5   the standard of judgment has excluded cases where repeated campaign contributions for repeated

6   favorable acts might be fairly seen as a pattern of contributions approving a pattern of official

7   actions, rather than a *quid pro quo* "pecuniary or other benefit… for" the official act. However,

8   the presumption of quid pro quo payment for official acts must be made where the "pecuniary or

9   other benefit" was directed by the donor to the specific public official whose acts were known to

10  influence "pecuniary or other benefit" to the specific donor. Where specific beneficiaries of

11  public acts gave or promised "pecuniary or other benefit" to specific public officials, who gave

12  them the benefits or influenced such a decision, the benefits are quid pro quo, without a verbal or

13  written agreement.[11]

14       Such benefits include appointments, promotions, future hiring, publicity, campaign

15  funding, or payments of goods or services, or promises or assurances thereof.

16  **F.S. 838.021 Unlawful Harm to Influence Official Action**

17       Florida statute 838.024(5) defines "harm" as any "pecuniary or other loss, disadvantage,

18  or injury" and F.S. 838.021 prohibits such acts or threats to a public official or employee, to

19  influence actions or omissions in violation of public duty, as second or third degree felonies:

20       (1)  It is unlawful to harm or threaten to harm any public servant, … with the intent to:
21       (a)  Influence the performance of any act or omission … within the official discretion of
22       the public servant, in violation of a public duty…
23       (b)  Cause or induce the public servant to use or exert, or procure the use or exertion of,
24       any influence upon or with any other public servant regarding any act … within the
25       official discretion of the public servant, in violation of a public duty, …
26       (2)  Prosecution under this section shall not require any allegation or proof that …that
27       the matter … might by law properly be brought before him or her, … or that his or her
28       official action was necessary ….
29       (3)(a)  Whoever unlawfully harms any public servant …shall be guilty of a felony of the
30       second degree...

---

[11] The date of *Citizens United v. FEC* was 1/21/2010. But on 4/28/2010 a Florida county commissioner was arrested, dismissed by governor Crist, and charged with felony bribery, grand theft and accepting illegal campaign contributions for "helping a developer move his project ahead." See *County Commissioner Mildred Fernandez Arrested*, Florida Trend, 4/28/2010 https://www.floridatrend.com/print/article/4079

(b)    Whoever threatens unlawful harm … guilty of a felony of the third degree….

All acts of public officials, employees, party members, donors to political campaigns, or others, suggesting to a public official or employee the prospect of a poor performance evaluation, severe treatment, non-promotion, demotion, termination, denial of campaign funds or demanding retirement of an elected official, for refusal to act in violation of public duty, including all such acts of the defendants seeking purchase of ranch land or easements thereon for maintenance as ranches at public expense of funds for conservation purposes, or obstruction of justice or obstruction of investigations in this matter, or retaliation against the Plaintiff or others, constitute unlawful threat of harm and are felony crimes under Florida law, and racketeering crime under 18 USC 1961(A).

**F.S. 838.022 Tampering Public Records**

Florida statute 838.022 prohibits official tampering or destruction of public records or their use, as a third degree felony:

(1)    It is unlawful for a public servant or public contractor, to…obtain a benefit for any person … by:
(a)    Falsifying… any official record or official document;
(b)    Concealing… or altering any official record…
(2)(b)    An official record or official document includes only public records.
(3)    Any person who violates this section commits a felony of the third degree...

All acts of altering public records by Florida public servants or public contractors and their advisers to provide false evidence that the purchase and maintenance of ranch land or easements thereon at public expense served conservation purposes, or to inflate the appraised value of such land or easements thereon, or to obstruct justice or obstruct investigations in this matter, or to retaliate against the Plaintiff or others, are felonies of the third degree under Florida law, and racketeering crime under 18 USC 1961(A).

**F.S. 838.15-16 Bribery of Agents, Employees, Advisors, Appraisers, and Others**

Florida statutes 838.15 and 838.16 prohibit bribery of agents, employees, fiduciaries, appraisers, professional advisors, and organization officers, as a third degree felony:

838.15    Commercial bribe receiving.—
(1)    A person commits the crime of commercial bribe receiving if the person solicits, accepts, or agrees to accept a benefit with intent to violate a statutory or common-law duty to which that person is subject as:

14

(a)    An agent or employee of another;
(b)    A trustee, guardian, or other fiduciary;
(c)    A lawyer, physician, accountant, appraiser, or other professional adviser;
(d)    An officer, director, partner, manager, … of the affairs of an organization; or…
(2)    Commercial bribe receiving is a third degree felony, …
838.16    Commercial bribery.—
(1)    A person commits the crime of commercial bribery if, knowing that another is subject to a duty described in s. 838.15(1) and with intent to influence the other person to violate that duty, the person confers… or agrees to confer a benefit on the other.
(2)    Commercial bribery is a third degree felony…

All offers or receipt of benefits by persons including advisers of public officials including state and county and SWFWMD officials or employees, ESLOC members, officers or managers of environmental or ranching organizations, professional advisers, scientists, appraisers, or trustees, for violation of statutory or common-law duty, are acts of commercial bribery, felonies of the third degree under Florida law, and racketeering crime under 18 USC 1961(A).

**F.S. 895 State Racketeering Offenses**

Florida statute chapter 895 prohibits racketeering as a first degree felony, and defines racketeering crimes such as those of 18 USC 1961(B) noted above, and further state offenses:

895.02  Definitions…
(1) "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:
(a) Any crime which is chargeable by indictment or information under the following provisions of the Florida Statutes: …
10. Chapter 517, relating to sale of securities and investor protection…
14. Chapter 560, relating to money transmitters, if… punishable as a felony…
17. Section 655.50… reports of currency transactions, when… punishable as a felony...
28. Chapter 815, relating to computer-related crimes.
29. Chapter 817, relating to fraudulent practices, false pretenses, fraud generally…
35. Chapter 837, relating to perjury.
36. Chapter 838, relating to bribery and misuse of public office.
37. Chapter 843, relating to obstruction of justice…
42. Chapter 896, relating to offenses related to financial transactions.
43. Sections 914.22 and 914.23, relating to tampering with a witness, victim, or informant, and retaliation against a witness, victim, or informant…
(b) Any conduct defined as "racketeering activity" under 18 U.S.C. s. 1961(1)…
(3) "Enterprise" means any individual, sole proprietorship, partnership, corporation… or other legal entity, or any… group… associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities...

All acts of the defendants involving state financial crime, communication or commerce within the state related to crime, obstruction of justice in state law, or tampering or retaliation against a witness, victim, or informant in state or local proceedings, are racketeering offenses and felony crime under Florida law, and thereby federal racketeering crime under 18 USC 1961(A).

**F.S. Ch. 112 State Code of Ethics is Broad But Has No Criminal Penalties**

The state Constitution was revised in 1968 to require a statutory code of ethics for state employees and non-judicial officers prohibiting conflict between public duty and private interests. However, criminal penalties were eliminated in 1974, so that violations are not in themselves crimes under racketeering law. The State Code of Ethics F.S. Ch. 112 does provide for voiding of contracts and forfeiture of pensions unethically obtained.

The Sunshine Amendment of 1976 established an independent Commission on Ethics (COE) to investigate complaints. However the members of the COE are political appointees by the Governor (5), President of the Senate (2), and Speaker of the House (2), and it merely records financial disclosure returns and slaps wrists when returns are not filed. It does not verify disclosed data, does not investigate unless a complaint is sworn, and does not impose penalties.

**State Code of Ethics on Conflicts of Interest**

Florida Statute Ch. 112 § 313 prohibits only flagrant conflicts of interest, evaded with simple schemes. It provides no criminal or civil penalties beyond impeachment, termination, restitution, loss of pension benefits, or fines to $10,000, which is mere overhead for those engaged in the theft of tens of millions. Section (3) provides:

> "No… public officer… shall either directly or indirectly purchase… realty… for his or her own agency from any business entity of which the officer… has a material interest"

But it ignores official pressure upon an agency to cause such purchase. Section (4) provides that

> No public officer… or his or her spouse… shall, at any time, accept any… thing of value when such public officer… should know, that it was given to influence… action.

But this does not exclude promises of promotions and favors and paybacks to influence actions, and it excludes state employment actions, controlled by political parties to influence actions. Employees know that they will lose their career if they do not comply with every party request. A subculture of opportunists will commit wrongful acts for any wealthy person, especially under party protection, for vague promises of business or personal favors. Section (6) provides that:

> No public officer, employee… shall… use his or her official position or… resource… to secure a… benefit… for himself, herself, or others.

But this requires proof that the position was abused, difficult to obtain when all witnesses are dependent for employment upon the political party involved. Section (6)(a) prohibits the public officer or agency employee from having a business relationship that impedes official duties:

> No public officer or employee of an agency shall have… any employment or contractual relationship that… would impede the… faithful discharge of his or her public duties.

But then it specifically exempts legislators, without specific proof of direct influence:

> When the agency referred to is a legislative body and the regulatory power over the business entity resides in another agency, or when the regulatory power which the legislative body exercises over the business entity or agency is strictly through the enactment of laws or ordinances, then employment or a contractual relationship with such business entity by a public officer or employee of a legislative body shall not be prohibited by this subsection or be deemed a conflict.

This requires specific proof that the legislator sought to directly influence an agency.

**State Code of Ethics on Payments to Officials and Lobbyist Registration**

FS 112.3148 requires reporting of gifts to public officials ("reporting individual") and prohibits their direct or indirect solicitation or receipt. Sections (3,4) provide:

> (3) A reporting individual or procurement employee is prohibited from soliciting any gift from a vendor doing business with the… agency, a political committee… or a lobbyist …for the personal benefit of the reporting individual or… of the immediate family...
> (4) A reporting individual or procurement employee or any other person on his or her behalf is prohibited from… accepting, directly or indirectly, a gift from a vendor doing business with the… agency, a political committee… or a lobbyist… in excess of $100…
> (5) A vendor doing business with the… agency; a political committee… a lobbyist…  is prohibited from giving, either directly or indirectly, a gift… in excess of $100 to the reporting individual or procurement employee or any other person on his or her behalf…

All solicitation or receipt by public officials or procurement employees of any benefit (including campaign funding, political advancement, or employment preferments) from an entity or political organization related to a landowner (vendor) for approval or purchase of the subject lands or easements for benefit to the defendants, were required to be reported and are violations of FS 112.3148(3, 4).

All gifts (including political contributions, favorable business deals, and acts of employment or political support) by or on behalf of defendant landowners to influence state or local government

agencies to approve or purchase the subject lands or easements, were required to be reported and are violations of violations of FS 112.3148(5).

**State Code of Ethics on Gifts From Political Committees**

F.S. 112.31485 Prohibits political committees making "gifts" meaning "transfer of funds, or… anything of value… not primarily related to… political activities". Sections (2,3) provide:

> (2)(a)   A reporting individual or procurement employee… is prohibited from soliciting or knowingly accepting, directly or indirectly, any gift from a political committee.
> (b)   A political committee is prohibited from giving, directly or indirectly, any gift to a reporting individual or procurement employee or… immediate family.
> (3)   Any person who violates this section is subject to a civil penalty equal to three times the amount of the gift. Such penalty is in addition to the penalties provided in s. 112.317 and shall be paid to the General Revenue Fund of the state. A reporting individual or procurement employee… who violates this section is personally liable for payment of the treble penalty. Any agent or person acting on behalf of a political committee who gives a prohibited gift is personally liable for payment of the treble penalty.

Payments to a public official via agency employees controlled by a political party, are gifts by a political committee. The employment of such persons by a political party is a gift, where it is understood to be conditioned upon performance of requests from the party.

**State Law on Influence Upon State Water Management Districts (WMDs)**

Florida designates state Water Management Districts to purchase and manage lands to ensure supplies of water for consumption and agriculture. FS 112.3261 provides that:

> (2) A person may not lobby a district until such person has registered as a lobbyist ...
> (6) A district shall be diligent to ascertain whether persons required to register pursuant to this section have complied. A district may not knowingly authorize a person who is not registered pursuant to this section to lobby the district.
> (7) Upon receipt of a sworn complaint alleging that a lobbyist or principal has failed to register with a district or has knowingly submitted false information in a report or registration required under this section, the commission shall investigate …

Lobbying is defined as seeking on behalf of another to influence a WMD decision on "policy or procurement" or seeking the "goodwill of a district official or employee." All actions to influence SWFWMD to purchase or manage the subject lands or easements by interested persons not registered as lobbyists, and all actions knowingly authorizing such influence, are violations of the state code of ethics requiring investigation, impeachment, and prosecution.

**State Law Provides Forfeiture and Voiding of Contracts in Breach of Public Trust**

FS 112.3175 provides for the voiding of contracts made as a result of impeachable offenses by public officials and employees:

> (1)   Any contract that has been executed in violation of this part is voidable:
>   (a)   By any party to the contract.
>   (b)   In any circuit court, by any appropriate action, by:
>     1.   The commission.
>     2.   The Attorney General.
>     3.   Any citizen materially affected by the contract and residing in the jurisdiction represented by the officer or agency entering into such contract.
> (2)   Any contract that has been executed in violation of this part is presumed void with respect to any former employee or former public official of a state agency...

Contracts for purchase of conservation lands or easements or for continuance of ranching activity thereon may be voided in state action by the Ethics Commission or the AG or any resident, which may be part of the process of seizure of payments or seizure of the subject lands and their reforestation for conservation purposes.

FS Ch. 112.3173 also provides for forfeiture of pension benefits by public officials and employees engaged in embezzlement, theft, bribery, or any impeachable offense:

> (3)   FORFEITURE.—Any public officer or employee who is convicted of a specified offense committed prior to retirement… shall forfeit all… benefits under any public retirement system… except for the return of his or her accumulated contributions...
> (4)(a)   The clerk of a court in which a proceeding involving a specified offense is being conducted… shall furnish notice of the proceeding to the Commission on Ethics after the state attorney advises the clerk...

**Fraud and Violation of Honest Services Law Under 18 USC § 1341**

The federal mail fraud statute of 1872 prohibited use of the mail for "any scheme or artifice to defraud" and a 1909 amendment added the words "or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Courts have uniformly held that this need not involve defrauding someone of money or property. Fraud of several kinds and means is codified under 18 USC Chapter 63 (§ 1341 - 1349).

The Frauds and Swindles act 18 USC § 1341 prohibits any "scheme or artifice" to defraud, including obtaining money by "fraudulent pretenses, representations, or promises" or to sell anything "represented to be or intimated" to be other than what it is.

1    Whoever, having devised… any scheme or artifice to defraud, or for obtaining money or
2    property by means of false… pretenses… or to sell… anything represented to be… such
3    counterfeit or spurious article, for the purpose … places… any matter… to be sent… by
4    the Postal Service, or… interstate carrier, or… receives therefrom, any such matter…
5    shall be fined… or imprisoned not more than 20 years, or both.
6
7  Persons who make any attempt or conspiracy toward any offense under Chapter 63 are subject

8  under 18 USC § 1349 to the same penalty as the offense.

9        Where proof of public loss of money or property is difficult, cases are brought on the

10  grounds that the public official engaged in a scheme to deprive the people of their intangible

11  rights to the official's honest and impartial services. Generally, proof must be made of 1) a

12  scheme to defraud, 2) intent to defraud, and 3) use of the wires or mails in furtherance thereof.

13        With *Shushan* [19] (where businessmen bribed local officials for a favorable contract)

14  circuit courts began to hold that the mail fraud statute precludes deprivation of the right to the

15  "honest services" of the offender, whether or not this results in loss to the public. Even where the

16  public may benefit, such deprivations "are nonetheless frauds since the public official has been

17  paid to act in breach of his duties." [20] Even where the state might profit in a scheme set up by

18  bribery, its people "were defrauded of their right to have the business of the [state] conducted

19  free from bribery, their right to loyal and faithful service of their state officials, and their right to

20  those secret profits obtained by [the schemer]."[21]

21        When the Supreme Court ruled in *McNally* [22] that the statute was limited to the

22  protection of property rights, Congress enacted 18 USC § 1346 to clarify that

23    For the purposes of this chapter, the term "scheme or artifice to defraud" includes a
24    scheme or artifice to deprive another of the intangible right of honest services.
25
26  Most circuits held that proof of violation of federal, state, or local law is not required, [23] and

27  that the duty of honest services is "governed by a uniform federal standard inherent in §1346"

28  [24]. The 11th Circuit further held [25] that

29    officials inherently owe a fiduciary duty to the public to make governmental decisions in
30    the public's best interest. If the official instead secretly makes his decision based on his
31    own personal interests . . . the official has defrauded the public of his honest services.
32
33  The 11th Circuit upheld the conviction of an Alabama governor in *Siegelman* [26] of federal

34  crimes including honest services fraud, for appointing a healthcare corporation official from

1   whom he had received a $500,000 contribution, to a state healthcare board. Any "express words

2   of promise" permitted jury inference of an agreement to exchange money for official action.

3        Florida public officials are frequently convicted of official acts affecting real estate

4   interests of themselves or persons known to them. In *Newell* [27] a Palm Beach County

5   commissioner admitted official acts to extend development rights to increase the value of

6   properties in which he held an interest and received a share of the profits. In *Masilotti* [28]

7   another Palm Beach County commissioner was convicted of honest services fraud based on

8   misuse of public office to advocate real estate transactions benefiting his interests therein.

9        The Supreme Court ruling in *Skilling* [29] in 2010 limited construction to "fraudulent

10  schemes to deprive another of honest services through bribes or kickbacks" exonerating Enron

11  CEO Skilling for willfully deceiving stockholders as to investment risks, without bribery. Upon

12  remand the issue was not determinative, and Skilling was convicted on all counts [30].

13       Efforts to clarify the law have been blocked by related corruption in Congress, including

14  2009 S. 49, H.R. 2822, S. 3854, and H.R. 6391, 2010 H.R. 1468, S. 3854 (Honest Services

15  Restoration Act),  2011 H.R. 2572 & H.R. 1793 (Clean Up Government Act), S. 401 (Public

16  Corruption Prosecution Improvements Act, and Public Officials Accountability Act).

17       The Florida legislature campaigns and predominant political parties are also largely

18  funded by fraud denying "honest services" to citizens, as shown by over *seventy federal*

19  *convictions annually* of Florida public officials, the highest rate in the United States for many

20  years. As a result, Florida bills to extend state law to honest services crime (2010 S.B. 1076 and

21  734) were not passed. Upon petition by an outgoing governor, the state judiciary set up a grand

22  jury to investigate such crime, which made detailed recommendations in 2010 [152]:

23      We recommend criminalizing misuse of public position under F.S. 112.313 (6)…
24      It is our recommendation that if sections of the Code of Ethics were criminalized under
25      Chapter 112, then F.S. 112.317(1) should be amended to include language such as:
26      "anyone who violates 112.313(3), (6), (7) or 112.3143(2), (3), (4) 'willfully' or
27      'intentionally' commits a felony of the third degree, punishable as provided in s. 775.082,
28      s. 775.083, or s. 775.084."

30  All reform recommendations were ignored by the legislature.

31       Therefore, honest services fraud still requires proof of the offer, solicitation, grant or

32  receipt of some benefit for official action, although no loss to the public need be shown.

**Government Purchases Were Based on Fraud and Unlawful Influence**

This section argues in general that the subject purchases of land and easements were made on the basis of criminal acts of the defendants, including fraudulent statements, felony influence of public officials, and abuse of public office. Details for the specific defendants and subject purchases is presented below in APPLICATION OF LAW TO THE DEFENDANTS. See Memorandum of Law 3: Fraud for details.

**Fraud and Bribery By Influence of Advisory Committees and NGOs**

The defendants have systematically infiltrated, controlled, and corrupted committees and non-government organizations serving as advisors and agents of government in conservation land purchases, over a period of many years. By pretending to be doing a public service and serving public conservation goals, they have deceived the public to trust them that the purchase of worthless "conservation easements" over their own devastated ranch land would somehow serve public purposes, and have sold failing ranches or useless rights thereon for vast sums. In so doing they have violated Florida statutes and federal laws over many years, in a pattern of racketeering activity. See Memorandum of Law 3: Fraud for further detail.

In cases of bribery of witnesses by defendants, and conversely the promise of lesser sentences by plea-bargaining prosecutors, the influence of rewards and punishments upon public statements or testimony as to facts is clearly recognized. The rewards of future career promotions, business deals, or political campaign funding, and the punishments of negative career evaluations, business denied, or political opposition, have the same effect upon the testimony of committees and NGOs advising county and state government on the value of conservation purchases. These are bribes very systematically arranged over many years, using threats and promises of career and financial gains rather than cash payments.

**Argument of Abuse of Judicial Office by the Defendants**

**Judicial Abuse of Discretion**

Protected judicial discretion is limited to the application of fixed legal principles in a manner which in fact serves and does not defeat the ends of substantial justice.

The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised ex gratia, but a legal discretion, to be exercised in

conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. …If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other. Transit Ads, Inc. v. Tanner Motor Livery, Ltd. 270 Cal. App. 2d 275 citing Benjamin v. Dalmo Mfg. Co. (1948) 31 Cal. 2d 523, 526, quoting from Bailey v. Taaffe 29 Cal. 422 (1866)

The US Fourth Circuit court in Sloas v. CSX Transp., Inc., 616 F.3d 380, 388 (4th Cir. 2010) noted that a district court

…necessarily abuses its discretion when it makes an error of law.

Under the standards of federal law, defendants Kovacevich and Bonner abused the discretion of judicial office. All of these abuses are within the executive and administrative capacities of judicial office, in which misconduct is not protected by judicial immunity, as noted below.

Fact Appendix F (Bonner, state)

**On the Issues of Concealment and Denial**

**Concealment of Fraud Delays Investigation and Period of Statutory Limitations**

Concealment of fraud and racketeering substantially delays victims in reaching the point where they "should have known" of their injury. The victims of fraud by government officials often have no way of knowing the full nature and extent of damages, and are usually unable to make a full time investigation over a period of years, to determine the structure, scale, and participants of racketeering activity. Where the racketeering crime involves influence peddling and infiltration of government offices, distortion of facts upon which decisions are based, and complex networks of individuals exercising influence, considerable evidence must be discovered by a victim to cause sufficient suspicion to investigate the complex structure of crime, and the investigation must proceed far before the victim knows enough or "should have known" of the extent of injury done and the identity of the defendants. This is the beginning of the time period of the statute of limitations upon racketeering complaints. A racketeering investigation must proceed even further before it can be actually filed in court with sufficient facts to rise above mere allegations that might be dismissed.

**Victims of Fraud Must be Encouraged to Admit Rather Than Deny Errors**

Victims in fraud cases find that the admission that they have been duped is personally challenging. The defense claims that it was the victim's fault for being duped, and a jury is tempted to blame the victim by appeals to selfish impulses. Of course there is no such defense in fraud, for the victim is unaware or is deceived to act against their will. In this case, all taxpayers were deceived by the maze of documents and processes, and soothing claims that at last environmental progress would be made. They are not to blame, for it was not their duty to know all of the details; that was the job of government officials and environmental activists.

In this case, some officials and conservation activists questioned at times how the lack of any plan to restore habitats, or any other large scale conservation action, would achieve conservation goals, and some are reluctant to admit that nothing was achieved by the easements, or land purchases that allow ranching to continue. They were fooled by false promises, soothing verbiage about protecting the environment, pretty photos of real scenes, and vague notions of hypothetical future risks, actions, or benefits. Victims of fraud fear the mockery and disownment of the outside world. Those who are innocent deserve the relief of our understanding that such things happen to all of us. They deserved more of their fellow officials and activists and citizens.

Mass media were involved as well, unwilling to do investigative reporting to challenge the administration of a popular conservation program, or to question scientists who described environmental problems to be solved, but who assigned the lowest possible conservation value to the subject properties. The mass media knew that environmentalism is a popular category of news stories, and were unwilling to turn that into a massive investigation of subtle corruption in state and county government. Some were aligned with officials involved, or political parties through which payments elected those officials. So some citizens heard rumors of investigative reporting on conservation land purchase fraud elsewhere in Florida, but little or nothing emerged in SW Florida. The public and some of its officials were deceived, and could not find the facts until circumstances drove victims of racketeering to make the investigation.

**Tracing Corrupt Influence**

The rewards or threats of punishments that motivate violations of public duty, as in recommendations for purchase of land without conservation value, are difficult to trace. Cash flows may be hidden with digital currency, offshore accounts, favorable purchases of real estate,

24

securities, or art and antiques by family members through third parties, or simply envelopes of cash never seen by others. Only the clumsy bribe among many has any chance of exposure. Rewards to a political party whose members violate public duty to grant special benefits, via "donations" by recipients of the benefits, must be presumed to be payments.

A political party systematically coordinates rewards of public officials and employees for acts of "loyalty" to whatever policy goals its leaders may conceive. If its leaders advocate misappropriations that cause "donations" to the party, all of their public officials must obey to receive campaign funds and appointments, and all of their state employees and managers must do as advised to receive jobs and promotions. All are subject to "influence" by campaign funds or job promotions to do so, and all are subject to threat of financial "harm" by denial of campaign funds or non-promotion if they do not. Whether or not that influence or threat is corrupt, and thereby violates state laws (F.S. 838.016-16) and constitutes racketeering under 18 USC § 1961(B), depends solely upon whether the actions so directed are "in violation of public duty" and direct benefits to party members or donors. Therefore any set of actions by public officials and employees "in violation of public duty" must be presumed to be caused by "corrupt influence" and "threat of harm" by a political party, where the officials, employees, and beneficiaries of the actions are members of the same party, and there is evidence that the party or public officials received funds from the beneficiaries, directly or indirectly.

When a legislator acts to benefit donors to his/her political party, as by advocating legislation or rules conferring financial advantages to an industry, the legislator accepts a "corrupt influence" if the actions are in violation of public duty. Donations to the political party or "committee" of the legislator from that industry must be presumed to represent solicitation and acceptance of "corrupt influence" to gain the benefit of the legislation or rules.

**Application of Law to Group A (details pending completion of discovery)**

The application of the preceding laws to Defendant Group A will be presented upon completion of discovery.

**Application of Law to Group B (details pending completion of discovery)**

The application of the preceding laws to Defendant Group B will be presented upon completion of discovery.

1    **Application of Law to Group C (details pending completion of discovery)**

2

3    The application of the preceding laws to Defendant Group C will be presented upon

4    completion of discovery.

5    **Application of Law to Individual Defendants  (details pending completion of discovery)**

6

7    The application of the preceding laws to individual defendant will be presented

8    upon completion of discovery.

9

10

11   **CONCLUSION**

12

13   Wherefore the defendants acted in violation of state and federal law, in unlawful acts in

14   interstate commerce under 18 USC § 1961 (RICO), and racketeering by "connection with the

15   conduct of an enterprise," by willful direct or indirect involvement in criminal activity

16   comprising "a substantial factor in the sequence of responsible causation" of damages to the

17   Plaintiff, and inevitably "anticipated as a natural consequence" thereof, and/or in conspiracy to

18   commit racketeering, in clear and deliberate violation of 18 USC § 1952 – 1968.

19   These defendants are jointly and severally liable for full compensatory and mandatory

20   triple damages, and should be enjoined from all future related activity.

21   Plaintiff is prepared to argue these issues in Court with the law of Racketeering [1 - 17].

**OATH AND CERTIFICATE**

  I, the undersigned Plaintiff John S. Barth do hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. I further certify that on this date a copy of the foregoing document was served electronically via ECF on all counsel of record.

Date:  7/28/2025                 

                  John S. Barth, Plaintiff, pro se

      P.O. Box 88, Springvale, ME 04083 Jbarth@gwi.net  207-608-1741