**District Court of the United States**
**District of Columbia**

|
John S. Barth,                              |
        Plaintiff          |
v.                                          |
Mabry Carlton Ranch Inc, et al, |
        Defendants        |
|

Case No. 1:25-cv-01136-DLF

**Memorandum of Law 8**

**Misconduct Of Federal Agencies**

# CONTENTS

TABLE OF AUTHORITIES ................................................................. 2
GLOSSARY OF ABBREVIATIONS ................................................... 4
PRIOR RELATED CASES ................................................................. 4
SUMMARY OF THE ARGUMENT .................................................... 5
  Errors Of Fact In Prior Decision To Dismiss Agency Defendants ........ 5
  Errors Of Argument In Prior Decision To Dismiss Agency Defendants ........... 7
    Error In Claim Of Discretion In Corruption ............................... 7
    Error In Claims Of Lack Of Plaintiff Interest Or Judicial Responsibility ......... 8
    Incorrect Citations ....................................................................... 8
    Error In Claim That Civil RICO Does Not Permit Prosecution Of Crime ......... 9
    Error In Claim Of Sovereign Immunity ..................................... 9
    Error In Claim That False Claims Act Allows False Claims By Agencies ........ 10
    Error In Claim Of Agency Immunity For C.R.A. Or FTCA Violations ............ 11
  Agency Defendants Added Offenses By Obstruction Of FOIA Investigation ......... 5
ARGUMENT ....................................................................................... 12
  Statement Of Facts Relevant To The Issues ................................ 12
  Errors Of Fact In Prior Decision To Dismiss Agency Defendants ......... 13
    False Statements Of Fact In Prior DOJ Motion To Dismiss Agency Defendants ........... 13
    Error Of Fact In The Prior Order To Dismiss The Agency Defendants ......... 15
  Error Of Argument In Prior Decision To Dismiss Agency Defendants ........... 16
    A. Agencies Do Not Have Discretion To Commit Political Racketeering ......... 16
    B. The Complaint Does Provide Statutory Basis For Relief ................ 23
    C. Federal Agencies Do Not Have Immunity For Racketeering Crime ........... 24
    D. False Claims Act Applies To Federal Employees Causing False Claims ........... 28
    E. Federal Agencies Have No Immunity For C.R.A. Or FTCA Violations ........... 29
CONCLUSION ................................................................................... 30
  DOJ Statements And Refusal To Answer Constitute Admission Of Collusion ......... 30
  Executive Obstruction And Defiance Require Judicial Branch Action ............ 31
RELIEF SOUGHT ............................................................................. 32
  This Court Should Order Investigation Or Empanel A Grand Jury ............ 32

**TABLE OF AUTHORITIES**

**Cases  Cited**                                              **Page References**

1. *Shoshone Bannock Tribes v. Reno,* 56 F.3d 1476            30
2. *Bordenkircher v. Hayes*, 434 US 357                       30
3. *Heckler v. Chaney,* 470 U.S. 821 (1985)                   13, 30-31
4. *Kidwell v. FBI*, 813 F. Supp. 2d 21 (DDC 2011)            13, 31
5. *Auleta v. DOJ*, 80 F. Supp. 3d 198, 202 (DDC 2015)        13, 31
6. *Gage v. U.S. Att'y Gen.*, No. 22-0283 (DDC 2022)          13, 31
7. *Hayes v. DOJ*, Civ. A. No. 22-1147, DDC, unpublishable    14, 38
8. *Klayman v. Obama*,  125 F. Supp. 3d 67, 79 (DDC 2015)     14, 38
9. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)  14, 35, 38-9
10. *Marbury v. Madison*, 5 U.S. 137 (1803)                   35
11. *Kendall v. United States ex Rel. Stoke,* 37 U.S. 524 (1838)  35
12. *United States v. McLemore*, 45 U.S. (4 How.) 286, 288    36
13. *Agee v. U.S.*, 72 Fed. Cl. 284, 290 (2006)              36
14. *United States v. Lee*, 106 U.S. 196 (1882)              37
15. *Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37 (DDC 2017)  15, 39, 41
16. *United States v. Mitchell*, 445 U.S. 535 (1980)         39, 40
17. *Smith v. Obama,* 217 F. Supp. 3d 283 (D.D.C. 2016)      15, 39, 40
18. *Butz v. Economou*, 438 U.S. 478 (1978)                  16, 41
19. *Work v. United States,* 267 U.S. 175, 177-84 (1925)     37
20. *Decatur v. Paulding*, 39 U.S. (14 Pet.) 497,516-17 (1840)  37
21. *Miguel v. McCarl*, 291 U.S. 442 (1934)                  37

**Statutes of Florida**

F.S. 817          Fraud
F.S. 837          Perjury in Official or Other Proceedings
F.S. 838.016      Unlawful Reward to Influence Official Action
F.S. 838.021      Unlawful Harm to Influence Official Action
F.S. 838.022      Tampering Public Records
F.S. 838.15-16    Bribery of Agents, Employees, Advisors, Appraisers
F.S. 895          State Racketeering Offenses
F.S. Ch. 112      State Code of Ethics (no criminal penalties)

**Statutes of the United States**

5  USC § 552          Freedom of Information Act (FOIA)
5  USC § 701(a)       Administrative Procedure Act APA,
18 USC § 242          Denial of Constitutional Rights under color of law
18 USC § 371          Fraud and Conspiracy Against the U.S. (Mem. Of Law 3)
18 USC § 1341         Fraud and Violation of Honest Services
18 USC §§ 1952–1968 Racketeer Influenced Corrupt Org's Act (RICO)
          These claims are brought under 18 USC § 1962 (c) and (d)
18 USC § 2383         Rebellion against the United States or the laws thereof
31 USC § 3729         False Claims Act (FCA)

42 USC §§ 1982-1985 Civil Rights Act

5  CFR § 2635          Standards Of Ethical Conduct For Exec. Employees
DOJ Principles of Federal Prosecution 9-27.200 – 260
FBI public corruption investigation priority:
                    https://www.fbi.gov/investigate/public-corruption
ABA Standard of Prosecution 3-1.6 to 3-1.9, 3-1.12, 3-2.3, 3-2.5

**Provisions of the United States Constitution**

Amendment V:

> "No person shall…be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation."

Amendment XIV Section 1:

> "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**Other Authorities**

80. *Federal Liability for Takings and Torts* 31 Fordham Law Rev 481
81. *Manual of Federal Practice*, U.S. Department of Justice
82. *Constitutional Law*, Daniel Hall, Delmar, 1996
83. *The Federalist Papers*, Alex. Hamilton, James Madison, John Jay 1785-7
84. *Suing the Federal Government: Sovereignty, Immunity, and Judicial Independence*, Vicki C. Jackson, 35 Geo. Wash. Int'l L. Rev. 521-609 (2003)
85. Akhil Amar, *Of Sovereignty and Federalism*, 96 Yale LJ 1425, (1987)
86. James E. Pfander, *Marbury, Original Jurisdiction and the Supreme Court's Supervisory Powers*, 101 Colum. L. Rev. 1515, 1586 (2001).
87. Susan Bandes, *Bivens: The Self-Executing Constitution,* 68 S. Cal. L. Rev. 289
88. *Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850)
89. *Sovereign Immunity and Suits Against Government,* David P. Currie, 1984 Sup.Ct.Rev. 149

**GLOSSARY OF ABBREVIATIONS**

FCA    False Claims Act (31 U.S.C. § 3729)

HSI    Homeland Security Investigations

OIG    Office of Inspector General

RICO   Racketeer Influenced Corrupt Organizations Act (18 USC §§ 1952–1968)

**PRIOR RELATED CASES**

The Appellant is the Plaintiff in these actions, injured by the original racketeering defendants, and by the refusal of the defendant agencies to investigate despite thirty notices with full evidence sent to their local, state, headquarters, and OIG offices over a period of three years during administrations of both major political parties, and despite their investigation for six years including that period, of alleged mishandling of one thousandth of the subject funds by a politician of the opposing political party.

Districts Where Process Was Denied Despite Substantial Damages

In each venue, a dishonest Republican judge grabbed the case and denied venue, claiming damages there were miraculously not "substantial" enough for venue under the RICO "substantial damages" criterion, although damages were about $116,332 (155 felonies) in Hawaii, $346,601 (346 felonies) in Oregon, and $723,275 (723 felonies) in CAND. The 9th Circuit ignored the issues of law. Note that a search for an honest venue cannot be considered "venue shopping."

103. *Barth v. Mabry Carlton Ranch Inc. et al*, No. 8:19-cv-3181 (FLMD, 2019)
104. *Barth v. Mabry Carlton Ranch Inc. et al*, No. cv-20-00104 (HI, 2020)
105. *Barth v. Mabry Carlton Ranch Inc. et al*, No. 3:20-cv-01164 (OR, 2020)
106. *Barth v. Mabry Carlton Ranch Inc. et al*, No. 5:20-cv-09288 (CAND, 2020)
107. Appeal No. 21-15119 (9th Cir. 2021)

Initial Denial By This Court Of Seal And Investigation

108. *Barth v. U.S. et al*, No. 1:21-mc-00124 (DC, 2021)

This court also refused to seal the initial case, unlike all racketeering cases filed by the defendant agencies, whereupon the present case was filed against the federal agency defendants alone, to ensure their answer and investigation before joining the original Florida defendants. But the agencies refused to answer the Complaint, and this court erred in stating absolute agency discretion and immunity.

Denial By This Court Of FOIA Compliance By The Defendant Agencies

109. *Barth v. U.S. et al*, 1:23-cv-2920-CKK (DC, 2023)

This court also refused to require FOIA compliance by the defendant agencies to determine the causes of their refusal to investigate, ignoring copious proof of several FOIA requests made to each agency by several means, and merely accepted perjuries by DOJ that only one request had been made, only to DOJ, and that they had no record of any of over thirty other requests, or how these were all systematically ignored by all offices of all agencies on all of several barrages of requests over three years under administrations of both political parties. The DOJ simply made endless idiotic perjuries of fact and law to obstruct prosecution of political racketeering crime by these agencies and the private defendants. Therefore the present case was filed to charge the federal agency defendants with these new offenses, and to join the original Florida defendants.

## SUMMARY OF THE ARGUMENT

The court did not establish any lawful basis for extending the permissible discretions and immunities of investigative agencies to a blanket excuse for collusion in political racketeering crime. The duty of the Judicial Branch is to check and balance such Executive power grabs.

### Agency Defendants Added Offenses By Obstruction Of FOIA Investigation

The prior decision to exculpate the defendant agencies was based upon error, and does not affect this case because the agencies have added to their prior offense of obstructing prosecution of political racketeering, by obstructing FOIA investigation of their prior offenses.

### Errors Of Fact In Prior Decision To Dismiss Agency Defendants

The DOJ argument to dismiss the agency defendants consists of perjuries of fact, and absurd arguments to subvert the Constitution of the United States, by permitting rogue factions of secretive agencies to collude in political racketeering, by refusal to investigate proven theft of public funds by political operatives. The motion falsely claimed that the proven racketeering crime is mere allegation, but found no defect of evidence. It disparaged the statutes violated as a mere "litany of statutes," although the claims are fully established by the Complaint and Appendix G, which the DOJ lawyer admitted having refused to read.

The evidence proves that in every prior related case in search of a non-corrupt venue, a Republican judge grabbed the case in violation of the cover notice and the Code of Judicial Conduct, and denied RICO venue despite full proof of "substantial business" in their district. But

the DOJ lawyer falsely claimed that "sister courts" "dismissed" the case on unstated grounds, fully aware that those cases were denied due process by perjuries of his political faction.

The DOJ lawyer then falsely claimed that the initial related case in this district was decisive on material issues, when in fact it merely named the Florida defendants, requiring a motion to seal, denied although *universally granted* to U.S. attorneys as essential to investigation. The prior case named those defendants with a *cover notice* that those defendants are "*To Be Joined After Investigation*." The DOJ lawyer lied that substantive issues had been decided.

The DOJ lawyer lied again that the prior 82-page Complaint was a "444-page Complaint," fully aware that the volume of fact and argument depends solely upon the number of offenses and complexity of law, a burden due solely to the defendants and in no way caused by the Plaintiff. In fact *only nine pages of fact need be read* by the DOJ lawyer with 24 pages of simple receipt exhibits, and he admitted that only "twelve paragraphs" need be read to make Answer, requiring *less than one hour*. To understand all claims against the Florida defendants required *at most a day's work*. A full study of the fact appendices requires *one or two weeks of the six months allowed by the Plaintiff and the Court.* The agencies could have done all of that and investigated the Florida defendants as well, in those six months of extensions, but did nothing at all, and even refused to Answer for their crimes. Instead the DOJ criminals filed perjuries of fact and law to fake up a motion to dismiss.

The decision falsely stated that the complaint was a "litigation campaign" against "myriad entities," knowing full well that it documents racketeering by a group of Republican politicians, and that four Republican judges grabbed the case and denied due process to protect political racketeering. It falsely claimed that "all four cases have been dismissed" to imply a fault in the case it could not find, knowing that those were criminal acts of collusion as it was. The decision is the act of a political party, in open collusion with the racketeers, and in subversion of the Constitution and law, to suppress investigation of their crimes.

These false statements of fact are perjuries by the DOJ and the lower court, with intent to subvert the Constitution and laws of the United States for personal gain, by denying due process in collusion with proven political racketeering crime.

**Errors Of Argument In Prior Decision To Dismiss Agency Defendants**

The prior decision to exculpate the defendant agencies is based upon error, and does not affect this case because the agencies have added to their prior offense of obstructing prosecution of political racketeering, by obstructing FOIA investigation of their prior offenses.

Error In Claim Of Discretion In Corruption

The court erred in the related case, in stating that decisions of whether or not to prosecute are entirely discretionary and not subject to judicial review, seeking to protect political racketeering, and citing only a few immaterial, trivial, and erroneous decisions. The agency decision to investigate political corruption of one party while refusing to investigate that of another, of one thousand times that amount, was plainly corrupt. There is no discretion to abuse public office.

The Administrative Procedure Act APA, 5 USC § 701(a) ensures that agency action may be reviewed by courts *unless discretion is provided by law*, exempting the military but not the defendant agencies. The right of review is defined by § 702 with which this complaint is fully compliant.

Even statutory discretion is abdicated where the agency violates principles of its conduct. DOJ standards 9-27.2 require it to prosecute federal offenses where the evidence "will probably be sufficient" and states that "federal prosecutors and agents may never make a decision regarding an investigation … for the purpose of affecting any election, or for the purpose of giving an advantage or disadvantage to any candidate or political party." Clearly that was violated by these agencies.

The ABA Standard of Prosecution prohibits a prosecutor from using "improper considerations, such as partisan or political … considerations, in … prosecutorial discretion" or permitting professional judgment to be affected by "political, financial, professional," or other interests. CFR Title 5 prohibits federal employees from giving "preferential treatment to any private organization or individual" and prescribes disciplinary action.

The FBI itself states that the investigation of "violations of federal law by public officials at the federal, state, and local levels" is its highest priority.

All of these standards clearly prohibit the proven conduct of the defendant agencies. The fact that the FBI investigated Democratic Mayor Gillum of Tallahassee, Florida *from 2015 to 2021* for $125,000 of allegedly misallocated donations, while refusing for three of those years to

investigate *proven theft* by *Republican* Florida officials of *one thousand times* that amount, proves that the defendant agencies knew that the present case met their standard of evidence, and that a political faction controlled the investigation decisions at all levels. The fact that all local, state, headquarters, and OIG offices of all defendant agencies refused to even reply to thirty Plaintiff notices with full evidence over three years, proves their broadly organized collusion to protect political racketeering.

This is a clear violation of the DOJ standard, and any excuse of resource insufficiency violates the ABA standards. The DOJ did not request, and later angrily refused, further details and explanation, voiding any claim of insufficient evidence or investigative resources. The defendant agencies *have no excuse*.

The fact that these agencies dare to claim discretion for collusion with political racketeers, refusing to investigate or even reply to numerous alerts, further establishes that they acted knowingly in violation of duty and the laws cited. There is no discretion for political racketeering, just as there is no such immunity.

The lower court concealed the DOJ abdication of duty, and violated its own rules, in refusing to require DOJ to answer the complaint, and claiming that it has discretion to commit massive crimes and to subvert the Constitution, in willful collusion with political racketeering, and sought only to conceal its criminal intent.

Error In Claims Of Lack Of Plaintiff Interest Or Judicial Responsibility

The prior decision stated that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," although a citizen asserting civil RICO claims has an interest in prosecution, and where federal investigation is required, has an interest therein. The argument is incorrect.

The prior decision stated that "a civil plaintiff … may not ask a court to compel the Government to prosecute a criminal case" but ignores the Constitution and laws providing the court full power and responsibility to prosecute federal employees for dereliction of duty and political racketeering.

Incorrect Citations

The few cases cited in the prior decision and motion to dismiss are immaterial and misstated. The decision cites two anomalous cases of native American tribes seeking to compel US prosecution to compel US enforcement of riparian rights affecting reservations. No claim of

legal rights, federal interests, or DOJ duties was involved. The cited cases are completely immaterial.

The decision falsely cites *Heckler v. Chaney* where judicial review was precluded by statute, without argument of broader discretion. It cites *Auleta v. DOJ* on a DOJ decision, which erroneously cited *Heckler*. It cites *Kidwell v. FBI* dismissed for *procedural* violations, where the FBI and DOJ were named solely for declining to investigate a defective guitar, and were never even served. It cites *Gage v. U.S. Att'y Gen.* where the court refused to impanel a Special Grand Jury because the plaintiffs never cited a duty of the FBI to investigate.

These citations are immaterial. They are a fabrication of anomalous and immaterial decisions, which do not excuse refusal to investigate massive corruption in one political party while investigating minimal corruption in another.

The facts establish criminal intent within the defendant agencies, and prove violation of their statutory obligations, vacating any presumptive discretion.

Error In Claim That Civil RICO Does Not Permit Prosecution Of Crime

The lower court decision fails to argue its false claim that "none of the statutory bases Plaintiff cites allows for relief" citing only the manifestly partisan decision of the FLMD in the prior related case, wherein *the judge is a member of the same political faction* as the racketeers, and made perjuries of law in service to them. Of course both judges knew that Count 9 cites RICO (and CRA, FCA, and FOIA), which provide for civil prosecution under the other statutes of Count 9.

The lower court and the defendant agencies quoted perjuries of law to subvert the United States Constitution and laws to protect political racketeering.

Of course the Plaintiff seeks in this case that the federal government prosecute the violations of any statutes excluded from his RICO prosecution, and prefers to seek no federal penalty.

Error In Claim Of Sovereign Immunity

The DOJ motion deceitfully faked up argument that RICO claims against federal employees are precluded because the U.S. "has not waived its sovereign immunity," citing only the unpublishable *Hayes v. DOJ* [7]for the anti-constitutional absurdity that "sovereign immunity bars a suit against the United States and its agencies except upon consent." That case merely

cites *Klayman* which failed to state civil rights violated, necessary to a civil rights RICO claim. Civil rights RICO (*Bivens* [9]) claims are regularly prosecuted against agencies.

The very fact that the defendant agencies seek immunity for collusion with the Florida political racketeers establishes that they willfully acted in violation of public duty and the laws cited in Count 9, voiding even any statutory immunity. There is no such immunity, just as there is no such discretionary action. This is clearly established in the more detailed argument hereunder.

Article III section 3 of the Constitution provides that the "Judicial Power shall extend to… Controversies to which the United States shall be a Party" which undeniably was intended to subject the acts of the executive to judicial review. The Fifth Amendment guarantees that citizens shall not be subject to uncompensated takings, nor deprivations of life, liberty or property without due process of law, clearly anticipating judicial remedies against acts of government in violation of Constitutional rights, and permitted suits and enforcement by habeas corpus and mandamus orders against government officials. Sovereign immunity was never stated in the Constitution, because it was recognized as no more than the ancient claim of tyrants to be above the law. Suits against government are an essential means of regulation, and improve rather than imperil security and the rule of law.

The remedial imperative of the Constitution precludes sovereign immunity from any suit alleging a violation of constitutional right. The "petition" clause of the First Amendment rejects immunity in favor of judicial resolution of petition claims against government. The *Bivens* decision establishes that enforcement of the Constitution is not dependent on assent of federal government, and that the Constitution must be enforceable by individuals without government assent.

Sovereign immunity, in a nation founded upon principles of individual rights, has very few legitimate functions, and is invoked only to shield deliberate violations of public duty. Judicial remedies against executive misconduct are an essential mechanism of government checks and balances, as well as accountability. None of the cases cited in the decision provide a material legitimate exercise of immunity. They are cited as a scam to subvert the Constitution.

<u>Error In Claim That False Claims Act Allows False Claims By Agencies</u>

The decision makes the false claim that the False Claims Act FCA "does not provide a cause of action against the Government" although admitting that it "provides a cause of action

against those that defraud the Government." In this case collusion by rogues within federal agencies with the Florida defendants charged with violation of the FCA is an FCA cause of action against the rogues.

Error In Claim Of Agency Immunity For C.R.A. Or FTCA Violations

The decision cites an erroneous incidental note in the immaterial *Boling* decision, that the U.S. has not "waived its sovereign immunity" under the Civil Rights Act, which in fact specifically extinquishes sovereign immunity both state and federal: the U.S. obviously has no immunity for civil rights violations directly prohibited by its Constitution.

The *Boling* case failed to presume an absence of immunity barring specific provisions to the contrary, but CRA claims of violation by state actors were generalized to federal actors by *Bivens* and are regularly prosecuted. In fact *Boling* admits that Congress waived immunity (of DOJ and other agencies) under the FTCA "under circumstances where the United States, if a private person, would be liable to the claimant" but FTCA was not applicable there only due to lack of any claim of underlying wrong. The case is immaterial.

The lower court merely cites its own anti-constitutional-rights opinion in *Smith v. Obama* relying upon another anomalous case of native American rights on allotted lands. The Court of Claims had *denied* the DOJ claim that the U.S. had not waived immunity, but the Supreme Court held only that the law did not establish a fiduciary duty, voiding the cause of action. This is yet another scam to subvert the United States Constitution, not worth examination, but debunked below.

Persons performing "adjudicatory functions" in a federal agency, including decisions to initiate proceedings, have personal immunity under *Butz v. Economou*, but those who willfully violate the statutory purposes of their agency to effect political bias, abdicate that function and its immunity. Those who conceal information from "adjudicatory" officials, provide false information, or coerce or violate their decisions, do not have the immunity of adjudicatory functions.

11

**ARGUMENT**

**Statement Of Facts Relevant To The Issues**

1. The Complaint presents the facts of a racketeering enterprise including ranch owners in one county of Florida, in political office with extensive economic and political connections, who caused state and county agencies to pay themselves about $120 million in conservation funds without public benefit. Similar groups operate elsewhere in Florida. The facts concern fraudulent distortion of funding rationales and procedures to divert funds to defendants, and fraudulent appraisals. These crimes form a pattern of racketeering activity in state and county government.

2. Due to injuries by a corrupt state judge who gained millions of dollars from this racketeering, the Plaintiff was forced to spend years in researching the defendants' complex arrangements of theft of public funds; and in legal research and preparation of evidence and arguments; and several years of prosecution due to political misconduct of district courts in denying motions to seal and request federal investigation, or denying jurisdiction on false pretenses.

3. The complaint also presents facts of efforts by factions within the defendant agencies to obstruct prosecution of this political racketeering by Republican politicians, by refusal to investigate despite the Complaint, six Appendices of Fact and seven Memoranda of Law being sent repeatedly over three years to the local, principal, and OIG offices of each agency under administrations of both major parties, despite their securing about 70 such convictions annually in Florida of less than one percent the size of this case, and despite their simultaneous six-year investigation of one opposing Democratic candidate for state Governor, for alleged abuse of about *one-thousandth* of the funds involved in this case.

4. These factions obstructed prosecution of this racketeering by coordinating noncompliance of all offices of all agencies over several years, hounding the Plaintiff during this period, making endless perjuries of fact and law when prosecuted, and refusing compliance with years of efforts to investigate by means of FOIA requests.

5. The initial case [108] named the original defendants directly involved in the theft of public funds (the "Florida defendants"). The prior Complaint states on the cover that those listed defendants are "To Be Joined After Investigation:" and begins as an action against the rogue faction within the FBI, HSI, and DOJ which has obstructed investigation of political racketeering crime by these Republican politicians, despite their simultaneous investigation of a Democratic politician for alleged misuse of about one thousandth of the funds involved here.

6. The subject thefts of funds are supported by bond issues for the payments, for which interest is paid by real estate taxes upon Florida property, of which 21 percent is owned by out-of-state residents. When the Florida Middle District denied sealing to protect the racketeering of its political party, the Plaintiff thereby determined the amount of damages in other federal districts to establish venue therein, ranging from about 154 to 723 times the felony crime threshold of each district. Despite proper warnings on the cover of the Complaint, in every district judges of the political party involved grabbed the case and falsely claimed that such damages were not "substantial" and denied jurisdiction. The plaintiff was forced to move the case several times, which is clearly not "forum shopping" for a biased court, but a search for an unbiased court.

7. The social groups of wealthy people are influential in Florida, using career or business bribes and threats to build followings of social and economic dependents and opportunists. When such groups find opportunity to fleece government, they become racketeering operations in government, severely damage the foundations of democracy, and form a new foundation of kleptocracy and oligarchy.

8. The facts presented in the Complaint are summaries supplemented by Fact Appendices. Facts in a complaint are required to be sufficient only to raise the claims above the level of allegation, and are supplemented by evidence obtained during the discovery phase. Appendix G is relevant prior to federal investigation, and presents details of the federal agency misconduct. Appendices A, B, and C present the facts about the groups of defendants designated A, B, and C, and are referenced herein. Appendix D presents the conservation issues; preliminary Appendices E and F present details of State and local corruption. Memoranda of Law 1 through 7 present the legal arguments of Racketeering, Conservation Law, Fraud, Obstruction of Process, state and federal Civil Rights Law regarding the Plaintiff, Forfeiture, and Compensation.


**Errors Of Fact In Prior Decision To Dismiss Agency Defendants**

<u>False Statements Of Fact In Prior DOJ Motion To Dismiss Agency Defendants</u>

1. The DOJ attorneys claim (p. 1) to represent "The United States of America" and its defendant agencies, not the rogue faction thereof that obstructs prosecution in collusion with political racketeers. The duty of DOJ is to expose the faction in collusion with crime, or otherwise explain

the facts, which they refused to do: waving the flag does not achieve that.[1] They have in fact subverted U.S. law.

2. The motion disparages (p. 1) the fully proven claim[2] against the rogue faction, of their refusal to investigate proven racketeering crime, as mere allegation "as best the undersigned can tell," but fails to identify any defect of evidence let alone allegation. The motion disparages (p. 1) the statutes this faction has violated as merely a "litany of statutes." But nine pages of the Complaint and Appendix G well establish the claim, as *anyone* can tell. By refusal to Answer the Complaint, the rogue faction in these agencies has admitted violation of those laws.

3. During initial action against the Florida defendants, in every case a Republican judge grabbed the case in violation of the cover notice and the Code of Judicial Conduct, and denied RICO venue despite incontrovertible proof of "substantial business" in their district, of 154 to 723 times the felony crime threshold there,[3] and denied sealing and orders of investigation. The motion misrepresents that corruption (p.2) as merely a "journey" through "sister courts" that "dismissed" the case on unstated grounds. But in fact those cases were never given due process, and were obstructed by the same rogue faction, by perjuries of law in denial of venue. Those crimes are within the federal judiciary.

4. The motion misrepresents the previous case in this district (p. 2) to make the claim that it was decisive on material issues. But in fact that case named the Florida defendants, so that a motion to seal was necessary, which was denied although sealing of RICO cases is *universally granted* to U.S. attorneys as essential to investigation. When appeal affirmed, the present Complaint was filed naming the Florida defendants as to be joined *after investigation*, which for clarity was amended with a *cover notice* that those defendants were "*To Be Joined After Investigation*." When the clerk accidentally entered those parties as defendants, they were dismissed without prejudice by Plaintiff motion, a technicality immaterial to the case. The defendant motion misrepresents those simple filing issues (p. 2-3) as decisions on substantive issues, which is

---

[1] Samuel Johnson, "Patriotism is the last refuge of the scoundrel."
[2] Complaint Count 9 p. xxvi and p. 36-38; Appendix G p. 2-6; and Exhibits p. 8-32
[3] Damages in districts where corrupt Republican judges grabbed the case and denied venue were:

| District | Population | Total losses | State Felony Amount | Felonies |
|----------|-----------|--------------|---------------------|----------|
| FLMD | 10,000,000 (ct site) | $43,766,294 | $300 | 145,888 |
| HI | 1,416,000 | $115,369 | $750 | 154 |
| Oregon | 4,218,000 | $343,661 | $1,000 | 344 |
| CAND | 9,000,000 | $723,275 | $1,000 | 723 |

false. The motion then misrepresents (p. 3) the necessary dismissal of defendants as an irrational act by the Plaintiff, although obviously necessary and fully explained in that Plaintiff motion. What part of "To Be Joined After Investigation:" is still not understood?

5. The motion falsely states (p. 3) the 82-page Complaint to be a "444-page Complaint" by falsifying the total page count, and falsely including the separate memoranda of law and supporting appendices of fact, nearly all of which concern only the Florida defendants. But length is immaterial because the extent of fact and argument depend not at all upon the Plaintiff, but solely upon the number of defendant crimes and complexity of law involved. In fact *only nine pages of fact need be read* by the DOJ attorney[4], with 24 pages of simple exhibits[5] (receipts proving that each agency's local, state, headquarters and OIG offices were all informed several times over three years and made no response). The motion admitted (p. 4)  that DOJ only needed to read "twelve paragraphs" to make its Answer. All of this can be read and understood in *less than one hour*. To understand the claims against the Florida defendants, *only 34 pages of the Complaint [6] need to be read*, *at most a day's work*. A full study of the fact appendices for the Florida defendants (157 pages)[7] requires *one or two weeks of the six months allowed by the Plaintiff and the Court*, during which the agencies should have been investigating the agency acts, and could have substantially investigated the Florida defendants as well. Instead they made excuses and false statements of fact and law.

6. Under "Legal Standards" the motion invoked only immaterial standards of jurisdiction and allegation. Obviously the Court has jurisdiction over federal employees who violate the cited statutes[8] causing injury to others. The motion does not claim insufficiency of allegation.

Error Of Fact In The Prior Order To Dismiss The Agency Defendants

7. The prior case decision erroneously admonished the Plaintiff to "work with the FBI" that refused even to reply to his thirty notices and packages of evidence and argument sent to their local, state, headquarters and OIG offices over a period of three years! The decision disparaged the complaint as the "latest foray" of a "protracted litigation campaign" against "myriad

---

DC              692,693 (2019)       $56,437              $1,000         56
[4] Complaint Count 9; pages 36-39 (Facts); and Appendix G pages 2-6 (Facts)
[5] Appendix G pages 7-32 (Exhibits)
[6] Complaint, pages 2-36.
[7] Appendices A – F.

entities," ignoring the fact that the Complaint well documents the political racketeering of a large group, and that four judges had corruptly grabbed the case and refused to request investigation, and denied venue and filing under seal, to obstruct racketeering prosecution. That decision ignored the fact that those denials of venue were acts of collusion in crime.

9. The prior case decision erred in ignoring the statement on the Complaint cover that the Florida defendants are "To Be Joined After Investigation."

**Error Of Argument In Prior Decision To Dismiss Agency Defendants**

A. Agencies Do Not Have Discretion To Commit Political Racketeering

11. The prior decision erred in the claim (p. 4) that the decision of whether or not to prosecute "rests solely with the government" ignoring the government branches, agencies, and procedures involved, including judicial review, and citing a few immaterial and erroneous decisions to rationalize ignoring the Constitution and laws of the United States, so as to obstruct prosecution of political racketeering.

12. Copying the false argument of the defendant motion (p. 5), the decision erred in asserting (p. 4-5) that all federal enforcement agencies have "absolute discretion" to "investigate or not investigate allegations of wrongdoing," and copying the wild claim that the case provides "no basis for this court to order… an investigation." Of course there is no basis in federal law or case law to permit collusion in racketeering crime by federal employees.

13. The issue of discretion to investigate arises primarily in the rare cases of great public significance, such as the present government corruption, in which a decision not to investigate political racketeering of one thousand times the size of public corruption that *was investigated*, was clearly politically motivated, because the candidate of one political party was investigated, and *the opposing party candidate in the same election was not investigated* despite already-available proof of theft of one thousand times those funds. The citations of lesser cases not investigated, are plainly immaterial to the present case. The prior case argument erred.

Standard Of Judgment

14. The Administrative Procedure Act APA, 5 USC § 701(a) was enacted to ensure that agency actions may be reviewed by courts *unless discretion is provided by law*, exempting the military and some agencies, but not the defendant agencies:

---

[8] Complaint, Count 9, page xxvi

(a) This chapter applies, according to the provisions thereof, except to the extent that—
(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law.

The right of review is defined by 5 USC § 702:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

15. Even were administrative discretion in decisions of investigation and prosecution generally accorded to DOJ, this is abdicated where the agency violates the essential principles established by DOJ regulations (Principles of Federal Prosecution). DOJ standard 9-27.200 establishes the standard for prosecution:

9-27.200 - Initiating and Declining Prosecution…
<u>If the attorney for the government concludes that there is probable cause</u> to believe that a person has committed a federal offense within his/her jurisdiction, <u>he/she should consider whether to</u>:
   <u>Request or conduct further investigation;</u>
   Commence or recommend prosecution;
   Decline prosecution and refer the matter [to] another jurisdiction;
   Decline prosecution and …recommend …non-criminal disposition; or
   Decline prosecution without taking other action.
9-27.220 - Grounds for Commencing or Declining Prosecution
<u>The attorney …should commence …federal prosecution if he/she believes that the person's conduct constitutes a federal offense, and that the admissible evidence will probably be sufficient</u> … unless (1) the prosecution would serve no substantial federal interest; (2) the person is subject to effective prosecution in another jurisdiction; or (3) there exists an adequate non-criminal alternative ...
…despite his/her negative assessment of the likelihood of a guilty verdict … the prosecutor may properly … allow the criminal process to operate ...

16. DOJ standard 9-27.260 of *impermissible* considerations in declining charges establishes the standard applicable to this case:

9-27.260 - <u>Initiating and Declining Charges—Impermissible Considerations</u>
In determining whether to commence … prosecution … the government may not be influenced by…
   The possible effect of the decision on the attorney's own professional or

personal circumstances.
<u>In addition, federal prosecutors and agents may never make a decision regarding an investigation or prosecution, or select the timing … for the purpose of affecting any election, or for the purpose of giving an advantage or disadvantage to any candidate or political party</u>. See § 9-85.500.

17. The ABA Standard of Prosecution also prohibits political bias in decisions of investigation:

3-1.6 (a) … <u>A prosecutor should not use other improper considerations, such as partisan or political … considerations</u>, in … prosecutorial discretion...
3-1.6 (b) <u>A prosecutor's office should be proactive in efforts to detect, investigate, and eliminate improper biases</u>…
3-1.7 (f) <u>The prosecutor should not permit … professional judgment … to be affected by … political, financial, professional, … interests</u>...
3-1.8 (a) … <u>A prosecutor whose workload prevents competent representation should … should notify supervisors</u> ...
3-1.9 (a) The prosecutor … should be organized and supported with adequate staff and facilities to enable it to … resolve criminal charges ...
3-1.12 (a) <u>The prosecutor's office should … require internal reporting of reasonably suspected misconduct to supervisory staff</u> …
(b) When a prosecutor reasonably believes that … misconduct … has occurred, the prosecutor should … refer the matter to higher authority …
(c) If… the chief prosecutor permits… an … omission that is clearly a violation of law, the prosecutor should take … action, including revealing information …to … appropriate judicial… or other government officials ...
3-2.3 The prosecutor should be provided with funds … to employ professional investigators and … forensic and other experts.
3-2.5 (a) <u>Fair … procedures should be established … to … remove, and supersede, a chief prosecutor … upon … deviation from professional norms</u>.

18. Federal employees are prohibited from political bias by CFR Title 5 Standards Of Ethical Conduct For Employees Of The Executive Branch. 5 CFR § 2635.101 (Basic obligation of public service) prohibits bias affecting political parties:

(8) Employees shall act impartially and not give preferential treatment to any private organization or individual.

5 CFR § 2635.106 provides for disciplinary and corrective action for violations:

(a) … violation of this part … may be cause for appropriate corrective or disciplinary action to be taken under … regulations or agency procedures… in addition to any action or penalty prescribed by law.
(b) It is the responsibility of the employing agency to initiate appropriate disciplinary or corrective action in individual cases… corrective action may be ordered or disciplinary action recommended by the Director of the Office of Government Ethics under the procedures at part 2638 of this chapter.

19. The FBI states[9] that the investigation of public corruption is its highest priority:

> Public Corruption: The FBI's top criminal investigative priority poses a fundamental threat to our national security and way of life…
> Our public corruption program focuses on: Investigating violations of federal law by public officials at the federal, state, and local levels ...
> The FBI is uniquely situated to combat corruption, with the skills and capabilities to run complex undercover operations and surveillance.

These standards clearly prohibit the proven conduct of the defendant agencies.

<u>Application of the Standard</u>

20. DOJ standard 9-27.260 of impermissible considerations in declining charges was clearly violated by its refusal to investigate this racketeering by a political party, even while investigating alleged financial misconduct by an opposing party candidate, of one thousandth of the magnitude of this case.

21. The defendant agencies were obligated under DOJ standard 9-27.200 to request or conduct investigation of this matter when first shown that there was "probable cause to believe that a person has committed a federal offense," and were obligated under DOJ standard 9-27.220 to prosecute this racketeering unless persuaded that this would not serve a "substantial federal interest," at which point they should have made the financial evidence available to the Plaintiff. These duties were refused in clear violation of DOJ standard 9-27.260 "for the purpose of giving an advantage or disadvantage" to candidates and a political party, and with intent to affect national elections. Clearly a "substantial federal interest" would have been served by exposing this political racketeering, even if funds were not recovered.

22. A presumption of discretion of investigation in a large case is appropriate only in absence of sufficient evidence to meet the DOJ standard of investigation, or violation of law or constitutional rights, and is clearly not appropriate here:

(a) The defendant agencies received very full evidence of racketeering crime at each of their local, state, headquarters, and OIG offices several times over three years, and are *proven to have been aware of sufficient evidence*.

(b) The fact that the FBI investigated alleged corruption of Democratic Mayor Gillum of Tallahassee, Florida from 2015 to 2021 for $125,000 of allegedly misallocated donations[10],

---

[9] https://www.fbi.gov/investigate/public-corruption

[10] New York Times archive https://archive.ph/LKXJ4 and https://archive.ph/nQ1QC

while refusing for three of those years to investigate proven theft by *Republican* Florida officials of *one thousand times* that amount, proves that the defendant agencies knew that the present case met their standard of evidence, and that a political faction controlled the investigation decisions at all levels. *Gillum was a 2018 candidate for Florida Governor in opposition to the rogue faction*. This extreme violation of DOJ standard 9-27.260 of impermissible considerations in declining investigation, voids any claim of discretion.

(c) The fact that all local, state, headquarters, and OIG offices of all defendant agencies refused to even reply to thirty Plaintiff notices with full evidence and argument, proves their broadly organized collusion to protect this racketeering. The agencies are proven to have had far more than probable cause to investigate.

23. This is a clear violation of DOJ standard 9-27.200, and any excuse of resource insufficiency violates ABA standards 3-1.6 to 1.9 of sufficient staff and resources. The DOJ did not request, and later angrily refused, further details and explanation, voiding any claim of insufficient evidence or investigative resources, a claim that they refused even to state as an answer to the Complaint. They have no excuse.

Therefore even a legislated agency discretion would be inapplicable, as the information provided to the defendant agencies was sufficient allegation, showing probable cause and federal interest, proving *willful violation of the DOJ standards*.

24. The fact that these agencies dare to claim discretion for collusion with political racketeers, refusing to investigate or even reply to numerous alerts, further establishes that they acted knowingly in violation of duty and the laws cited in Count 9, voiding any provision or presumption of discretion. There is no such discretion for political racketeering, just as there is no such immunity.

25. The prior decision erred in ignoring the DOJ abdication of duty in violation of its own standards of investigation, and erred in refusing to require DOJ to answer the complaint.

26. It should be noted that a political faction of the FBI and DHS were also involved in the conspiracy for the Democratic party during the period of the Plaintiff requests for investigation, involving media censorship and misinformation in the anti-Trump Russiagate and Twitter Files cases, in which they unlawfully controlled what citizens heard in mass media, and controlled

what citizens could say on social media.  FBI investigators[11] (perhaps of the opposing faction) noted that those who ran the Russiagate investigation violated its primary requirement of independent verification of evidence presented to court, and presented the political false accusations of the Steele dossier as verified fact.

> Any FBI Academy trainee and agent in the field is aware that search warrants, affidavits and any accompanying document … requiring federal judicial approval is to be vetted and verified to create a pristine document.

27. Professor Turley notes[12] that the First Amendment applies to "agents or surrogates of the government" as well as direct acts of government. A Harvard CAPS/Harris Poll found that 70 percent of citizens believe that Congress must take action against this politically-motivated corporate/state censorship. Former Senator Ron Paul noted that "We do not need the FBI and CIA and other federal agencies viewing us as the enemy and attacking our Constitution." That observation applies as well to FBI decisions not to investigate racketeering by any political faction.

Error In Argument In The Decision

28. Incorrect legal arguments warm up with sonorous and accepted boilerplate immaterial to the issues (p. 3), and then cite a fabric of immaterial and anomalous decisions, to suggest a false argument favoring the party. Such arguments can be found for almost any false viewpoint.

29. The cases cited in the decision to dismiss agency defendants are immaterial and misstated. Those decisions on investigation were of ordinary causes, not made by rogues in the investigative agencies, in collusion with political racketeering.

30. The prior decision falsely claims (p. 4) that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." This is plainly an error: a citizen asserting claims of interests has an interest in prosecution, and where federal investigation is required, has an interest therein. The plaintiff has a clear interest in this civil racketeering case.

31. The prior decision notes that "a civil plaintiff … may not ask a court to compel the Government to prosecute a criminal case" but ignores the fact that government includes the court, with full power and responsibility to prosecute federal employees for dereliction of duty and political racketeering. The plaintiff asks for investigation, not necessarily DOJ prosecution.

---

[11] Michael Biasello, 27-year FBI veteran, quoted in *FBI Copied Parts of the Debunked Steele Dossier Directly Into Its Spy Requests*, realclearinvestigations.com, 12/20/2022

32. The decision cites *Shoshone Bannock Tribes v. Reno*[1][13], a unique case where upon historical treaty analysis a DOI solicitor recommended against DOJ filing a claim on behalf of native American Tribes for off-reservation river flows to their reservation. The court concluded that US trust responsibility to the Tribes, lack of any "specific treaty, statute, or agreement" provisions, and absence of any attorney-client relationship did not require the AG to file their claims. The case involves solely claims to rights not secured by any treaty or law, and demands that the US represent them. No claim of legal rights, federal interests, or DOJ duties was involved. The present case clearly involves federal interests and public duty admitted by the FBI, and seeks FBI investigation thereof, not DOJ representation for private claims. The FBI has already admitted those federal interests and public duty, in the Gillum investigation of only one thousandth of the amount involved in the present case. So the cited case is immaterial.

33. The decision cites *Bordenkircher v. Hayes*[2][14] in support of discretion in prosecution, but that case argues only that a prosecutor plea negotiation threat of more serious charges if the accused did not plead guilty, did not violate the due process clause of Amendment XIV. The case is again immaterial.

34. *Heckler v. Chaney*[3][15] (1985) *admits* that the APA only precludes judicial review of federal agency action when precluded by statute. But the Food, Drug, and Cosmetic Act (FDCA) had given that discretion to the defendant Secretary of Health and Human Services. The case does not argue broader discretion.

35. *Kidwell v. FBI*[4][16] was dismissed for numerous *procedural* violations. The FBI and DOJ were named solely for declining to investigate a defective guitar, and were never served. The cited *Auleta v. DOJ*[5][17] held that a DOJ decision not to investigate was discretionary, ignoring the APA provisions and erroneously citing *Heckler*.

---

[12] Two-Thirds Of Voters Believe Social Media Engaged In Politically-motivated Censorship And Demand Congressional Action, JonathanTurley.org, 12/12/2022.
[13] *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476
[14] *Bordenkircher v. Hayes*, 434 US 357
[15] *Heckler v. Chaney,* 470 U.S. 821 (1985)
[16] *Kidwell v. FBI*, 813 F. Supp. 2d 21 (DDC 2011)
[17] *Auleta v. DOJ*, 80 F. Supp. 3d 198, 202 (DDC 2015)

36. In *Gage v. U.S. Att'y Gen.*[6][18] the court refused to compel the AG to request that the court impanel a Special Grand Jury to investigate because the plaintiffs never cited a duty of the FBI to investigate.

37. These citations are immaterial. They are immaterial decisions, not excuses to ignore massive proven corruption in one political party while investigating minor corruption in another.

38. The prior decision cited no law granting absolute discretion of action to the defendant agencies, despite the APA. The FBI cannot have absolute discretion by law, as that would violate the Checks and Balances essential to the Constitution. Any discretion granted by statute is limited to operation within the statutory duty of the agency, and would be void in this case, because that duty was clearly violated, as argued above.

39. The prior decision erred in stating that federal agencies have discretion to collude in political racketeering crime by refusing to investigate the crime, regardless of the damage done to federal, state, and county governments and numerous persons in every state, even when they investigate political racketeering cases of one-thousandth the size of this one, *involving the other major political party candidate during an election season*. The facts show criminal intent within the defendant agencies, violations of statutory obligations which vacate any presumptive discretion.


B. The Complaint Does Provide Statutory Basis For Relief

40. The prior decision erred in stating (p. 5-6) that "none of the statutory bases Plaintiff cites allows for relief" and cites only the partisan decision of the FLMD in the prior related case, wherein *the judge is a member of the same political faction* as the racketeers and made perjuries of law to serve them. Faced with a well argued and documented civil RICO complaint, that judge made the false claim, that "Only the government, not a private citizen, may bring a suit under these [criminal] statutes" referring to the 18 USC statutes of count 9. But of course Count 9 cites RICO (and CRA, FCA, and FOIA), which provides for civil prosecution under other statutes:

> Violations of Federal Law:
> 5   USC § 552 Freedom of Information Act (FOIA)
> 18 USC § 242 Denial of Constitutional Rights under color of law
> 18 USC § 371 Fraud and Conspiracy Against the U.S. (see M.O.L. 3)
> 18 USC § 981 Forfeiture of property and proceeds of crime
> 18 USC § 1341        Fraud and Violation of Honest Services
> 18 USC §§ 1952–1968 Racketeer Influenced Corrupt Organizations Act

---

[18] *Gage v. U.S. Att'y Gen.*, No. 22-0283 (DDC 2022)

These claims are brought under 18 USC §§ 1962 (c) and (d)

18 USC § 2383        Rebellion against the United States or the laws thereof
31 USC § 3729        False Claims Act (FCA)
42 USC §§ 1982-1985 Civil Rights Act

The prior decision merely quoted DOJ perjuries of law.

41. Of course the Plaintiff seeks in this case that the federal government prosecute the violations of any statutes excluded from his RICO prosecution, and prefers to seek no federal penalty. The efforts of a rogue faction in these agencies to evade and obstruct such prosecution is conclusive evidence of criminal intent.


C. Federal Agencies Do Not Have Immunity For Racketeering Crime

42. The judicial power of courts established under Article III "shall extend … to Controversies to which the United States shall be a party" as well as to "Controversies… between citizens of different states" and other matters. That undeniably was intended to subject the acts of government to judicial review, and is a clear statement of jurisdiction to apply the law of damages in all such cases.

*The Tyranny Of Sovereign Immunity Was Revived In Fear Of Early Conflicts*

43. The ancient excuse of "sovereign immunity" originated solely as a scheme to protect tyranny from democratic institutions, based upon the inability of royalist judges to enforce human rights with damages awards. Those rights are explicitly guaranteed by the US Constitution and laws, which of course contain no immunity provision. The notion of "sovereign immunity" for denial of rights guaranteed by the Constitution has no foundation in US law. Like the royalist doctrine, its origin is merely the early uncertainty of judges that they could enforce damage payments.

44. The original Court of Claims legislation provided for *executive review* of its decisions, encouraging judges to limit or avoid claims by any available means. The ghost doctrine of "sovereign immunity" was thereby revived as "a doctrine of avoidance designed in part to protect the status of the courts"[84][19] by "protecting themselves from potentially dangerous confrontations" with the legislative branch and "thereby protecting at least the appearance of judicial independence."

---

[19] *Suing the Federal Government: Sovereignty, Immunity, and Judicial Independence*, Vicki C. Jackson, 35 Geo. Wash. Int'l L. Rev. 521-609 (2003) https://scholarship.law.georgetown.edu/facpub/107

45. This limitation was largely removed when "the *Glidden* Court was prepared to uphold Article III courts in entering money judgments against the United States given either a permanent indefinite appropriation or a history of payment," which "makes it much less likely that Congress will decide not to pay" and "reinforces the confidence of Article III courts."[20]

> Sovereign immunity has played an important rhetorical role in the Court's explanation of reasons to bar, or permit, various forms of relief in disputes between citizens and the government... The doctrine has been deployed in ... an effort to fashion remedies that are least likely to be objected to and most likely to be complied with... while it may enhance courts' abilities to avoid confrontations it limits their abilities to enforce other aspects of the law. In this way the sovereign immunity doctrine... can be viewed either as a source of legitimacy for the courts or as a form of unprincipled weakness.

*Absolute Federal Immunity Is Unconstitutional*

46. The Fifth Amendment guarantees that citizens shall not be subject to uncompensated takings, nor deprivations of life, liberty or property without due process of law. This clearly anticipated judicial remedies against acts of government in violation of Constitutional rights, and permitted suits and enforcement by habeas corpus and mandamus orders against government officials. Sovereign immunity was never justifiable under the Constitution, nor even argued. As our first Chief Justice (1775–1782) John Marshall wrote:

> The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.

47. Sovereign immunity was of course never stated in the Constitution, because it was recognized as the abhorrent ancient claim of tyrants to be above the law. Suits against government are an essential regulatory mechanism, and improve rather than challenge or imperil security or the rule of law.

48. The remedial imperative of the Constitution precludes sovereign immunity from any suit alleging a violation of constitutional right.[85][21] The "petition" clause of the First Amendment rejects immunity in favor of judicial resolution of petition claims against government.[86][22] The

---

[20] *Ibid*, p. 605
[21] Akhil Amar, *Of Sovereignty and Federalism,* 96 Yale Law Journal 1425, (1987)
[22] James E. Pfander, *Marbury, Original Jurisdiction and the Supreme Court's Supervisory Powers,* 101 Colum. L. Rev. 1515, 1586 (2001).

*Bivens* decision establishes that enforcement of the Constitution is not dependent on government assent, and that the Constitution is enforceable by individuals without executive assent[87][23].

49. Sovereign immunity, in a nation founded upon principles of individual rights, has very few legitimate functions, and serves primarily to convenience "us" in government over "them" injured citizens, a deliberate violation of public duty. It is rationalized only by the false pretense of "defending" government while in fact subverting its Constitution and laws. Judicial remedies against executive misconduct function as an essential mechanism of government checks and balances, as well as accountability.

50. Early federal case law does not recognize any federal immunity. In 1803 *Marbury v. Madison*[10][24] approved mandamus as the remedy against a Cabinet-level federal official to compel performance of a clear duty. That decision, that the "essence of civil liberty" is that the law provide a remedy for the violations of rights, precludes immunity. In 1838 *Kendall v. United States*[11][25] upheld mandamus of a federal official who "commits any illegal act, under colour of his office, by which an individual sustains an injury," and awarded credits leading to payment of the claim.

51. By the mid nineteenth century, the hubris of empowered officials corroded the Constitutional rights of the people. Where the Marshall Court saw the necessity of public remedy, the southern-controlled Taney Court that failed to avert the Civil War (in its declaration that slaves have no rights under state or federal constitutions, versus requiring compensation for their liberation), invented government immunity as a default, in subservience to other federal branches and political parties, using the flimsy excuse of legislative control of damage awards. Immunity was not mentioned by the Supreme Court until 1846 in *United States v. McLemore*[12][26], which merely claims without argument that the United States was subject to suit only by its consent in legislation. But of course under the Constitution, the default is enforcement of rights against government, not abandonment of rights. Even that egregious and unsupportable 1846 decision did not bar suits against government officers, nor all forms of relief of injury by government.

---

[23] Susan Bandes, *Bivens: The Self-Executing Constitution,* 68 S. Cal. L. Rev. 289 (1995)
[24] *Marbury v. Madison*, 5 U.S. 137 (1803)
[25] *Kendall v. United States ex Rel. Stoke,* 37 U.S. 524 (1838)
[26] *United States v. McLemore*, 45 U.S. (4 How.) 286, 288

Mandamus was limited by statutes providing executive discretion, [19][27] but continues for breach of a clear ministerial duty.[20][28][21][29]

52. The failure of legislative remedies in takings claims led to establishment of the federal Court of Claims in 1855, and the Tucker Act, to deal with claims against federal government. That court so functioned until its brazenly corrupt 2006 decision in *Agee v. U.S.*[13][30], denying nearly all of its 119-year jurisdiction clearly stated in the one-sentence Tucker Act, by simply making a brazen misquotation thereof, deleting most of the text to falsely associate phrases and create the illusion that it has no tort claim jurisdiction, which is true of only the last category of four categories of claims. To conceal this perjury, the COFC now cites a page of its own decisions leading back solely to its own egregious perjury, and as always the Supreme Court denies review.

53. In 1882, in *United States v. Lee*[14][31] that Court rejected a sovereign immunity defense in action by Robert E. Lee's son against army officers holding his land (now Arlington Cemetery) for the United States, stating that the doctrine "has never been discussed or the reasons for it given," and that the ancient basis of immunity was not applicable.

54. The early excuse for immunity was that the appropriations power required a statute specifically authorizing payment of specific damage awards.[32] But no other government agency refuses to exercise its essential functions on the grounds that expense details are not known in advance.  Only a general budget authorization is needed for government agencies, not pre-authorizations of all specific payments, so any typical budget request for damage claims eliminates that fictitious problem.

55. Even the ancient law of sovereign immunity for tyrants was misstated in the judicial claim of federal immunity: British law provided monetary remedies as of right against the Crown.[33] Later judicial doctrines of sovereign immunity "misinterpreted the ... Constitution's text, warped its

---

[27] *Work v. United States ex rei Rives*, 267 U.S. 175, 177-84 (1925)
[28] *Decatur v. Paulding*, 39 U.S. (14 Pet.) 497,516-17 (1840)
[29] *Miguel v. McCarl*, 291 U.S. 442 (1934) (mandamus for refusal of veteran benefits);
[30] *Agee v. U.S.*, 72 Fed. Cl. 284, 290 (2006)
[31] *United States v. Lee*, 106 U.S. 196 (1882)
[32] *Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850)
[33] *Sovereign Immunity and Suits Against Government Officers,* David P. Currie, 1984 Sup. Ct. Rev. 149, 150-54 (1984)

unifying structure, and betrayed the intellectual history of the American Revolution that gave it birth."[34]

56. Due to the adverse effects of sovereign immunity on court capacities to provide individual justice, it is past time for caselaw to restore the original more restrictive understandings of the doctrine's scope. Re-interpretation of federal immunity doctrines should close rather than widen remedial gaps in the law.

*The Defendant Claim Of Immunity Is Groundless*

57. Few of the cases cited in the decision even turn on immunity, and none provide any legitimate exercise of immunity, let alone a material exercise thereof. They are cited solely as a scam to subvert the Constitution for personal gain.

58. The defendant motion to dismiss falsely stated (p. 6) that RICO claims against federal employees are precluded because the U.S. "has not waived its sovereign immunity" for such claims, citing only an unpublished memorandum opinion in *Hayes v. DOJ*[7][35] citing *Klayman v. Obama*[8][36] for the claim that "sovereign immunity bars a suit against the United States and its agencies except upon consent." But in fact *Klayman* was brought under the Anti-Terrorism Act which specifically bars suits against the United States, and was dismissed for failure to state a civil rights RICO (*Bivens*[9][37]) claim, in failing to identify the civil rights violated. In fact civil rights RICO (*Bivens*) claims are regularly prosecuted against federal agencies and officials where those rights have been violated. There is no *l'etat, c'est moi* federal immunity against RICO claims.

59. The very fact that the defendant agencies seek immunity for collusion with the Florida political racketeers clearly establishes that they willfully acted in violation of public duty and the laws cited in Count 9, voiding even any statutory immunity. There is no such immunity, just as there is no such discretionary action.

D. False Claims Act Applies To Federal Employees Causing False Claims

60. The decision (p.6) and defendant motion (p. 6) claim that the False Claims Act FCA "does not provide a cause of action against the Government" although admitting that it "provides a cause of action against those that defraud the Government." In this case primarily the Florida

---

[34] Ibid
[35] *Hayes v. DOJ*, Civ. A. No. 22-1147, DDC, unpublished
[36] *Klayman v. Obama*, 125 F. Supp. 3d 67, 79 (DDC 2015)
[37] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)

defendants are charged with violation of the FCA (Count 6, 18 USC § 371), for causing misappropriation of federal funds restricted to conservation purposes, commingled with state and county funds, but any defendant agency employees acting in collusion are also in violation thereof, a cause of action by those injured.

E. Federal Agencies Have No Immunity For C.R.A. Or FTCA Violations

61. The decision (p.6) and defendant motion cite an erroneous incidental note in the immaterial *Boling*[15][38] decision, that the U.S. has not "waived its sovereign immunity" under the Civil Rights Act. In fact the act (42 USC § 1983 "Every person…") specifically extinquishes sovereign immunity both state and federal: the U.S. can claim no general immunity for civil rights violations. As argued above, there is no constitutional basis for federal immunity for civil rights violations.

62. The *Boling* case barred the prisoner claims of that case by statute of limitations and res judicata, not sovereign immunity. In considering a claim of § 1985 conspiracy to violate civil rights, it failed to presume an absence of immunity barring specific provisions to the contrary, and erroneously presumed immunity. Civil Rights Act claims of unconstitutional wrongdoing by state actors who violate *any provision* of the CRA were generalized to federal actors by *Bivens*[9][39] and are regularly prosecuted. Bivens claims are not filed against DOJ where FTCA already provides a remedy, but are prosecuted where necessary against federal employees.

63. The decision (p. 6) also cites its own memorandum opinion *Smith v. Obama*, relying upon *United States v. Mitchell*[16][40], another anomalous case of native American rights on allotted lands. The Court of Claims had *specifically denied* the DOJ argument that the U.S. had not waived sovereign immunity, and held that the Indian General Allotment Act of 1877 created a U.S. fiduciary duty to manage the timber resources properly. The Supreme Court held that the Act did not establish such a fiduciary duty, voiding the cause of action. *U.S. v. Mitchell* does not argue sovereign immunity, and *Smith v. Obama*[17][41] falsely states the long-superceded doctrine that "the federal government is subject to suit only upon consent." This is a clear attempt to subvert the United States Constitution, not worth examination.

---

[38] *Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37 (DDC 2017), memorandum opinion only
[39] *Bivens v. Six Unknown … Agents of Federal Bur. of Narcotic*s, 403 U.S. 388 (Supr. Ct 1971)
[40] *United States v. Mitchell*, 445 U.S. 535 (1980)
[41] *Smith v. Obama,* 217 F. Supp. 3d 283 (D.D.C. 2016)

64. Congress created the Administrative Procedure Act APA, 5 U.S.C.S. § 701(a) to ensure that all agency actions may be reviewed by courts unless discretion is provided by law, exempting the military and certain agencies, but not the defendant agencies (see above).

65. Persons performing "adjudicatory functions" within a federal agency, including decisions to initiate proceedings, have personal immunity under *Butz v. Economou* [18][42], but those who therein willfully violate the statutory purposes of their agency to effect political or other bias, abdicate that function and its immunity. An agency that broadly distributes "adjudicatory functions," or allows employees to assume adjudicatory roles without the education, time, or intent to avoid violation of rights, abdicates the basis of immunity of adjudicatory functions.

66. Those who conceal information from "adjudicatory" officials, provide them false information, or coerce or violate their decisions, do not have the immunity of adjudicatory functions. Like most officials they have only "qualified immunity" from civil claims (not criminal claims prosecuted under civil RICO or by federal prosecutors) which does not apply where a "reasonable" official would have known that the conduct violated a "clearly established" statutory or constitutional right. In this case, a reasonable official knows that prosecuting racketeering by one political party while refusing to investigate racketeering of one thousand times that magnitude by an opposing party, violates such rights, and abdicates immunity.

67. In fact *Boling* admits that Congress waived immunity (of DOJ and other agencies) under the FTCA "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" but FTCA was not applicable in the *Boling* case due to lack of any claim of underlying wrong.

**CONCLUSION**

**DOJ Statements And Refusal To Answer Constitute Admission Of Collusion**

The refusal of the defendant agencies to make a full and proper Answer to the Complaint despite time extensions of six months allowed by the Plaintiff and the lower Court, and their abdication of mandated public duty in filing a dilatory dispositive motion, are tantamount to admissions of the claims. They should be given thirty days to file *only a complete Answer*, fully addressing every allegation and claim of the Complaint, with detailed explanation of the defendant actions.

---

[42] *Butz v. Economou*, 438 U.S. 478 (1978)

All of the potential causes for refusal to investigate political racketeering would be in themselves admissions of collusion by violation of the ABA Standard of Prosecution, if not the DOJ Standards: (1) agency employees are afraid to investigate political racketeering for reasons of job security, in violation of ABA 3-1.6 and 3-1.7; (2) the agencies are pretending that resources are insufficient while *not requesting additional resources or even asking questions*, in violation of ABA 3-1.8 and 3-1.9; (3) the agency has compiled a false dossier for use against the Plaintiff which they conceal because it is indefensible; or (4) the dog ate their homework. No such causes prevented their simultaneous investigation of the Gillum case involving only one-thousandth of the funds in this case. None of these causes are defenses of refusal to perform the duty of these agencies relative to one political party, while investigating another for one thousandth of the funds.

Those of the DOJ who will not question the rogue faction have joined the racketeering enterprise. If FBI had any reasonable explanation for its failure to investigate Republican politicians for thefts of funds one thousand times the amount for which it investigated a Democratic politician in the same state for six years, that could easily have been provided at any time after Plaintiff inquiries, especially after the Plaintiff letter that failure to do so would indicate collusion. The DOJ could easily have explained this in Answer to the prior complaint, if it had any intention to seek an answer. Apparently the FBI has no Answer because it is guilty of political racketeering and intends at all levels to remain an instrument of political corruption, and the DOJ knows that and is fully in collusion.

The DOJ appears to have been induced by a rogue faction to obstruct process; the agencies themselves are *in flagrante delicto* in refusing to Answer the prior complaint and in obstructing process, an admission of collusion in the subject political racketeering.

The people of the United States deserve to know exactly what caused such an extreme distortion of investigation priorities throughout the FBI, HSI, and DOJ, and deserve to see that corrected. That is the purpose of this action.

**Executive Obstruction And Defiance Require Judicial Branch Action**

The defendant agencies have refused to investigate either the Florida defendants, or their own rogue faction in collusion to obstruct investigation. Their mandated duty has been obstructed at high levels by political rogues, and perhaps others fearful for employment security or lost in the common tribalism of secretive agencies, which invalidates any presumptive or

statutory discretion or immunity. The rogue faction prolonged the answer period beyond the recent election season to avoid adverse publicity and reduce the risk that a Grand Jury or congressional committee would be formed to investigate them, and at last refused to answer.

The Plaintiff therefore made Motion in the prior case that:

A. The court Order that these agencies fully account for their abdication of duty in refusal to Answer or investigate following the Plaintiff notices. The agencies would be allowed a final extension of time for a proper Answer, without any intervening motions, and must account for all staff and actions involved, in each agency office that ignored Plaintiff notifications (Appendix G Exhibits).

B. If the DOJ failed to do so, the Court should Order that the DOJ assign a dedicated full-time staff of well-qualified persons, to make a non-partisan investigation of these agencies and of the Florida defendants, and to file a weekly report with the Court. Plaintiff assistance was offered.

C. If the defendant agencies failed to cooperate with these orders, their broad collusion in the racketeering enterprise would be undeniable. In that case, the motion requested the lower court to assert the Judicial Branch powers as checks and balances upon Executive agencies, against criminal conduct of factions within them, by empanelling a Grand Jury to investigate the subversive faction within these agencies, and to investigate the Florida defendants.


**RELIEF SOUGHT**

**This Court Should Order Investigation Or Empanel A Grand Jury**

Because the defendant federal agencies have refused to investigate this matter despite three years of requests and evidence sent to all offices of all agencies under administrations of both major political parties, despite their simultaneous investigation of an opposing party politician for *one thousandth* the amount in this action, the refusal of the defendant agencies to even answer the complaint constitutes admission of willful obstruction of prosecution of political racketeering, in collusion therewith, and in violation of their mandated public duty.

The purpose of the Checks and Balances implemented in the United States Constitution, was to ensure that the errors and collusions of factions or "cabals of the few" within each federal branch, would be detected and corrected by the other branches. James Madison noted the necessity of checks and balances between the branches of federal government in the Federalist Papers No. 10:

> We see it particularly displayed in all the subordinate distributions of power, where the constant aim is to divide and arrange the several offices in such a manner as that each may be a check on the other that the private interest of every individual may be a sentinel over the public rights. These inventions of prudence cannot be less requisite in the distribution of the supreme powers of the State.

Madison extended this consideration in the Federalist Papers No. 51:

> But the great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others. The provision for defense must in this, as in all other cases, be made commensurate to the danger of attack. Ambition must be made to counteract ambition. The interest of the man must be connected with the constitutional rights of the place. It may be a reflection on human nature, that such devices should be necessary to control the abuses of government. But what is government itself, but the greatest of all reflections on human nature? If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself. [1]

Where the executive agencies refuse their duty to investigate and prosecute racketeering by the political parties involved in the executive and legislative branches, it is an essential duty of the judicial branch to order that prosecution, to put the People on notice of that misconduct of public duty. A failure of the judicial branch to do so, would subject the Constitution and laws of the United States to grave risk of failure, whether caused by fear, misinformation, or collusion.

Because the defendant federal agencies clearly contain factions which have unlawfully obstructed prosecution of political racketeering, and have refused to investigate despite three years of requests to all of their offices under two executive administrations, despite their investigation of alleged misuse of one thousandth of the funds involve here by an opposing party politician, and have refused even to answer the complaint thereof, this Court should find probable cause to investigate collusion of the federal agencies to protect political racketeering crime, order the DOJ, FBI, and HSI to investigate the original defendants, and if they do not fully and promptly cooperate, empanel a grand jury to investigate.

The secretive agencies attract some manipulative and selfish personalities, who can simply record made-up facts or refuse to take action, to suit personal and political preferences, relying upon the credulity of the judiciary and the public. Extreme corruption can be avoided only with scrupulous oversight, which has been lacking at the top of the executive branch agencies due to political appointments.

The All Writs Act gives this Court authority to issue writs of mandamus, and 28 U.S. Code § 1361 gives federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The defendant agencies and lower court having refused to perform their duty therein, this Court is thereby authorized.

A failure of the courts to order such investigation would force the plaintiff to proceed with litigation without important financial evidence available only to these agencies, causing the joining of defendants who might not be convicted without that evidence, as well as the exclusion of defendants who would otherwise be convicted. Such a failure would leave no recourse but to prosecute the claims in the mass media. A failure of the courts to order such investigation would also subject the United States to claims of damages by the original defendants, as the sole entity responsible for incompleteness of evidence, should any of them be incompletely proven to have colluded in racketeering. The federal government may also be liable for damages to the state and county for insufficient compensation of damages due to denial of sufficient evidence to join some parties as defendants.

Therefore this Court should order the executive branch Department of Justice, Public Integrity Section, Federal Bureau of Investigation, Internal Revenue Service investigations unit, and the Homeland Security investigations unit, to make full investigations of the original defendants to be joined, and related financial transactions, and present evidence to the plaintiff for incorporation into the case. The Court should also order the DOJ to comply with the plaintiff FOIA request (DOJ Request No. CRM-301637928; Referring Agency No. FOIA-2021-00820).

If the defendant agencies do not fully and promptly comply with the order, as in case of refusal to promptly obtain and make available full information from a full investigation as ordered, or demanding indefinite extensions without results as they did prior to refusal to answer the complaint, this Court should empanel a grand jury for investigation of the original defendants and the defendant agencies.

Respectfully Submitted,

_____

John Barth, Plaintiff, pro se

**OATH AND CERTIFICATE**

     I, the undersigned Plaintiff John S. Barth do hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. I further certify that on this date a copy of the foregoing document was served electronically via ECF on all counsel of record.

Date:_____7/28/2025_____          _____
                                      John S. Barth, Plaintiff, pro se
          P.O. Box 88, Springvale, ME 04083 Jbarth@gwi.net  207-608-1741