**District Court of the United States**
**District of Columbia**

---------------------------------------------
|                                         Case No. 1:25-cv-01136-DLF
John S. Barth,                           |
          Plaintiff                      |
v.                                       |
Mabry Carlton Ranch Inc., et al.         |     **UNIFIED MEMORANDUM OF LAW**
          Defendants                     |          **FOR DENIAL OF**
_____|     **DEFENDANT MOTIONS TO DISMISS**


The defendants have each filed unsupportable motions to dismiss based upon perjuries of fact and false arguments, disposed by separate plaintiff memoranda of law, herein unified for the convenience of the Court. Further citations can be provided upon request.


## Table Of False Motions To Dismiss And Oppositions Disposing Thereof

| Motion | Opposition | Defendant(s) |
|---|---|---|
| 6/17/25 [9] | 6/21/25 [16] | Group B (LRI, John Minton Jr.) |
| 6/18/25 [11] | 6/20/25 [14] | Group A (Lisa Carlton, Barbara Carlton, MCRI) |
| 6/19/25 [14] | 6/23/15 [17] | Amy Meese |
| 6/27/25 [27] | 7/02/25 [32] | Group C (James Walton Trust, Michael Walton, Wyona Walton) |
| 7/02/25 [30] | 7/22/25 [40] | Kimberly (Carlton) Bonner |
| 7/17/25 [39] | 7/23/25 [41] | Group B (John Longino, John Minton Sr., Thomas Curry) |
| 7/28/25 [44] | 7/30/25 [46] | DOJ |
| 8/08/25 [53] | 8/29/25 [57] | Eric Sutton |

(format [n] refers to docket number n)


## Table Of Defendants

| Group A | Lisa Carlton, Barbara Carlton, Mabry Carlton Ranch Inc. (MCRI), and Kimberly Carlton Bonner |
|---|---|
| Group B | Longino Ranch Inc. (LRI), B.T. Longino jr., John Longino, John Minton Jr., John Minton Sr., and Thomas L. Curry |
| Group C | MJW Ranch LLC, James J Walton Trust, Wyona June Walton Trust, Michael Allen Walton, and Julie M Walton |
| Group D | Eric Sutton, and Amy Meese |
| United States | U.S., "Department of Justice," "Federal Bureau Of Investigation," HSA |



RECEIVED

OCT 05 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**Table Of Perjuries Of Fact By The Defendants**

| Category of Perjury of Fact | Defendant(s) |
| --- | --- |
| Perjuries To Create Prejudice In Judges | Longino, Minton Sr., Curry |
| Perjuries On The Related Cases | |
|    Related Cases In Partisan Districts | Carltons, Bonner, MCRI, Waltons |
|    Perjury of Res Judicata (Collateral Estoppel) | Carltons, MCRI, Sutton, DOJ |
| Perjuries On The Nature Of The Case | Bonner |
| Perjuries On Unrelated State Nuisance Action | Bonner |
| Evidence Of Absence Of Conservation Value Of Land | Sutton |
| Minor False Statements Of Fact | Waltons |
| False Quibbles Of Complaint Format | |
|    Clarity Of Claims | LRI, Bonner |
|    Improper Statements | LRI, Sutton |
|    Excessive Length | LRI, DOJ |
|    Appendices Of Fact | LRI, DOJ |

**Table Of False Arguments Of The Defendants**

| Category of False Argument | Defendant(s) |
| --- | --- |
| Venue and Jurisdiction | |
|    Subject Matter Jurisdiction (federal question) | MCRI, DOJ, Bonner, Sutton |
|    Personal Jurisdiction | Waltons, MCRI, Bonner, Sutton |
|    Venue | LRI, Waltons, MCRI, Bonner, Sutton |
| Civil Racketeering | |
|    Crime Damages Of Civil Racketeering | LRI |
|    Elements Of RICO Conspiracy | Waltons |
|    Federal Law Violations Are RICO Violations | Waltons |
|    Florida Law Fraud As RICO Violations | Waltons |
| Laches Or Statute Of Limitations | Waltons, MCRI, Sutton, Meese |
| Validity of Claims | |
|    Proper Statement Of Claims | Waltons, MCRI, DOJ |
|    Allegation Of Plaintiff Injury | Waltons |
|    Standard Of Fraud Claims | Walton |
|    Statement Of Proximate Cause | Waltons, DOJ |
|    Detail Of Charges Against Each Defendant | Waltons, DOJ (2), Bonner, Meese |
| That Federal Agencies May Commit Crime With Impunity | DOJ (2 sections) |
| That State Judges May Commit Crime With Impunity | Bonner |
| That The Sutton Deceptions Were Self-Justifying | Sutton |
| That Sutton Received No Rewards For Collusion | Sutton |

**Table Of Authorities (see Complaint, Appendices A–H, Memoranda Of Law 1–8)**

## Contents

Table Of False Motions To Dismiss And Oppositions Disposing Thereof ................................... 1
Table Of Defendants ................................................................................................................. 1
Table Of Perjuries Of Fact By The Defendants ....................................................................... 2
Table Of False Arguments Of The Defendants ........................................................................ 2
Table Of Authorities (see Complaint, Appendices A–H, Memoranda Of Law 1–8) .................... 2
MEMORANDUM OF LAW ...................................................................................................... 4
PERJURIES OF FACT BY DEFENDANTS ............................................................................. 4
Perjuries To Create Prejudice In Judges (Longinos, Mintons, Curry, LRI) ............................... 4
Perjuries On The Related Cases ............................................................................................. 4
Related Cases In Partisan Districts (Carltons, Bonner, MCRI, Waltons) ............................. 4
Perjury of Res Judicata (Carltons, MCRI, Sutton, DOJ) ...................................................... 5
Perjuries On The Nature Of The Case (Carlton Bonner) ........................................................ 6
Perjuries On Unrelated State Nuisance Action (Bonner) ........................................................ 6
Perjuries On Conservation Statements .................................................................................... 7
Evidence Of Absence Of Conservation Value Of Land (Sutton) ........................................... 7
Evidence Of Panther Habitat (Waltons) .............................................................................. 7
False Quibbles Of Complaint Format Etc. ............................................................................. 7
Clarity Of Claims (LRI, Bonner) ......................................................................................... 7
Improper Statements (LRI, Sutton) ..................................................................................... 8
Excessive Length (LRI, DOJ) ............................................................................................. 9
Appendices Of Fact (LRI, DOJ) ....................................................................................... 10
FALSE ARGUMENT BY DEFENDANTS .............................................................................. 10
Venue and Jurisdiction .......................................................................................................... 10
Subject Matter Jurisdiction (Federal Question) (MCRI, DOJ, Bonner, Sutton) ................... 10
Personal Jurisdiction (Waltons, MCRI, Bonner, Sutton) .................................................... 12
Venue (LRI, Waltons, MCRI, Bonner, Sutton) ................................................................... 14
Civil Racketeering Claims .................................................................................................... 16
Crime Damages As Civil Racketeering Claims (LRI) ......................................................... 16
Standard Of RICO Fraud Claims (Waltons) ....................................................................... 16
Stated Elements Of RICO Conspiracy (Waltons) ............................................................... 18
Federal Law Violations As RICO Violations (Waltons) ...................................................... 19
Florida Law Fraud And Racketeering Violations As RICO Violations (Waltons) ............... 19
Laches Or Expiration Of Statute Of Limitations (Waltons, MCRI, Sutton, Meese) ............... 20
Allegation Of Plaintiff Injury (Waltons) ............................................................................... 21
Statement Of Claims ............................................................................................................ 22
Proper Statement Of Claims (Waltons, MCRI, DOJ) ........................................................ 22
Statement Of Proximate Cause (Waltons, DOJ) ................................................................ 24
Detail Of Charges Against Individual Defendants (Waltons, DOJ, Bonner, Meese) ............ 24
Government May Not Commit Crime With Immunity (Group A Carltons, DOJ) .................. 28
No Judicial Immunity For Non-Judicial Acts (Bonner) ........................................................ 31
That The Sutton Deceptions Were Self-Justifying (Sutton) ................................................ 31
That Sutton Received No Career Rewards For Collusion (Sutton) ...................................... 32
CONCLUSION ..................................................................................................................... 32

**MEMORANDUM OF LAW**

**PERJURIES OF FACT BY DEFENDANTS**

**Perjuries To Create Prejudice In Judges (Longinos, Mintons, Curry, LRI)**

Defendant Group B (Longino Ranch, Inc., Berryman Longino Jr. - deceased, John Minton Jr, John Minton Sr, Thomas Curry, and John Longino) made false accusations [39 p. 2] to prejudice the Court against the Plaintiff, that fully documented partisan denials of venue in four districts (based solely on the perjury that racketeering losses of 150, 350, 750, and 5330 times the felony crime threshold were not "substantial damages") can magically be blamed on the Plaintiff as "numerous claims" against "the members of the judiciary." Of course they have no fact or argument at all to support venue denials, or to madly claim a prejudice against judges. They added the perjury (p. 2) that the Plaintiff made "frivolous actions" in other federal courts, again with zero fact or argument. In fact the Plaintiff has litigated only extreme wrongdoing, with great reluctance, at great personal loss, and the defendant perjuries establish their malice.

**Perjuries On The Related Cases**

Related Cases In Partisan Districts (Carltons, Bonner, MCRI, Waltons)

1.  Upon proof of the prejudice of the FLMD and its partisan collusion with political racketeers, the Plaintiff saw that a venue with few judges of the defendants' political party was required to seal the case and request investigation by federal agencies. Venue in any district was proper due to major damages in all districts by taxation of out-of-state property owners to pay interest on bonds issued to make the unlawful payments to the defendants. The Plaintiff computed the losses in each district based upon population and percentage of out-of-state owners of Florida property (21%), to determine each district's losses as a multiple of it's felony crime threshold, proving the "substantial damage" criterion of racketeering venue. Therefore charges against the private defendants were brought under seal in three ninth-circuit districts having a minority of judges of their political party: (1) Hawaii (CV20 00104 JAO-KJM, about 150 felonies), (2) Oregon (3:20-cv-01164-AC, 360 felonies), and (3) CA Northern District (5:20-cv-09288-NC, 781 felonies) to avoid the political corruption of the Florida Middle District. A warning on the front cover cautioned against bias:

4

This complaint involves operatives and cash flows of a major industry (agriculture and ranching) and political party (Republican) with which the assigned judge may not have social, financial, or career connections or sympathies without violation of the judicial code of conduct.

2.   But in every case, a judge of the defendants' political party grabbed the case, in knowing violation of the Code Of Judicial Conduct, and denied venue on the perjury that 150, 360, and 781 times the felony crime threshold was not "substantial damage," with no argument whatsoever except one case which the FBI declined to investigate because the only issue was a single defective guitar. Of course venue in federal cases is not denied for cases with damages amounting to hundreds of felony crimes.

3.   Upon appeal the 9th Circuit failed to overturn the partisan perjuries, and claimed madly that 5,332 felony crimes there by their political partisans did not amount to "substantial damages."

4.   But the Walton defendants claim falsely [27 p. 1] that this costly and laborious search for a nonpartisan venue was instead merely a "protracted litigation campaign" by a "serial litigant" against their massive crimes, which amount to over 100,000 felonies in 50 states. The Carlton MCRI defendants claim falsely [11 p. 2] that this pursuit of their racketeering crime was "frivolous." Defendant Bonner falsely claims [30 p. 3] that "the same lawsuit has failed in five other federal districts" fully aware that the only issues considered by the partisan judges were those of venue, denied on the absurd perjury that thousands of felony crimes were not "substantial damages." These are undeniable perjuries of fact by the defendants.

Perjury of Res Judicata (Carltons, MCRI, Sutton, DOJ)

1.   The Plaintiff first brought related action under seal in 2019 in the Florida Middle District (FLMD 8:19-cv-3181-T-33AEP), aware of the extraordinary partisan prejudices of that venue, with motion that the court request assistance of federal investigative agencies. When that court denied seal and refused to request investigation, the Plaintiff withdrew the case for filing in a less prejudiced venue [12, docket above]. The Carlton MCRI defendants false statement [11] that the court's acceptance of withdrawal of the case was a "dismissal with prejudice" is outright perjury. Defendant Sutton states falsely [53 p. 3] that the related cases filed in other venues to request federal investigation were thereby already decided, fully aware that all were denied venue by partisan judges grabbing the case, as clearly stated many times in documents before the Court.

The defendant DOJ states falsely [44 p. 13 et seq] that the subject claims were "already dismissed" in the prior related case[1] in which the specific agencies were prosecuted for their partisan corruption in refusing to investigate partisan political racketeering. But of course that case *did not assert these claims*. The private parties there were only named as to be joined after investigation, and the specific agencies were charged with their partisan refusals to investigate. The U.S. was named for overall responsibility for agency misdeeds. But in this case, the U.S. is named only for its *residual liability* to citizens for injuries, a liability never contested, in the Complaint section *Parties* (p. xii). The claims of collateral estoppal are outright perjuries.

**Perjuries On The Nature Of The Case (Carlton Bonner)**

5.   Defendant Bonner seeks throughout her motion to divert attention from the undeniable facts of collusion in racketeering, especially her own, by frivolous claims that the fully-documented Complaint, eight Appendices of Fact, and eight Memoranda of Law, are magically no more than a "frivolous attempt to allege a massive government conspiracy" [30 p.1, 3]. Bonner pretends to defend the government she has profoundly betrayed, by pretending that her prosecution requires a theory of "government conspiracy." But of course the thorough documentation of racketeering collusion by a handful of partisans scattered over a broad area is not a "theory of grand conspiracy." The same claim could be made about any racketeering case, and is plainly false.

6.   Bonner claims falsely [30 p. 1 footnote] that the Appendices and Memoranda of Law filed after service of the Complaint, which references them extensively, magically required a motion to amend the Complaint. This claim has no basis in law or procedure. As in the state cases, Bonner once again seeks to suppress the extensive fact and argument establishing her guilt.

**Perjuries On Unrelated State Nuisance Action (Bonner)**

7.   Defendant Carlton Bonner makes many false statements [30 p. 2] about the nuisance action in Florida which revealed her extreme corruption as a state judge. These cases are detailed in Appendix F: Acts Of Crime Constituting Racketeering, in particular these sections:

> *Denial of Constitutional Rights by Defendants State of Florida, Sarasota County, & Bonner*
>
> *State Court Actions Following Improper Acts Of Federal Court*

---

103.   *John Barth v. United States Dept. of Justice et al*, No. 1:22-cv-00955 (DC, 2022)
104.   appeal No. 22-5338 (DC Cir., 2022)
105.   petition No. 23-379 (U.S. Supreme Court, 2023)

Bonner again makes false claims to fake up an argument of innocence: (1) falsely claims that the first 2012 County case 2012 CC 6843 was reassigned to another judge before decision; (2) ignores the fact that her corruption forced the venue change to the superior court (state 12th Circuit 2013 CA 1257); (3) fails to explain how she forced her way to that court and displaced the sympathetic judge there; (4) fails to explain why she grabbed the case again to continue her abuses; (5) falsely claims that her disqualification upon Plaintiff appeal amounted to having "disqualified herself" (p. 3); and (6) fails to explain how another partisan judge was assigned to continue the *identical abuses* without evidence or argument. Appendix F shows clearly that these acts of Bonner were extreme abuses of office intended to obstruct investigation of her crimes. The Bonner statements are undeniable perjuries.

## Perjuries On Conservation Statements

### Evidence Of Absence Of Conservation Value Of Land (Sutton)

Defendant Sutton states falsely [53 p. 2] and absurdly that the Complaint and eight Appendices Of Fact (A – H) claim "without evidence" that the subject land had no conservation value. In fact these extensive compilations of the evidence fully establish the lack of conservation value as the conclusions of state agencies. Sutton is fully aware that his statement is perjury.

### Evidence Of Panther Habitat (Waltons)

8.   The Walton defendants claim falsely [27] that the plaintiff "alleges that the wild panthers whose habitat the land was falsely claimed to conserve were 'fictitious.'" Of course the Plaintiff has well documented the false conservation claims, with no claim that wild panthers do not exist:

> Complaint *Facts of Conservation Land Funding and Misappropriation in Florida*
> Appendix D *Conservation Facts and Argument*
> Appendix E *Unlawful Methods and Criminal Acts*

The Walton claim is outright perjury.

## False Quibbles Of Complaint Format Etc.

### Clarity Of Claims (LRI, Bonner)

9.   The Group B defendants (LRI, John Minton Jr., John Longino, John Minton Sr., Thomas Curry) claim absurdly [39 p. 1, 2] that despite (a) the clear lists of Complaint paragraphs

applicable to them for each of Counts 1, 2, 3, 4, and 6 (Complaint p. xviii, xix, xx, xxi, and xxiii) which they even copy into their motion; (b) the *Table of Paragraph References Per Defendant For All Counts* (p. xvii); (c) the common racketeering elements stated in *Common Elements Incorporated Into All Claims* (p. xxvii); and (d) the many specific references to these defendants (group B) in specific paragraphs, that they simply cannot understand which paragraphs are applicable to them. This is an egregious and unsupportable false claim.

10. These defendants object [39 p. 1] without argument to the Complaint *Claims* section *Common Elements Incorporated Into All Claims* (cited in each Count) despite its clear purpose and effect of avoiding needless redundancy to achieve an efficient statement of the claims.

11. Defendant (Carlton) Bonner claims repeatedly [30] that she simply cannot understand which Complaint paragraphs are applicable, despite (a) the clear lists of Complaint paragraphs applicable to Group A for each of Counts 1, 2, 3, 4, 5, 6, and 8; (b) the *Table of Paragraph References Per Defendant For All Counts* (p. xvii); (c) the common racketeering elements stated in *Common Elements Incorporated Into All Claims* (p. xxvii); (d) the many specific references to Group A and Bonner in specific paragraphs; and (e) her enumeration [30 p. 1] of relevant Counts 2, 3, 5, 8. These are clearly false statements.

Improper Statements (LRI, Sutton)

12. The Group B defendants (LRI, John Minton Jr., John Longino, John Minton Sr., Thomas Curry) complain absurdly [39 p. 2 et seq] of "immaterial and conclusory statements" in the Complaint, but find no example but a paragraph noting the collusion of "social groups of wealthy people" (groups A, B, and C) with opportunists, in forming the subject racketeering enterprise. That Complaint statement is material, essential, in no sense conclusory, and not part of a claim. But it is an uncomfortable exposure of their partisan dependencies, opportunism, abuses of office, and failures of courage or ethics, a highly relevant and essential background summary.

13. Clearly a general statement is not a conclusory statement, and such a highly relevant statement is clearly not immaterial. The defendants wish to silence the truth of their corruption.

14. These defendants make several completely unsupported false claims [39 p. 5] of "confusing" or improper statements in the Complaint, despite being unable to find a single example, and rave wildly (p. 4) about nonexistent "rambling," "disjointed," or "incoherent" statements, without finding a single such statement. These appear to be quotes from immaterial cases. But we may be

thankful to these defendants for these admissions of dishonesty. These defendant claims are nothing more than further scams by political racketeers.

15. Defendant Sutton adds wild perjuries [53 p. 5] that the Complaint states "bizarre conspiracy theories" and "fantastic government manipulations of their will or mind." In fact the term "conspiracy" is used in the Complaint solely in legal argument establishing violation of laws against conspiracy to misappropriate funds, etc. The words "manipulation" and "mind" do not even occur in the Complaint. This Sutton perjury clearly establishes his extreme dishonesty.

Excessive Length (LRI, DOJ)

16. Like most racketeers, defendants LRI, John Minton Jr., John Longino, John Minton Sr., Thomas Curry complain absurdly and without foundation [39 p. 4-5] that any thoroughly researched and argued racketeering Complaint is magically "unnecessarily lengthy," despite its exemplary brevity and clarity in stating the voluminous facts of their own complex corruption across several state agencies involving many partisan operatives and influence channels. This is the usual scam of racketeers, pretending that whoever can follow their web of corruption should not be allowed to make enough statements in Court to describe it. Regardless of any citation of excessive complaint length in immaterial cases, they have made no argument at all.

17. Note that Complaints must provide the essential facts necessary to state the allegations, which of course requires considerable length to document complex racketeering operations. A racketeering defendant must be presented with the fact and argument of the whole racketeering enterprise, not just his own role. The Complaint herein does so with exemplary clarity, brevity, and sufficiency, thereby fully meeting the requirements. Despite dealing with 27 major issues of fact, the Complaint consists of only 41 pages of Fact and Argument, in addition to the *required pages* of Cover, Contents, and statements of (1) Jurisdiction, Venue, And Assignment; (2) Authorities; (3) Parties; (4) Statement Of Claims; (5) Pattern Of Racketeering Crime And Statutes Of Limitations, (6) Petition For Relief, and (7) Oath, a total of 31 required pages.

18. These defendants merely make unsupportable claims of "rambling" and unrelated facts that they cannot identify, and the absurd perjury that they cannot locate relevant paragraphs even with the many lists thereof provided in the Complaint for each defendant. Their objection consists entirely of unsupportable assertions.

19. To keep the Complaint reasonably concise and clear, on complex subjects it references (a) Appendices of Fact A, B, C, D, E, F, G, H, and (b) Memoranda of Law 1, 2, 3, 4, 5, 6, 7, and 8.

20. The defendant DOJ states falsely [44 p. 5-6] with zero fact or argument that the very concise Complaint is magically a "sprawling, unfocused odyssey" hoping to discourage others from reading of their complex partisan racketeering, and to conceal their partisan motive for refusing to do their job. Regardless of complaint length, they have made no argument at all.

Appendices Of Fact (LRI, DOJ)

21. The defendants LRI, John Minton Jr., John Longino, John Minton Sr., Thomas L. Curry object [39 p. 1] without argument that the Appendices Of Fact are not located within Complaint, despite complaining (see above) about the length of Complaint necessary to summarize those facts. As usual, the Appendices Of Fact on specific subjects are separate documents.

22.  In complex cases with a large volume of fact, Fact appendices are of course never included in the Complaint, precisely because that would violate the requirement of conciseness.

23. In this case, seven of the eight Fact Appendices (A, B, C, D, E, F, G) were filed by email (without ECF) as attachments but docketed on 6/20/25 [20] as one item with attachments. To improve ease of use, five of those Fact Appendices (A, B, C, D, E) were filed separately on 6/24/25 [21-25] along with Exhibits Vol. 1 [28]. Since the defendant US filed an appearance, three Fact Appendices F, G, H concerning the defendant agencies were filed.

24. The defendant DOJ failed to file an appearance for two months after service 5/28/25, and their counsel then stated falsely [44 p. 2] that the seven Fact Appendices A, B, C, D, E, F, H [20-25, 28] are a single "239 page document" and complained that they are unfathomably "not included in the Complaint itself" despite objecting to the length of the very concise Complaint (see above). These are plainly perjuries of fact by the defendant, in collusion with racketeering.


**FALSE ARGUMENT BY DEFENDANTS**


**Venue and Jurisdiction**

Subject Matter Jurisdiction (Federal Question) (MCRI, DOJ, Bonner, Sutton)

25. As noted in the Complaint section *Jurisdiction, Venue, and Assignment*, jurisdiction hereof is established under federal law, based upon federal issues and diversity. This action is brought for violations of rights guaranteed by the Constitution of the United States, and violations of federal laws, including 18 U.S.C. §§ 1961–1968 (Racketeering Influenced and Corrupt Organizations Act or RICO). This Court has original jurisdiction under 28 USC §1331 (federal issue) of the

claims herein of violations of these statutes of the United States, and under 28 USC § 1332 (diversity) of all claims herein, as well as jurisdiction of claims of interference with interstate commerce, as the Plaintiff is a citizen of Maine, whereas all defendants are citizens or entities of other states, or federal entities.

26. This district court has original jurisdiction under 28 USC §1343(1 and 2) (conspiracy) of the claims herein of deprivations of civil rights by acts of conspiracy in violation of 42 USC §1985 (Civil Rights Act), or failure to prevent such deprivations, and under 28 USC §1343(3) (color of state law) of all claims herein of deprivations of civil rights under color of state law.

27. Jurisdiction of the D.C. District includes the residual liability of the federal government for refusal to investigate political racketeering of one party while investigating its opponent (Count 9, Complaint p. xxvi).[2] That jurisdiction has broadened since the denial of Tucker Act (28 U.S.C. §§ 1346(a) and 1491) jurisdiction of tort claims by the Court of Federal Claims (2002-2004), which forced such claims into the district courts along with their prior jurisdiction of smaller claims against federal government under the "Little Tucker Act" (28 U.S.C. §§ 1346a). No residual federal claim is asserted after full compensation of damages by the other defendants.

28. Federal jurisdiction depends upon violation of the federal laws enumerated in the Complaint Claims, not upon state rules for state jurisdiction.

29. The MCRI defendants claim lack of subject matter jurisdiction [11 p. 5] without argument, merely jumping to the unrelated false claim of laches or expiration of the statute of limitations.

30. The DOJ defendant [44 p. 7] makes its traditional perjury that Congress must waive sovereign immunity, as it did over a century ago in most of these areas. Their preposterous claim of tyrannical power for federal employees ignores federal law.[3] See immunity section below.

31. Defendant (Carlton) Bonner claims falsely [30 p. 5] that the Complaint is magically "insubstantial" by reason of "presenting no federal question" despite the many federal laws violated and listed in the Complaint *Claims* (p. vii-xxii). Only immaterial citations are offered.

32. Of course this case deals exclusively with the racketeering of Bonner and other defendants, not the issue of agency refusals to investigate, considered in a predecessor case. But Bonner seeks to deceive by invoking the absurd notion that a fully-documented racketeering Complaint

---

[2] The Supreme Court superceded its 1894 *Schillinger* decision in recognizing [80] that the Tucker Act extended jurisdiction to nearly all claims against the U.S., confirmed in *Dooley v. United States* [78, 1901] and *United States v. Lynah* [79, 1903], including tort claims, contract claims, and non-tort claims for specific damages.

[3] *Federal Liability for Takings and Torts* Abend, 31 Fordham Law Review 481

with eight Appendices of Fact and eight Memoranda Of Law, merely states a "theory" deprecated as one of "massive conspiracy between multiple federal agences" [30 p. 5].

33. In fact the Complaint does not attribute agency failures to conspiracy, which might be due to fear of political retribution for political investigation, false database information accessed by all agencies, or other large or small internal errors, procedure problems, or resource limitations.

34. But even considering the investigation issues of the prior case, Bonner corruptly ignores the fully proven refusals of DOJ, FBI, and HSA to investigate partisan corruption over a 3-year period of 35 fully-evidenced requests to all local, state, national, and OIG offices of all of those agencies, even as they investigated for *six* years a politician of the *opposing* party on mere *allegations* of mishandling *one-thousandth* of the amount stolen by Bonner and other defendants. Clearly the only "bizarre" theory here is Bonner's belief that her endless perjuries and deceptions will somehow obscure her own undeniable collusion in racketeering.

35. Bonner states falsely [30 p. 6-7] that the Complaint "continuously states" the defendants are being "paid for this conspiracy" with "no logical connection," other than (1) their proven partisan theft of $119 million arranged by her sister defendant Lisa Carlton, then president of the Florida senate, (2) her non-election as a county judge via partisan connections with only one recommendation (from another defendant herein), and (3) her own promotion to the county "circuit" (superior) court to obstruct investigation of her own racketeering, using undisclosed incentives from those thefts. Of course she claims that all such claims are "frivolous," hoping to block discovery of her crimes and partisan manipulations of judicial selection. But in fact the interstate racketeering issues here are clearly federal issues.

36. Defendant Sutton merely parrots without argument [53 p. 3, 5, 7] the absurd claims of other defendants on jurisdiction including subject matter jurisdiction.

Personal Jurisdiction (Waltons, MCRI, Bonner, Sutton)

37. The defendant Waltons [27 p. 12], Group A Carltons [11 p. 5 et seq], Bonner [30 p. 7] and Sutton [53 p. 5] claim lack of personal jurisdiction over themselves with no argument but that the original subject offenses occurred within several Florida districts, and that they have few contacts in the D.C. district. But of course, federal personal jurisdiction has never been determined by the residency of one set of defendants. The defendants ignore (a) damages in every federal district due to the additional tax burden imposed upon out-of-state property owners by their offenses; (b) effects upon the Plaintiff residing in another state; (c) the involvement of

federal agencies in this case and its predecessor in this district; (d) involvement of interstate commerce by interstate and international cashflows associated with the stolen funds and related payments involving their political party; (e) effects upon federal conservation budgets due to diversion of state funds; (f) injuries to residents of other states by their diversion of conservation funds; and (g) the fact that the defendants reside in three federal districts of Florida.

38. The defendants have no argument that a biased Florida district has jurisdiction, and cite only immaterial cases wherein local courts have jurisdiction in cases with only local parties.

39. The Group A Carlton defendants object falsely [11 p. 12-13] that jurisdiction requires that a defendant "purposefully availed itself" of the "privilege" of conducting activities in the district, an attempt to inject non-existent conditions upon the definition of damages. Clearly their acts deliberately caused broad effects; their knowledge of all consequent damages is immaterial.

40. The Group A Carlton defendants [11 p. 6-7, 13-14] and Bonner claim absurdly [30 p. 7] that D.C. municipal laws and a local court rule (DC Ann § 13-423) determine the jurisdiction of this court. Even if that were arguable, these defendants ignore the fact that the Complaint shows that the defendant acts meet *three* of the *independent* criteria of jurisdiction under the D.C. rule:

> (1) transacting any business in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; and
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if… substantial revenue… in the District of Columbia;

41. Bonner seeks to to obscure the clear connections shown in the Complaint with further false statements of fact [30 p. 8, 9]:

> 1. That Bonner's only involvement was in unrelated cases in Florida (wherein she sought to obstruct Plaintiff investigation of her racketeering);

> 2. That Bonner had no "business in the District of Columbia" despite her profit from taxation of residents there who own property in Florida, to cover the costs of her theft;

> 3. That the Complaint "does not allege any injury caused" in D.C. resulting from Bonner's racketeering theft, despite its clear statement and quantification thereof; and

> 4. That the Complaint "does not connect" the Florida real property taxation of D.C. residents to the acts of the defendants, despite its clear statement and quantification thereof.

42. In fact the Complaint and Appendices clearly show that even the D.C. criteria are met: (2) the defendants' "business" of taxation of Florida property to pay interest on bonds issued for the funds paid to the defendants, and the distribution of that burden upon out-of-state owners who

are residents of D.C.; (3) the injury caused in D.C. resulting from Bonner's racketeering theft; and (4) the connections of the defendants with the theft. The Bonner statements are deceptions if not perjuries of fact, seeking to obscure the clear basis of jurisdiction, even under D.C. rules for local courts, and to obscure the clear basis of jurisdiction under federal law and the F.R.Civ.P. 43. Therefore these defendants have no argument that only one Florida district known to share their partisan prejudices could have jurisdiction over themselves.

Venue (LRI, Waltons, MCRI, Bonner, Sutton)

44. The basis of venue in this district is well established in the Complaint section *Jurisdiction, Venue, and Assignment*. Venue in RICO action is proper under 18 USC §1965 (a) in any district where a defendant "resides, is found, has an agent, or transacts his affairs." The defendant United States meet all of these criteria. The racketeering enterprise also "transacts affairs" in DC by taxing Florida property with out-of-state owners, to cover interest on bonds issued for corrupt payments. D.C. residents who own property there lost $56,437 to the racketeering scheme, several times that amount with long-term interest, far exceeding 56 felony crimes here. Residing in DC now and during this period, Donald Trump alone lost about $1,830 in additional taxes on his Palm Beach home due to this racketeering, and President Biden's family lost about $344, a total of twice the D.C. felony crime threshold, seven times that of Florida, and several times those numbers with long-term interest. More than 56 felony crimes in D.C. including multiple felonies against U.S. presidents, establish that the racketeering enterprise "transacts affairs" in D.C.. Venue in the D.C. district is therefore clear.

45. The Group A Carlton [11 p.5], Group C Walton [27 p.10], Bonner [30 p.9], and Sutton [53 p. 6,7] defendants falsely claim improper venue under 28 U.S.C. § 1391(b), although in fact it allows venue in all federal districts:

     I.      A civil action may be brought in—
     II.    (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
     III.   (2) <u>a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred</u>, or a substantial part of property that is the subject of the action is situated; or
     IV.   (3) if there is no district in which an action may otherwise be brought as provided in this section, <u>any judicial district in which any defendant is subject to the court's personal jurisdiction</u> with respect to such action.

46. Criterion (1) permits venue in any Florida district unless any defendant is a resident of another state (probable in this case but still unknown); criterion (2) permits venue in (a) all federal districts due to a substantial part of the distributed damages occurring there, and (b) the D.C. district due both to substantial damages there (see above), and to substantial events having occurred at federal agencies denying investigation; and criterion (3) permits venue in any district with jurisdiction of any defendant, but only if there is no other venue.

47. None of these criteria exclude the D.C. district. Criterion (2) best applies to this case. The defendants offer no reason to exclude the D.C. district, and merely ignore the distributed damages and federal defendant, in hope of forcing a venue controlled by their political party. They are fully aware that their statements of law on the matter are immaterial.

48. The Group B Longino defendants admit [9 p. 2] that the Plaintiff is "fully within his rights to file… in the venue of his choosing" but falsely claim (p. 3) that related actions *seeking federal investigation* in the HI, OR, and CAND districts were "validly dismissed" while concealing the cause thereof. In fact each of those cases was simply denied venue although venue was entirely proper, by partisans seeking to obstruct prosecution, as detailed herein. The defendants admit that they have no fact or argument against venue in this district.

49. Defendants Bonner [30 p. 10-11] and Sutton [53 p. 6] drift from their false venue argument with perjuries of the cause of denial of venue in other districts in preceding cases *that sought only federal investigation*. As noted in the Complaint *Statement of Related Cases* [104 – 112] (p. vi) and detailed in Memorandum Of Law 8 (p. 4) section *Districts Where Process Was Denied Despite Substantial Damages*, after denial of motions to seal and request investigation by the Florida Middle District consisting entirely of judges appointed by the political party of the subject racketeering, venue was sought in other districts with less partisan distortion. But in every case, a judge of the political party involved grabbed the case and again denied venue with the same absurd perjury of law:

> In each venue, a dishonest Republican judge grabbed the case and denied venue, claiming damages there were miraculously not "substantial" enough for venue under the RICO "substantial damages" criterion, although damages were about $116,332 (155 felonies) in Hawaii, $346,601 (346 felonies) in Oregon, and $723,275 (723 felonies) in CAND. The 9th Circuit ignored the issues of law. Note that a search for an honest venue cannot be considered "venue shopping."

50. But Bonner [30 p. 11] and Sutton [53 p. 3] falsely claim that these partisan perjuries of law argue against venue in D.C., despite the D.C. headquarters of agencies that refused to investigate,

and the standard practice of D.C. district venue in claims involving the United States. The only argument of these racketeers is that there is no limit upon the "substantial damages" they may cause in any district where any judge was appointed by their own political party, so that 28 U.S.C. § 1391(b)(2) can never be applied to themselves. That is not argument, it is another exercise in perjuries of law.

51. Defendant Sutton offers no reason to exclude the D.C. district, merely ignores distributed damages and federal defendants in hope of forcing a venue controlled by his political party, and argues absurdly [53 p. 7] that venue would not meet criterion § 1391(b)(1) because *not all* defendants are from D.C., and seeks to deceive that § 1391(b)(2) somehow doesn't apply because *other* substantial damages occurred elsewhere, or because some property of D.C. owners was located elsewhere. These are not arguments, but suggestions for scams and deceptions.

**Civil Racketeering Claims**

Crime Damages As Civil Racketeering Claims (LRI)

52. The Group B Longino defendants claim falsely [39 p. 5] that civil racketeering complaints may not claim damages from crime. In fact the damage claims of nearly all civil racketeering complaints are the result of racketeering crime as defined by 18 USC §§ 1952–1968 Racketeer Influenced Corrupt Organizations Act (RICO). These claims are brought under 18 USC §§ 1962 (c) and (d), and include violations of state criminal law, and federal criminal law including:

> 18 USC § 371   Fraud and Conspiracy Against the United States (see Mem. Of Law 3)
> 18 USC § 1341  Fraud and Violation of Honest Services
> 31 USC § 3729  False Claims Act (FCA)
> (further criminal laws regarding interstate commerce)

53. The defendant claim is false, unsupported, and unsupportable.

Standard Of RICO Fraud Claims (Waltons)

54. The Group C Walton defendants claim absurdly [27 p.7-8] that without specific evidence of mail fraud by Group C, no RICO violation could have occurred. But of course:

A.  RICO does not require that all defendants engage in all aspects of a racketeering operation;

B.  Fraud is not a necessary component of a RICO racketeering enterprise; and

C.  Fraud in interstate commerce is not limited to mail fraud;

55. A racketeering enterprise as defined by RICO may involve many types of offenses (see plaintiff Memorandum of Law 1: Racketeering, section *Racketeering Acts and Penalties*), of which a defendant need only be charged with one or more.

56. Racketeering is proscribed by 18 USC §§ 1952–1968 (Ch. 96), and is defined by § 1961 to include the following:

> (A) any act or threat involving… robbery, bribery, extortion… which is chargeable under State law and punishable by imprisonment for more than one year;
>> See section below *State Crimes That Constitute Federal Racketeering Crimes*.
> (B) any act which is indictable under any of the following provisions of USC title 18:
>> section 1341 (mail fraud), section 1343 (wire fraud), section 1344 (bank fraud), …
>>> [applicable to Carlton et al, state off'ls with evidence of fraud & benefit rec'd]
>> section 1503 (obstruction of justice: federal officials, victims, witnesses), …
>>> [applicable to Kovacevich, Travers]
>>> [applicable to state judges, pvt dfdts, sheriff]
>> section 1512 (tampering with a witness, victim, or an informant),
>>> [applicable to state judges, pvt dfdts, sheriff]
>> section 1513 (retaliating against a witness, victim, or an informant), …
>>> [applicable to state judges, pvt dfdts, sheriff]
>> section 1951 (threats or violence), …
>> section 1952 (racketeering), …
>> section 1956 (laundering of monetary instruments),
>> section 1957 (transactions in property derived from specified unlawful activity)…

57. 18 U.S. Code § 1962 provides that a defendant may have invested in the enterprise; acquired interest therein, or participated therein, by means of racketeering; or conspired to cause this.

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity… to use… directly or indirectly, any part of such income… in acquisition of any interest in, or the establishment or operation of, any enterprise… the activities of which affect, interstate or foreign commerce…
> (b) It shall be unlawful for any person through a pattern of racketeering activity… to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

58. 18 USC § 1341 (mail fraud) and 18 USC § 1343 (wire fraud) provide that

> Whoever, having devised… any scheme or artifice… for obtaining money… by means of false or fraudulent… representations…, for … executing such scheme… places in any… depository… any matter… to be… delivered by the Postal Service… or… receives therefrom, any such matter… shall be fined… or imprisoned… or both.

> Whoever, having devised… any scheme or artifice… for obtaining money… by means of
> false or fraudulent… representations…  causes to be transmitted by means of wire…
> communication in interstate or foreign commerce, any… signals… for the purpose of
> executing such scheme… shall be fined… or imprisoned… or both.

59. The defendants claim that the Complaint does not allege that Group C "had a specific intent
to defraud." While fraud is not a requirement necessary for sufficiency of allegation of violation
of RICO, it is in fact stated in Count 3 for Group C:

> The above defendants knew from the other defendants above of the false appraisals, false
> statements of conservation value, and contrary purposes of the funds, and therefore knew
> the payments to be proceeds of crime.

Clearly Count 3 well states the violations of 18 U.S. Code § 1962 and the essentials of
racketeering crime applicable to defendant Group C.

Stated Elements Of RICO Conspiracy (Waltons)

60. The Group C defendants claim falsely [27 p. 9 et seq] that the Complaint somehow does not
state facts sufficient to show that the defendants have a common purpose, organization, and
continuity to constitute a racketeering enterprise under RICO. But in fact the common purpose of
these defendants is shown in detail in the Complaint, Appendices, and Memoranda of Law:

> Complaint Count 3 (referencing p. 75, 79-81, 93-95, 107, 159, 172, 181, 186-196)
> Complaint Counts 1, 2, 3, 4, 5, 6, 7, and 8 (common purposes of other defendants)
> Fact Appendix A Group A
> Fact Appendix B Group B
> Fact Appendix C Group C
> Fact Appendix E Unlawful Methods and Criminal Acts

61. Their common purpose is sufficiently clear from their common theft of funds. But apparently
the defendants hope that their common purpose, organization, and continuity in acting together
over a period of ten years to abuse public office, influence officials, and distort public
information to steal for each other $119 million in state and county funds, could never be divined
from this preponderance of evidence of their actions.

62. Note that it is not necessary to establish all details prior to discovery and trial so as to meet
the standard of sufficiency of allegation of claims. When discovery and trial are complete, a
criminal RICO case must meet the criminal standard of evidence (beyond reasonable doubt) but
a civil RICO case must show only a preponderance of evidence. This standard need not be met
for sufficiency of allegation of claims, but is already met for many defendants, and is highly
likely to be met for additional defendants when discovery and trial are complete.

Federal Law Violations As RICO Violations (Waltons)

63. The Group C Walton defendants claim [27 p. 10] that some statutes listed as violated by them under Count 3 are not RICO violations, and that this would somehow invalidate all RICO claims. Count 3 lists:

Violations of Federal Law:
18 USC §§ 1952–1968 Racketeer Influenced Corrupt Organizations Act (RICO)
These claims are brought under 18 USC §§ 1962 (c) and (d)
18 USC § 1341 Fraud and Violation of Honest Services
18 USC § 371 Fraud and Conspiracy Against the United States (see Mem. Of Law 3)
18 USC § 981 Forfeiture of property and proceeds of crime
Violations of State Law:
F.S. 817       Fraud
F.S. 895       State Racketeering Offenses

Of course 18 USC § 371 can be separately violated without effect upon the RICO 18 USC §§ 1952–1968 claims. The defendants have no argument.

Florida Law Fraud And Racketeering Violations As RICO Violations (Waltons)

64. The Group C Walton defendants claim [27 p. 10] that the violations of Florida statutes listed under Count 3 (F.S. 817 Fraud and F.S. 895 State Racketeering Offenses) are not stated with sufficient detail to constitute violations of Florida law for purposes of RICO. But as argued above (*False Claim That Elements Of RICO Conspiracy Are Not Stated*) it is not necessary to establish all details prior to discovery and trial, to meet the standard of sufficiency of allegation.

65. These defendants claim wildly (p. 11) that the state offenses of fraud and racketeering magically do not violate RICO. But in fact:

A. RICO includes every kind of participation in the prohibited activities:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity… to use… directly or indirectly, any part of such income… in acquisition of any interest in, or the establishment or operation of, any enterprise… the activities of which affect, interstate or foreign commerce

B. It would be very difficult to violate F.S. 817 (Fraud) without any *resulting* use or interest in any activity which affects interstate commerce in violation of 18 U.S. Code § 1962(a).

C. It would be very difficult to violate F.S. 895 (Racketeering defined as in 18 U.S. Code § 1962(a) but without an interstate commerce effect) without any *resulting* use or interest in any activity which affects interstate foreign commerce, so RICO would always be violated.

Therefore the defendants have no claim that the Florida law violations *preclude* RICO violation.

**Laches Or Expiration Of Statute Of Limitations (Waltons, MCRI, Sutton, Meese)**

66. This is a civil RICO case in which the criterion of timely prosecution, like other such time limits, is intended to ensure that litigation begins within a reasonable period after the plaintiff knew or should have known of the crimes, and does not specify any period for completion of litigation, nor prevent withdrawal and refiling of cases, nor limit refiling where any venue denies seal, investigation request, or other necessities of litigation. The false claim of laches is fully and properly disposed with complete timelines in the Complaint (p. xxvii) section *Pattern Of Racketeering Crime And Statutes Of Limitations*.

67. The Group A Carlton [11 p.5] and Group C Walton defendants [27 p. 1, 4] argue falsely that the RICO four year limitation for initial litigation applies to any withdrawal and re-filing of a case, despite timely initial prosecution. They admit [11 p. 5 and 27 p. 1, 4] that the Plaintiff knew of the claims by 2/7/2018 and filed the case on 12/27/2019, clearly within the 4-year RICO limit, and offer no argument that subsequent changes of venue and defendants were prohibited despite compliance with the period for initial litigation.

68. Defendant Sutton [53 p.7] merely copies the false arguments of the other defendants ignoring the criteria of the period for racketeering prosecution, stating falsely that his participation in the racketeering enterprise in 2007 defines the period for prosecution of himself. But the period of RICO prosecution begins with *discovery* of the racketeering enterprise, in this case in 2018.

69. Defendant Meese admits [14 p. 1, 2 et seq] that the Meese actions occurred between 2006 and 2014, and that the Plaintiff knew of the claims by 2/7/2018 and filed the case on 12/27/2019, clearly within the 4-year RICO limit, offering offer no argument whatsoever [14 p. 4-6] that subsequent changes of venue and defendants were prohibited despite compliance with the period for initiating litigation. Meese claims absurdly that partisan obstruction of due process against her racketeering crime, amounting to over 100,000 felonies in 50 states, is laches of the Plaintiff.

70. It is abundantly clear that this is a complex case against political racketeering, extensively impeded and delayed by partisan judges who unlawfully denied seal and venue. The defendant claims are nothing more than further scams by political racketeers.

**Allegation Of Plaintiff Injury (Waltons)**

71. The Group C Walton defendants argue falsely [27 p. 5] that the Plaintiff does not plead

"concrete injuries that were caused by the Walton Defendants' alleged violations of law." But in

fact this is stated in detail:

Complaint
> *Summary* (p. iv, v)
>> The Plaintiff has suffered loss of real property tax revenue paid by him on property in Florida to cover debt service on bonds financing the racketeering thefts of public funds, and the loss of years of income from his usual employment due to intensive … investigation and litigation.
> *Facts of Conservation Land Funding and Misappropriation in Florida*
>> *Misappropriation of County Conservation Funds* (p. 13)
>>> Sarasota county created in 1999 [200] the ESLPP Environmentally Sensitive Lands Protection Program to acquire land for conservation purposes, using bonds up to $250 million, with interest and management costs paid by real estate tax.
> *Facts of Fraudulent Misappropriation of Funds* (p. 15)
>> The criminal activities … have caused the state to incur debt service on bonds issued to finance such purchases, which is paid through real estate fees and taxes including those of nonresidents like the Plaintiff, thereby interfering with interstate commerce...
> *Facts of The Plaintiff and His Damages 2011-2025* (p. 38, excluding tax loss)

For further detail see also:
> Appendix D *Conservation Facts and Argument*
> Appendix E *Unlawful Methods and Criminal Acts*
> Memorandum of Law 1: Racketeering Law
> Memorandum of Law 2: Conservation Law
> Memorandum of Law 3: Fraud and Misappropriation

72. These defendants claim wildly [27 p. 7] that no damage to Florida property owners and the

Plaintiff occurred because the state would have spent the same funds on other properties if it had

not been deceived to give the funds to the defendants. But of course (1) the state would have

saved the funds given to the defendants regardless of the course of future conservation funding;

and (2) the state would have funded purchases of properties of far higher conservation value if it

had not been deceived by the defendants. This defendant excuse is clearly their rationale for theft

of government funds, that "otherwise it just goes back" to taxpayers.

**Statement Of Claims**

Proper Statement Of Claims (Waltons, MCRI, DOJ)

73. The Walton defendants falsely state [27 p. 4] that "Plaintiff also alleges that he is suing the Walton Defendants for 'conspiracy to misappropriate state and county funds,' Compl. ¶ 13 at xiv, although this is *not stated* as a specific count in the complaint." In fact this is stated as Count 3:

> The defendants have received payments known by them to be the proceeds of criminal acts, in <u>conspiracy to defraud the state of Florida, Sarasota county thereof, and the United States, and to cause misappropriation of substantial public funds of those entities</u>. The defendants have defrauded and denied honest services to the people, abused public office for private gain, and have stolen public funds. The paragraphs of *Common Elements Incorporated Into All Claims* of this Statement of Claims are incorporated hereunder. The proof is that the defendants received the payments, and knew them to be based upon false appraisals, and/or to be misappropriated from funds for purposes not thereby served.

74. The DOJ defendant states [44 p. 11] that no claim is stated against the defendant agency factions, despite the full and clear statements thereof in the Complaint, Appendices, and Memoranda, which they criticized as excessive. They parrot inapplicable phrases like "threadbare recitals" and "conclusory statements" with no connection to this case, and conclude absurdly (p. 12) that "that is all the plaintiff has provided."

75. In fact these claims are fully stated in the Complaint:

> Complaint
> *Summary* (p. iv, v)
>> The defendants have engaged in (1) collusion in a racketeering enterprise which has injured the Plaintiff, the theft of about $120 million in federal, state, and local conservation funds by wealthy ranchers and politicians of one political party in Florida, and (2) the defendant agencies have refused over three years to investigate this racketeering, despite having convicted about 70 public officials in Florida annually for claims less than one percent the size of this case, and despite many plaintiff requests and provision of reams of evidence, six Appendices of Fact and seven Memoranda of Law to local, central, and OIG offices of each defendant agency under administrations of both major political parties, several times over this period, even as they investigated an opposing-party politician for one-thousandth of this amount, and have sought to obstruct plaintiff prosecution by denying FOIA requests regarding their refusal to investigate. …
>> For (1) the theft of $120 million in conservation funds in Florida, reference is made to Fact Appendices A - F and Memoranda of Law 1 - 7. For (2) defendant agency refusal to investigate or prosecute these groups, and obstruction of Plaintiff FOIA investigation of the defendant agencies, Fact Appendix G and Memorandum of Law 8 are provided.
> *Count 9* (p. xxvi) cites these violations by the defendant agencies:
>> 5  USC § 552   Freedom of Information Act (FOIA)

18 USC § 242    Denial of Constitutional Rights under color of law
18 USC § 371    Fraud and Conspiracy Against the U.S. (Mem. Of Law 3)
18 USC § 981    Forfeiture of property and proceeds of crime
18 USC § 1341   Fraud and Violation of Honest Services
18 USC §§ 1952–1968 (RICO)
18 USC § 2383 Rebellion against the United States or the laws thereof
31 USC § 3729  False Claims Act (FCA)
42 USC §§ 1982-1985 Civil Rights Act
*Common Elements Incorporated Into All Claims* (p. xxvii) cites these violations.
*Facts of Federal Agency Obstruction of Investigation 2018-2021* (p. 36-38)
*Facts of The Plaintiff and His Damages 2011-2025* (p. 38, excluding tax loss)

76. These claims are further detailed in the Appendices, Memoranda of Law, and Exhibits:

Appendix G *Misconduct Of Factions Within Federal Agencies*
Appendix H *FOIA Exhibits*
Exhibits Volume 1
Memorandum of Law 1: Racketeering Law
Memorandum of Law 3: Fraud and Misappropriation
Memorandum of Law 8: Misconduct Of Federal Agencies

77. The DOJ states (p. 12) that no specific FOIA claim is asserted. In fact these are detailed in:

Complaint *Summary* (p. iv, v)
Appendix H *FOIA Exhibits*
Memorandum of Law 8: Misconduct Of Federal Agencies

78. The DOJ defendant claims that FOIA cannot be enforced because it is criminal law, ignoring enforcement by acts of the judicial branch pursuant to civil claims, or criminal claims under civil racketeering law, which of course are the subject claims in this action. The argument is false.

79. The DOJ defendant descends further into criminal perjuries of law in claiming that this fully-documented case of political racketeering, backed and proven by a concise and thorough Complaint, eight Appendices Of Fact, and eight Memoranda Of Law, whose very volume it complains of, is magically no more than an unsubstantiated "bizarre" and "wide-ranging conspiracy" theory [44 p. 6, 9, 18]. But as usual, DOJ has no argument whatsoever.

80. The DOJ defendant also claims foolishly and without argument that the racketeering enterprise amounts only to a single minor crime [44 p. 9, 13], simply ignoring the extensive documentation of false appropriations amounting to over $100 million over a period of years.

81. Defendant Group A Carltons state wildly [11 p. 9 et seq] that the precise and detailed 72-page Complaint magically does not state a claim, even while pasting-in references in the nine Complaint Claims that detail the statutes violated, and ignoring the 41 pages of precise statements of Fact, and 7 pages of tables of Authorities and documents referenced. Clearly the

Complaint is about as far from "conclusory" as any complaint could be, and is supplemented by eight (8) Appendices Of Fact and eight (8) Memoranda Of Law for detailed fact and argument.

Statement Of Proximate Cause (Waltons, DOJ)

82. The Group C Walton defendants claim [27 p. 10] that plaintiff injuries resulting from their acts are "too remote" from the violations to constitute "proximate cause." In fact the Plaintiff losses, like those of other property owners taxed to pay for the stolen funds, are clearly the direct result of the violations. The only citation of the defendants is immaterial, a cased that involved only "harm flowing from misfortunes visited upon a third person by the defendant's acts." The defendants fail to argue that the only damage in this case was to persons other than the property owners thereby taxed, because that is obviously false.

Detail Of Charges Against Individual Defendants (Waltons, DOJ, Bonner, Meese)

83. The Group C Walton defendants admit [27 p.11, 12] that Complaint allegations are stated against Group C but state falsely that these must be detailed against individual members thereof.

84. Count 3 states that:

> The defendants have received payments known by them to be the proceeds of criminal acts, in conspiracy to defraud the state of Florida, Sarasota county thereof, and the United States, and to cause misappropriation of substantial public funds of those entities. …
> The proof is that the defendants received the payments, and knew them to be based upon false appraisals, and/or to be misappropriated from funds for purposes not thereby served.

85. Count 3 further states for Group C:

> The above defendants knew from the other defendants above of the false appraisals, false statements of conservation value, and contrary purposes of the funds, and therefore knew the payments to be proceeds of crime.

86. Because all of the Group C defendants have roles in the enterprise of MJW Ranch and associated lands, activities, appraisals, applications for and receipt of state conservation funding, each of which constitute participation in the racketeering enterprise, it is unnecessary to state further detail prior to discovery and trial.

87. Every one of the defendants is (1) directly linked by official records to one or more entities that received misappropriated public funds, and/or (2) a government official directly involved in the misappropriation. But the defendant DOJ waves its hands in vaguely claiming that the Complaint does so, when in fact it clearly states nine claims against the defendants.

88. Defendant (Carlton) Bonner suggests [14] that Complaint allegations are stated against Group A but not against herself, despite (1) her role as VP and stockholder of MCRI; (2) her knowledge and receipt of funds obtained by racketeering; (3) her direct involvement in Counts 5 and 8; and (4) the Complaint list of applicable paragraphs (p. xvii) under Statement Of Claims *Table of Paragraph References Per Defendant* (as well as Count 5 and Count 8):

| Defendant | Appendices | Complaint paragraphs |
|---|---|---|
| Kimberly (Carlton) Bonner | A,B,F | 108-111, 143, 168-170, 189, 198-207. |

89. Count 5 states of Bonner that:

> The defendants have offered or received payments, promotions, and honors for false statements or acts in conspiracy, to defraud the state of Florida, Sarasota county, and the United States, and to cause misappropriation of substantial public funds restricted to conservation purposes, for land and easements having no conservation value while the land remains deforested or in use as cattle ranches, for payments of many times the total fair market value of the land. The section *Common Elements Incorporated Into All Claims* of this Statement of Claims is incorporated hereunder.

90. Count 8 further states of Bonner that:

> The defendants have conspired to deny, refused to prevent denial, and ratified denial of constitutional rights of the Plaintiff, in violation of 42 USC §§ 1982-1985 and 18 USC § 242, and in conspiracy to cause misappropriation of substantial public funds, and to retain public offices and licenses abused by them for personal gain. The paragraphs of *Common Elements Incorporated Into All Claims* of this Statement of Claims are incorporated hereunder.

91. Because all of the Group A defendants have principal roles in the enterprise of MCRI and associated lands, activities, appraisals, and applications for and receipt of state conservation funds, each of which constitute participation in the racketeering enterprise, it is unnecessary to state further detail prior to discovery and trial.

92. Defendant Meese claims [14 p. 3 et seq] that the precise and detailed 72-page Complaint magically does not state a claim, ignoring the 41 pages of precise statements of Fact, 7 pages of tables of Authorities and documents referenced, and 5 counts against her. The Complaint is as far from insufficient allegation as any complaint could be, and to keep the Complaint concise and clear, it references (a) eight Appendices of Fact A, B, C, D, E, F, G, H, and (b) eight Memoranda of Law 1, 2, 3, 4, 5, 6, 7, and 8.

93. The conservation issues are detailed in Appendix D *Conservation Facts and Argument*. These details further establish the falseness of the Meese statements to public officials.

94. The corruption issues are detailed in Appendix E *Unlawful Methods and Criminal Acts*. Section *Collusion of Corrupted Public Officials to Deceive the People and Other Officials* mentions the false statements of Meese at the 11/27/2007 meeting of county commissioners.

95. The corruption issues are argued in Memorandum of Law 3 *Fraud*. The Meese offenses are noted in section *Fraud by Advisors and Public Officials of the County.*

96. The Complaint clearly states (*Parties, Defendant Group D*, par. 16 p. xv) that defendant Amy Meese is or was a Sarasota county employee, who falsely stated to decision makers a conservation value in the subject payments to the defendant beneficiaries, who thereby acted as principals in racketeering crime.

97. The Complaint clearly lists (*Table of Paragraph References Per Defendant,* p. xvii) the relevant paragraphs 103, 125-134, 141, and again under *COUNTS* for Counts 1, 2, 4, 5, and 6:

Count I (p. xvii):

> The defendants have knowingly caused or assisted the selection of lands, for purchase of title or easements with funds dedicated to conservation purposes, which they knew to have little or no conservation value, in conspiracy to defraud the state of Florida, Sarasota county, and the United States...

Count 2 (p. xix):

> The defendants have knowingly communicated false appraisals of value of lands proposed for purchase for conservation purposes, in conspiracy to defraud the state of Florida, Sarasota county thereof, and the United States…

Count 4 (p. xxi):

> The defendants have committed fraud by making or causing false statements of the conservation value of lands, as or to public officials, causing wrongful payments, in conspiracy to defraud the state of Florida, Sarasota county, and the United States…
>
> every statement of the conservation value of the subject lands by… Meese was false.

Count 5 (p. xxii):

> The defendants have offered or received payments, promotions, and honors for false statements or acts in conspiracy, to defraud the state of Florida, Sarasota county, and the United States… Meese gained job security and elaborated the conservation lies for years.

Count 6 (p. xxiii):

> The defendants have conspired to defraud the United States by means of false claims, to cause misappropriation of federal funds restricted to conservation purposes, commingled with state and county funds, for land and easements having no conservation value, for payments of many times the total fair market value of the land.

98. Quotations Of The Referenced Paragraphs:

(paragraph 103) County conservation official (DNR) Amy Meese, present at the county Commission meeting that approved the Carlton payments, noted (Exhibit 100) the accelerated county approval of the Carlton lands for purchase, in about two months from December 2005 to February 2006.

(paragraph 125) County Director of Natural Resources DNR Amy Meese was a principal in the deception of the county. When asked by the plaintiff in 2013 to "critically evaluate" the Carlton Ranch purchase decision "in the light of real preservation goals," DNR Meese made a sales pitch similar to her statements to the county commission and the news media, to sell the purchase to the public [exhibit 100], with a rationale consisting of lies, carefully developed and well-used, but obvious:

> This [land] provides the large scale habitat connections crucial to the needs of the Florida panther and Florida black bear. The survival of these two listed species depends on a system of wildlife corridors linking wilderness islands throughout the state.

Every one of these statements was known by the county DNR to be false, revealing her role in the subject fraud. Meese made these perjuries to the county commission when it made the purchases.

(paragraph 126) In fact the Florida black bear is not endangered; there is even a hunting season allowing killing of the bears. This statement is known by the county DNR to be false.

(paragraph 127) There is no habitat of Florida Panthers anywhere in Sarasota county, and they have never been found or tracked there in the 35 years of tracking and observation, nor to any adjacent county (except two rare cases in the far SE corner of Charlotte county). This is a false statement by the county DNR and known by her to be completely false.

(paragraph 128) There is no known instance of panthers living outside forest, or travelling upon ranch lands except for brief incursions in pursuit of prey. The subject land is not panther habitat. This statement is known by the county DNR to be completely false.

(paragraph 129) Panthers do not migrate seasonally, and there is no known instance of panthers following "corridors" of any kind. There is no linear movement shown in the 35 years of panther tracking and observation data, which instead shows that they wander around in their forest habitat. This statement is known by the county DNR to be completely false.

(paragraph 130) Meese failed to explain how an easement that protects ranching that destroyed their forest habitat would somehow be "crucial" to the panther and black bear which have never been observed within 30 miles of this site in 35 years of observations, and cannot live on ranches. Both species range through forest far to the south, not bare ranch land, and neither uses "corridors" between habitat islands. See Appendix D for details.

(paragraph 131) Meese falsely stated that the mere purchase of land or easements without any action to improve habitat, pollution, or water supply somehow achieves a public purpose:

> The purchase of the CE also protects the watershed and reduces risk of flood impacts & damage which aligns with ESLPP 'Water' criterion.

But Meese knew that no land or easement purchase could have any effect upon flooding without a large flood control plan, that the county had no flood control improvement plan related to the subject lands, that none of the county drinking water comes from rainfall within the county, and

that ranching wastes about half of the surface water available. These statements were known by the county DNR to be completely false.

(paragraph 132) The county DNR deliberately lied about the conservation value of ranch easements:

> Finally, there are specific terms in the CE contract that define & restrict future development or land uses that are not environmentally compatible.

But in fact there are no easement terms nor any plan to make the ranch land "environmentally compatible" with panther habitat; it is uninhabitable to panthers, and the allowance of continued ranching ensured that former habitat would never be restored. No development was foreseeable. These statements were known by the county DNR to be completely false.

(paragraph 133) Further, even the Carlton land area that was purchased (not easements), was permitted to be indefinitely used by the seller as ranch land, without even leasing it, making it permanently useless to panthers. This statement is known by the county DNR to be completely false.

(paragraph 134) The county DNR Amy Meese stated [Exhibit 100] that the approval process consisted of a committee vote of interested parties (ESLOC) during a holiday, and a letter to the commissioners:

> January 5, 2006 meeting of ESL "Oversight Committee" reviewed parcel and voted 6:2 to add the entire parcel to the Ranch Reserve site.
> February 2006 ESLOC memo to Board of County Commissioners amended the site boundary of Ranch Reserve to include the entire parcel.

The entire county process consisted of an "advisory" committee vote and a memo over a 30-day period, concealed from the public by simply amending a site boundary. A gift of $51.8 million to political insiders who controlled the public officials, done while others were on vacation.

99. (paragraph 141) The subject Carlton land purchase and easement were decided at the Commissioners meeting 11/27/2007 [212] in the last month of the term of Lisa Carlton (R). Both county DNR Amy Meese (R) and Eric Sutton (R) of SWFWMD were present to deceive the public (exhibit 101) that the joint SWFWMD-County purchase would somehow preserve "ecological value" despite their plan to continue ranching there, causing pollution, wastage of county water supply, and burn-offs instead of reforestation to restore native habitat. Sutton and Meese abused public office as agents of the Carltons to cause payments known by them to be without public benefit.

**Government May Not Commit Crime With Immunity (Group A Carltons, DOJ)**

100.    The Group A Carlton defendants object incorrectly [11 p. 15 et seq] that jurisdiction of this Court over the United States requires that it waive sovereign immunity in the matter, ignoring the Tucker Act and all related caselaw. While discretion and immunity of investigative

agencies for failure to investigate has been claimed in some cases, any claim of general sovereign immunity for the United States would be an egregious violation of the Tucker Act and all related precedent.

101.    The defendant DOJ wastes a full page [44 p. 7] with the perjury that Congress must waive sovereign immunity, as it did over a century ago in most of these areas. Their preposterous aggrandizement and claim of tyrannical power for federal employees ignores federal law.[4] They falsely state that such a waiver is not alleged in the Complaint, despite its clear citation of the laws that revoke rather than affirm immunity for U.S. personnel in violation thereof:

(a) Count 9 (Complaint p. xxvi) clearly cites these violations by the defendant agency factions:

> Violations of Federal Law:
> 5   USC § 552   Freedom of Information Act (FOIA)
> 18 USC § 242   Denial of Constitutional Rights under color of law
> 18 USC § 371   Fraud and Conspiracy Against the U.S. (see Mem. Of Law 3)
> 18 USC § 981   Forfeiture of property and proceeds of crime
> 18 USC § 1341  Fraud and Violation of Honest Services
> 18 USC §§ 1952–1968 Racketeer Influenced Corrupt Organizations Act (RICO)
>     These claims are brought under 18 USC §§ 1962 (c) and (d)
> 18 USC § 2383 Rebellion against the United States or the laws thereof
> 31 USC § 3729  False Claims Act (FCA)
> 42 USC §§ 1982-1985 Civil Rights Act

(b) The Complaint further references these facts and arguments in *Common Elements Incorporated Into All Claims* (p. xxvii).

102.    Claims of sovereign immunity for federal government, *other than in wartime*, are the antithesis of patriotism, a concerted attack upon the Constitution and Laws of the United States. There is no concept more abhorrent to the Founders of this nation, or more contradictory to its founding documents, than the notion that government should be immune from prosecution for deliberate injuries to the people. The assertion of sovereign immunity is advocacy of fascism, tantamount to treason, an act of War upon these United States. The assertion itself is just cause for dismissal from public office.

103.    It is shocking that our former Department of Justice has descended into advocacy of the suppression of democracy by demanding absolute powers for itself and the Executive Branch. No public purpose is thereby served: the arguments are vacuous, based upon false claims of

---

[4] *Federal Liability for Takings and Torts* Abend, 31 Fordham Law Review 481

special circumstances such as wartime defense exigencies. But of course the legal history of false claims of convenient sovereign immunity is extensive.

104.    It is discouraging that our Judicial Branch has at times descended into partisan advocacy of sovereign immunity, by simply ignoring the long honorable legal tradition of government accountability for wrongs done to citizens.[5] This appears to be due to partisan operation of a two-track system of justice to benefit partisans regardless of the law. Those who deny government accountability to citizens will ultimately be celebrated with infamy.

105.    The DOJ falsely claims that the FTCA is the "only available waiver of sovereign immunity" and that its violation is somehow not claimed in the Complaint. But Fact Appendix G *Misconduct Of Factions Within Federal Agencies* clearly states and argues the subject violations of FTCA within the originating documents of this case:

> The *Boling* case failed to presume an absence of immunity barring specific provisions to the contrary, but CRA claims of violation by state actors were generalized to federal actors by *Bivens* and are regularly prosecuted. In fact *Boling* admits that Congress waived immunity (of DOJ and other agencies) under the FTCA "under circumstances where the United States, if a private person, would be liable to the claimant" but FTCA was not applicable there only due to lack of any claim of underlying wrong.

106.    Appendix G also extinguishes the DOJ false claims of discretion and immunity for obstruction of prosecution of political racketeering, committed by refusal to investigate, refusal to comply with FOIA, and by the very assertion of absolute discretion and immunity.

107.    Detailed argument presented in Memorandum Of Law 6 *Civil Rights Violation* establishes federal violation of federal rights by district judges, by refusal to investigate or act upon the related violations of constitutional rights by prior defendants, and by several partisan refusals to request investigation of the subject thefts of public funds.

108.    Further detailed argument is presented in Memorandum Of Law 8 *Misconduct Of Federal Agencies* dealing with federal immunity issues. Clearly federal agencies do not have discretion or immunity for commission of political racketeering crime, nor other violations of the Tort Claims Act or the Civil Rights Act, and any argument to the contrary is a federal crime in itself.

109.    The DOJ claims falsely [44 p. 9] that federal agencies are not liable for failure to enforce, citing only immaterial cases of refusal to investigate a single small crime, and the prior related

---

[5] *Federal Liability for Takings and Torts* Abend, 31 Fordham Law Review 481

case improperly decided by partisans, which offered only the same perjury of absolute Discretion and Immunity as argument. The DOJ has no argument whatsoever.

**No Judicial Immunity For Non-Judicial Acts (Bonner)**

110.    Defendant Bonner absurdly claims judicial immunity [30 p. 12] despite her admission that "judicial immunity does not apply… when the alleged acts were nonjudicial." End of argument. But the motion pretends (p. 13) that this case concerns only her corrupt efforts to disrupt investigation and litigation of her racketeering, by abuse of judicial office to deny due process in the nuisance case that led to discovery of racketeering. The citations are immaterial.

111.    Bonner's denial of due process extended far beyond her manifestly corrupt decision in the prior nuisance case as a local judge: she also corruptly pursued the Plaintiff by buying a promotion to the superior court where that case had been removed, grabbed the case again there, and again corruptly denied due process for years, having been told that the Plaintiff was investigating her racketeering crime. These are not "judicial acts" but acts of extraordinary abuse of judicial office, and corrupt means of seeking judicial office. Regardless of that criterion, this case concerns her *direct role* in racketeering, by knowledge thereof and profit therefrom.

112.    Bonner never loses an opportunity in her motion to praise herself as "Judge Bonner" despite her disgraceful record of corruption in that capacity, having bought with partisan "donations" of stolen funds both her local judgeship and her promotion to state superior court to grab the Plaintiff case again, which had been removed to that court to escape her manifest corruption. With these primitive appeals to professional tribalism, she demands that other judges grant her immunity for racketeering crime. Will she be held immune as she demands, as a thief honored among thieves? Then we shall have more of them, for "power corrupts, and absolute power corrupts absolutely."[6]

**That The Sutton Deceptions Were Self-Justifying (Sutton)**

113.    Defendant Sutton makes the absurd argument [53 p. 2] that his 2007 presentation of perjuries of conservation value to the SWFWMD board was somehow legitimate simply because his presence was in the course of his employment, the meeting was public, and the board approved the transaction. Obviously that is immaterial and in no way excuses his undeniable

---

[6] Lord Acton

collusion to deceive the public and public officials to make grotesquely inflated payments in the last days of Lisa Carlton's term. No fact or argument is offered that these are "spurious claims."

**That Sutton Received No Career Rewards For Collusion (Sutton)**

114.    Sutton offers no argument [53 p. 2-3] that his promotion to direct the state FWC was not a partisan reward for his perjuries to SWFWMD officials, except that this occurred later. The fact that he was not dismissed for his deceptions indicates that he was also rewarded earlier.

**CONCLUSION**

The defendant motions to dismiss lack any basis in law, having been based upon outright perjuries of res judicata, excessive length, unclear claims, improper statements, and many other perjuries, as well as clearly false argument against jurisdiction, venue, civil racketeering claims, statements of claim, laches, immunities for criminal acts, and other clearly false arguments. In fact (1) jurisdiction and venue are incontestable, (2) there are no unclear claims or improper statements; (3) the Complaint is clear and concise for the volume of fact; (4) the Appendices of Fact and Memoranda of Law are necessary and proper; (5) the civil racketeering claims of damages from crime are proper; (6) prosecution has been timely with no prior judgment on the merits; and (7) there are no immunities of public officials for willful collusion in racketeering crime. Therefore the defendant motions to dismiss are unsupportable and should be denied.

**OATH AND CERTIFICATE**

I, the undersigned Plaintiff John S. Barth do hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. I further certify that on this date a copy of the foregoing document was served electronically via ECF on all counsel of record.

Date:_____10/05/2025_____                    _____
                                                                    John S. Barth, Plaintiff, Pro Se
        P.O. Box 88, Springvale, ME 04083  JohnBarth025@gmail.com    207-608-1741